PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717) (*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 2405397) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 19-34054-sgj11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,<br><br>Plaintiff,<br><br>vs.<br><br>JAMES DONDERO,<br><br>Defendant. | Adversary Proceeding No.<br><br>21-03003-sgj11 |

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ........................................................................................................... 3

    A.    THE DONDERO NOTES ............................................................................................ 3

        1.    Mr. Dondero's February 2, 2018 Promissory Note ........................................ 3

        2.    Mr. Dondero's August 1, 2018 Promissory Note ........................................... 4

        3.    Mr. Dondero's August 13, 2018 Promissory Note ......................................... 4

    B.    THE RELEVANT PROVISIONS OF THE DEMAND NOTES ...................................... 5

    C.    MR. DONDERO DEFAULTS UNDER EACH NOTE ...................................................... 6

    D.    THE DEBTOR COMMENCES THIS ADVERSARY PROCEEDING AND THE ALTERNATIVE SCHEDULING ORDER IS IMPOSED .................................................. 7

    E.    MR. DONDERO'S DEFENSES ARE MERITLESS ........................................................ 8

        1.    Mr. Dondero's Contention that the Debtor Agreed Not to Collect on the Notes Is Demonstrably False ............................................................................. 8

        2.    Mr. Dondero's Defenses of Waiver and Estoppel Are without Foundation ............. 10

        3.    Mr. Dondero's Defense of "Lack of Consideration" Is Meritless ........................... 11

    F.    THE MOTION IS MERELY A DELAY TACTIC AND SHOULD BE DENIED ......... 12

CONCLUSION ............................................................................................................................ 15

## **TABLE OF AUTHORITIES**

**Cases**

*Bilbe v. Belsom*,
　530 F.3d 314 (5th Cir. 2008) ............................................................................................... 13

*Binh Hoa Le v. Exeter Finance Corp.*,
　No. 3:15-CV-38239-L, 2019 WL 1436375, at * (N.D.Tex. 2019) .......................................... 14

*Hernandez v. Mario's Auto Sales, Inc.*,
　617 F. Supp. 2d 488 (S.D. Tex. 2009) .................................................................. 12, 13, 14, 15

*Squyres v. Heico Companies, LLC*,
　782 F.3d 224 (5th Cir. 2015) ......................................................................................... 12, 13

**Rules**

Fed. R. Civ. P. 16(b)(4) ................................................................................................................ 12

**DEBTOR'S OBJECTION TO
DEFENDANT JAMES DONDERO'S EMERGENCY MOTION TO
CONTINUE DOCKET CALL AND TRIAL AND/OR AMEND SCHEDULING ORDER**

Plaintiff Highland Capital Management, L.P., the debtor and debtor-in-possession (the "Debtor") in the above-captioned chapter 11 case (the "Bankruptcy Case") and the plaintiff in the above-captioned adversary proceeding (the "Adversary Proceeding"), hereby objects (the "Objection") to *Defendant James Dondero's Emergency Motion to Continue Docket Call and Trial and/or Amend Scheduling Order* [Docket No. 8][2] (the "Motion") filed by James Dondero (hereinafter "Mr. Dondero").  In support of its Objection, the Debtor respectfully states as follows:

**PRELIMINARY STATEMENT**

1.  On January 22, 2021, the Debtor commenced this Adversary Proceeding to collect on three demand notes issued by Mr. Dondero in the aggregate principal amount of $8,825,000, plus accrued and unpaid interest and the cost of collection (including reasonable attorneys' fees).  It is a very simple and straight-forward action.

2.  Based on the documentary evidence submitted in support of this Objection, Mr. Dondero cannot dispute that: (a) in 2018, the Debtor transferred $8,825,000 to him in three transfers, (b) he simultaneously executed a "demand" note as consideration for each of those transfers, (c) the Debtor demanded payment under each of the promissory notes, and (d) he failed to make any payment in response to the Debtor's demand and is in default.  Based on these undisputed facts, the Debtor should be entitled to summary judgment and intends to seek such relief prior to the trial scheduled for the week of June 21, 2021.

3.   Mr. Dondero understands the predicament he is in; the Motion is nothing more than an attempt to buy time.  Mr. Dondero's primary defense appears to be that "Plaintiff's

---

[2] Refers to the docket in the Adversary Proceeding.

1

claims should be barred because it was previously agreed by Plaintiff that Plaintiff would not collect on the Notes." Mr. Dondero offers no specifics on this alleged agreement. For example, he fails to describe when the agreement was entered into; who entered into the agreement on behalf of the Debtor; or what the Debtor received in exchange for forgiving over $8.825 million in loans and accrued interest. This is not surprising. As the documentary evidence submitted in support of this Objection shows, the Debtor has *always* treated Mr. Dondero's obligations under the Notes (as that term is defined below) as assets of the estate. And for the reasons set forth below, Mr. Dondero's only other affirmative defenses (waiver, estoppel, and lack of consideration) have no merit.

4. In the face of these undisputed facts, Mr. Dondero seeks to delay these proceedings by two to three months, contending that:

- "[d]iscovery will be fairly voluminous and numerous witnesses and potentially experts will need to be deposed;"

- "[t]his is a unique case and facts and circumstances are far outside the norm for this type of proceedings;"

- defense counsel has to prepare for and participate in Plaintiff's motion for a permanent injunction in May; and

- Mr. Dondero did not consent to the Court's alternative scheduling order and defense counsel did not appear in this case until it filed its Answer on April 16.

5. Predictably, in his Motion Mr. Dondero makes no effort to describe or identify (a) the "voluminous" discovery needed; (b) the "numerous" witnesses to be deposed; (c) the subjects on which "expert" testimony could possibly be needed; or (d) what makes this simple collection case "unique" and "far outside the norm." Moreover, given that the Court has already held three separate hearings, including two exhaustive evidentiary hearings, it is hard to imagine that it will be burdensome to prepare for the permanent injunction hearing. Finally, while technically Mr. Dondero "did not appear" in this Adversary Proceeding until March 16, 2021 when

2

he filed his Answer, (i) prosecution of the claims relating to the Notes was the subject of the corporate governance settlement in January 2020, (ii) Mr. Dondero's counsel has vigorously represented him during the Bankruptcy Case since at least the summer of 2020, (iii) the Debtor made a demand for payment under the Notes in December 2020, and (iv) the Adversary Proceeding was commenced on January 22, 2021. In other words, there is no surprise.

6. Rather than delay the inevitable, the Debtor is "putting all of its cards on the table." Mr. Dondero has no credible defense to this straight-forward collection action. By its terms, the Court's alternative schedule became effective on March 11, 2021, forty-five days after it was issued. Because Mr. Dondero has not offered any credible explanation for his failure to seek discovery and has otherwise failed to show good cause to modify the Court's scheduling order, his belated Motion should be denied.

## STATEMENT OF FACTS

**A. THE DONDERO NOTES**

7. Mr. Dondero, in his personal capacity, is the maker under a series of demand notes in favor of the Debtor.

**1. Mr. Dondero's February 2, 2018 Promissory Note**

8. On February 2, 2018, David Klos, then the Debtor's Controller, sent an e-mail to the Debtor's Corporate Accounting group (with a copy to Melissa Schroth, Mr. Dondero's assistant) in which he asked that $3.825 million "go to Jim this afternoon." Mr. Klos informed the Debtor's Corporate Accounting group and Ms. Schroth that Frank Waterhouse, then the Debtor's Chief Financial Officer, had approved the transfer and that it was "a new loan." **Morris Exhibit 1**.[3]

---

[3] "**Morris Exhibit __**" refers to the *Declaration of John A. Morris in Support of the Debtor's Objection to Defendant James Dondero's Emergency Motion to Continue Docket Call and Trial and/or Amend Scheduling Order* filed simultaneously with this Objection.

3

9. Pursuant to Mr. Klos's instructions, on February 2, 2018, the Debtor transferred $3,825,000 to Mr. Dondero (the "February 2 Transfer"). **Morris Exhibit 2**.

10. In consideration for the February 2 Transfer, Mr. Dondero contemporaneously executed a promissory note in favor of the Debtor, as payee, in the original principal amount of $3,825,000 ("Dondero's First Note"). **Morris Exhibit 3**.

**2. Mr. Dondero's August 1, 2018 Promissory Note**

11. On August 1, 2018, Mr. Klos sent an e-mail to the Debtor's Corporate Accounting group (with a copy to Ms. Schroth) in which he wrote that "Jim authorized a $2.5 mm loan from HCMLP to Dondero." Mr. Klos requested to have the money transferred and loan documents drafted. **Morris Exhibit 4**.

12. Pursuant to Mr. Klos's instructions, on August 1, 2018, the Debtor transferred $2,500,000 to Mr. Dondero (the "August 1 Transfer"). **Morris Exhibit 5**. *See also* **Morris Exhibit 4** (two hours after Mr. Klos's request, Blair Roeber reported that the "[f]unds have been transferred to Jim's account ending in *884," the same account number reflected in **Morris Exhibit 5**, the bank statement).

13. In consideration for the August 1 Transfer, Mr. Dondero contemporaneously executed a promissory note in favor of the Debtor, as payee, in the original principal amount of $2,500,000 ("Dondero's Second Note"). **Morris Exhibit 6.**

**3. Mr. Dondero's August 13, 2018 Promissory Note**

14. On August 13, 2018, Drew Wilson, then a Senior Corporate Accountant at the Debtor, sent an e-mail to the Debtor's Corporate Accounting group, Mr. Klos, and Blair Roeber (with a copy to Ms. Schroth) in which he wrote that "Jim authorized a $2.5mm loan from HCMLP to Dondero." Mr. Wilson requested to have the money transferred and noted that the loan documents were attached to his e-mail. **Morris Exhibit 7**.

4

15. Pursuant to Mr. Wilson's instructions, on August 13, 2018, the Debtor transferred $2,500,000 to Mr. Dondero (the "August 13 Transfer" and together with the February 2 Transfer and the August 1 Transfer, the "Transfers"). **Morris Exhibit 5**. *See also* **Morris Exhibit 7** (two hours after Mr. Klos's request, Blair Roeber reported that the "[f]unds have been transferred to Jim's account ending in *884," the same account number reflected in **Morris Exhibit 5**, the bank statement).

16. In consideration for the August 13 Transfer, Mr. Dondero contemporaneously executed a promissory note in favor of the Debtor, as payee, in the original principal amount of $2,500,000 ("Dondero's Third Note" and collectively with Dondero's First Note and Dondero's Second Note, the "Notes"). **Morris Exhibit 8.**

**B.    THE RELEVANT PROVISIONS OF THE DEMAND NOTES**

17. Section 2 of each Note contains an identical provision stating that each Note is a "demand" note: "**Payment of Principal and Interest**.  The accrued interest and principal of this Note shall be due and payable on demand of the Payee."  **Morris Exhibit 3** §2; **Morris Exhibit 6** §2; **Morris Exhibit 8** §2.

18. Each Note also provides that upon a default, all principal and interest immediately accelerates and becomes due and payable without notice:

> **Acceleration Upon Default**.  Failure to pay this Note or any installment hereunder as it becomes due shall, at the election of the holder hereof, without notice, demand, presentment, notice of intent to accelerate, notice of acceleration, or any other notice of any kind which are hereby waived, mature the principal of this Note and all interest then accrued, if any, and the same shall at once become due and payable and subject to those remedies of the holder hereof.  No failure or delay on the part of the Payee in exercising any right, power, or privilege hereunder shall operate as a waiver hereof.

**Morris Exhibit 3** §5; **Morris Exhibit 6** §4; **Morris Exhibit 8** §4.

19. Each Note also provides that if the Note is not paid at maturity and "is placed in the hands of an attorney for collection, or if it is collected through a bankruptcy court," then Mr. Dondero shall also pay the Debtor's costs and expenses of collection, including reasonable attorneys' fees:

> **Attorneys' Fees**. If this Note is not paid at maturity (whether by acceleration or otherwise) and is placed in the hands of an attorney for collection, or if it is collected through a bankruptcy court or any other court after maturity, the Maker shall pay, in addition to all other amounts owing hereunder, all actual expenses of collection, all court costs and reasonable attorneys' fees and expenses incurred by the holder hereof.

**Morris Exhibit 3** §7; **Morris Exhibit 6** §6; **Morris Exhibit 8** §6.

C. **MR. DONDERO DEFAULTS UNDER EACH NOTE**

20. By letter dated December 3, 2020, the Debtor made demand on Mr. Dondero for payment under the Notes by December 11, 2020 (the "Demand Letter"). **Morris Exhibit 9**. The Demand Letter provided:

> By this letter, Payee is demanding payment of the accrued interest and principal due and payable on the Notes in the aggregate amount of $9,004,013.07, which represents all accrued interest and principal through and including December 11, 2020.
>
> **Payment is due on December 11, 2020, and failure to make payment in full on such date will constitute an event of default under the Notes.**

*Id*. (emphasis in the original).

21. Despite the Debtor's demand, Mr. Dondero did not pay all or any of the amounts demanded by the Debtor on December 11, 2020 or at any time thereafter.

22. As of December 11, 2020, the total outstanding principal and accrued but unpaid interest due under the Notes was $9,004,013.07.

23. Pursuant to the terms of each Note, each Note is in default and is currently due and payable.

### D. THE DEBTOR COMMENCES THIS ADVERSARY PROCEEDING AND THE ALTERNATIVE SCHEDULING ORDER IS IMPOSED

24. On January 22, 2021, the Debtor commenced this Adversary Proceeding to collect on the amounts due under the Notes by filing its *Complaint for (I) Breach of Contract and (ii) Turnover of Property of the Debtor's Estate* [Docket No. 1] (the "Complaint"). **Morris Exhibit 10**. In its Complaint the Debtor seeks: (a) damages from Mr. Dondero in an amount equal to (i) the aggregate outstanding principal due under the Notes, plus (ii) all accrued and unpaid interest thereon until the date of payment, plus (iii) an amount equal to the Debtor's cost of collection (including all court costs and reasonable attorney's fees and expenses) for Mr. Dondero's breach of his obligations under the Notes, and (b) turnover by Mr. Dondero to the Debtor of the foregoing amounts. *Id.* ¶¶ 27-28.

25. On January 25, the Court entered its *Order Regarding Adversary Proceedings Trial Setting and Alternative Scheduling Order* [Docket No. 3] (the "Scheduling Order"). **Morris Exhibit 11**. Pursuant to the Scheduling Order, discovery must be completed by April 30, 2021, and trial is scheduled for the week of June 21, 2021.[4] The Scheduling Order further provides that if the Debtor and Mr. Dondero "do not submit a proposed scheduling order within forty-five days of the filing of this adversary proceeding, then the parties are deemed to have consented to the terms of the Alternative Scheduling Order." *Id.* ¶ 3. The parties did not submit a proposed scheduling order by March 8, 2021; accordingly, they are deemed to have consented to the dates set forth in the Alternative Scheduling Order.

26. On March 8, 2021, counsel for Mr. Dondero requested an extension of time to file his answer and the Debtor agreed to extend Mr. Dondero's deadline by one week to March 16, 2021. *See* Motion ¶ 3.

---

[4] On January 28, 2021, counsel for Mr. Dondero agreed to accept service on behalf of Mr. Dondero [*See* Docket No. 4].

E. **MR. DONDERO'S DEFENSES ARE MERITLESS**

27. On March 16, 2021, Mr. Dondero filed his *Original Answer* [Docket No. 6] (the "Answer"). **Morris Exhibit 12**. In his Answer, Mr. Dondero asserted four affirmative defenses: (i) "Plaintiff's claims should be barred because it was previously agreed by Plaintiff that Plaintiff would not collect on the Notes," (ii) waiver, (iii) estoppel, and (iv) "Plaintiff's claims may be barred, in whole or in part, due to failure of consideration." *Id.* ¶¶ 40-43. Each of these affirmative defenses is meritless.

1. **Mr. Dondero's Contention that the Debtor Agreed Not to Collect on the Notes Is Demonstrably False**

28. Mr. Dondero's "affirmative defense" that "Plaintiff's claims should be barred because it was previously agreed by Plaintiff that Plaintiff would not collect on the Notes" is false. *See* **Morris Exhibit 12** ¶ 40.

29. On its face, this "affirmative defense" strains credulity. Mr. Dondero does not identify or disclose: (a) the "agreement" he relies upon, (b) when the "agreement" was entered into, (c) who entered into the "agreement" on behalf of the Debtor, or (d) what consideration the Debtor received from Mr. Dondero in exchange for forgiving almost $9 million in principal, plus interest. Nor can he.

30. The Debtor's books and records and filings in this Bankruptcy Case (including documents and communications created or sent when Mr. Dondero remained in control of the Debtor) prove that the Debtor always treated its payments to Mr. Dondero as loans and carried the Notes as assets on its financial statements.

31. For example, in the Debtor's February 2018 internal monthly reporting package, under the heading "Significant Items Impacting HCMLP's Balance Sheet," the February 2 Transfer was contemporaneously identified as "($3.8M) partner loan." **Morris Exhibit 13** at 2. *See also* **Morris Exhibit 1** (Mr. Klos reported that "this is a new loan").

8

32. In the Debtor's August 2018 internal monthly reporting package, under the heading "Significant Items Impacting HCMLP's Balance Sheet," the August 1 Transfer and the August 13 Transfer were together contemporaneously identified as "($5.0M) partner loan." **Exhibit 14** at 2. *See also* **Morris Exhibit 4** (Mr. Klos reported that "Jim has authorized a $2.5mm loan from HCMLP to Dondero"); **Morris Exhibit 7** (Mr. Wilson reported that "Jim has authorized a $2.5mm loan from HCMLP to Dondero").

33. Following the Petition Date, but while Mr. Dondero still controlled the Debtor as Chief Executive Officer, the Debtor filed its *Schedules of Assets and Liabilities* (the "<u>Debtor's Schedules</u>").  The Debtor's Schedules included the Notes among the Debtor's Assets. **Morris Exhibit 15** at pdf page 7 of 34 and pdf page 13 of 34.

34. In its December 2019 Monthly Operating Report ("<u>MOR</u>") prepared by Frank Waterhouse, the Debtor's then-Chief Financial Officer, the Debtor reported that almost $150 million was "Due from affiliates" on account of various promissory notes. **Morris Exhibit 16** at pdf page 2 of 9.  The Notes were included under the line item "Due from others – tax loans" in the Debtor's back-up to the December 2019 MOR.  **Morris Exhibit 17**.

35. All of the Debtor's MOR's included the Notes as assets of the estate. *See*, *e.g.*, **Morris Exhibit 18** (September 2020 MOR); **Morris Exhibit 19** (back up to "Due from affiliates" entry in September 2020 MOR); **Morris Exhibit 20** (January 2021 MOR); **Morris Exhibit 21** (back up to "Due from affiliates" entry in January 2021 MOR).

36. In addition, in the ordinary course of its business, the Debtor maintained a "loan summary" that identified every loan due from an affiliate.  Mr. Dondero's obligations under the Notes are listed as "Total Partner Debt to HCM Outstanding."  **Morris Exhibit 22**.[5]

---

[5] This Adversary Proceeding is one of five the Debtor has commenced against Mr. Dondero or entities owned and/or controlled by him to collect on promissory notes.  *See* Adversary Proceeding 21-03004 (seeking to collect more than $7.4 million on promissory notes issued by Highland Capital Management Fund Advisors, L.P.); Adversary

9

37. Finally, if forced to go to trial, the Debtor will also prove that: (a) Mark Okada also obtained loans from the Debtor, and paid them back in full; (b) Mr. Dondero obtained other loans from the Debtor and paid them back in full; and (c) on December 23, 2019, Mr. Dondero paid approximately $783,000 to the Debtor, a portion of which was used to pay off all remaining principal and interest due under unrelated notes and the balance of which was applied against amounts due and owing under the Notes.

38. Based on the foregoing, Mr. Dondero's contention that there is some unidentified "agreement" (apparently made after the Petition Date) whereby the Debtor agreed to walk away from over $9 million is belied by the facts and is not made in good faith.

**2.    Mr. Dondero's Defenses of Waiver and Estoppel Are without Foundation**

39. Mr. Dondero offers no facts to support his affirmative defenses of waiver and estoppel (*see* **Morris Exhibit 12** ¶¶ 41-42), and the documentary evidence proves they have no merit.

40. First, the documentary evidence proves that the Debtor never knowingly and intentionally relinquished its right to recover on the Notes because it consistently treated Mr. Dondero's obligations as assets of the estate, both in its internal reporting and communications, and in its reports to this Court, including reports made while Mr. Dondero was still in control of the Debtor.[6]

41. Second, Mr. Dondero agreed that the Official Committee of Unsecured Creditors would have standing to pursue claims against him arising under the Notes as part of the

---

Proceeding 21-03005 (seeking to collect more than $30 million on promissory notes issued by NexPoint Advisors, L.P.); Adversary Proceeding 21-03006 (seeking to collect more than $21 million on promissory notes issued by Highland Capital Management Services, Inc.); and Adversary Proceeding 21-03007 (seeking to collect more than $10 million on promissory notes issued by HCRE Partners LLC (n/k/a NexPoint Real Estate Partners LLC)).

[6] *See, e.g.*, internal communications referring to Mr. Dondero's obligations as loans (**Morris Exhibits 1, 4, and 7**); internal reports carrying the Notes as assets or otherwise referring to Mr. Dondero's obligations as loans (**Morris Exhibits 13, 14, 17, 19, 21, and 22**); and reports to the Court identifying the Notes as assets of the estate or otherwise referring to Mr. Dondero's obligations as loans (**Morris Exhibits 15, 16, 18, and 20**).

January 2020 corporate governance settlement.  Main Docket No. 354-1 at pdf page 4 of 62 ("The Committee is granted standing to pursue any and all estate claims and causes of action against Mr. Dondero . . . including any promissory notes held" by him).

42.  Based on the foregoing, Mr. Dondero will never be able to carry his burden of proving that the Debtor waived, or should be estopped from asserting, its right to collect on the Notes.

### 3. Mr. Dondero's Defense of "Lack of Consideration" Is Meritless

43.  Mr. Dondero's final affirmative defense is that the Debtor's claims "may be barred, in whole or in part, due to failure of consideration." **Morris Exhibit 12** ¶ 43.  This defense is also without merit.

44.  The principal or face amount of each Note is exactly the same as the amount of money contemporaneously transferred by the Debtor to Mr. Dondero.  *Compare* **Morris Exhibit 3** (Dondero's First Note dated February 2, 2018 in the amount of $3.825 million) *with* **Morris Exhibit 2** (wire confirmation showing the Debtor transferred $3.825 million to Mr. Dondero on February 2, 2018); *compare* **Morris Exhibit 6** (Dondero's Second Note dated August 1, 2018 in the amount of $2.5 million) *with* **Morris Exhibit 5** (bank statement showing the Debtor transferred $2.5 million to Mr. Dondero on August 1, 2018); *compare* **Morris Exhibit 8** (Dondero's Third Note dated August 13, 2018 in the amount of $2.5 million) *with* **Morris Exhibit 5** (bank statement showing the Debtor transferred $2.5 million to Mr. Dondero on August 13, 2018).

45.  In short, Mr. Dondero tendered three Notes to the Debtor with an aggregate face amount of $8.825 million in consideration for receiving three payments from the Debtor in the aggregate amount of $8.825 million.  Mr. Dondero's defense of "lack of consideration" is demonstrably false.

F.  **THE MOTION IS MERELY A DELAY TACTIC AND SHOULD BE DENIED**

46. Mr. Dondero has failed to show good cause to modify the Court's Scheduling Order.

47. "Scheduling orders and their enforcement are regarded as essential in ensuring that cases proceed to trial in a just, efficient, and certain manner." *Hernandez v. Mario's Auto Sales, Inc.*, 617 F. Supp. 2d 488, 493 (S.D. Tex. 2009). Thus, under Federal Rule of Civil Procedure 16, a scheduling order may modified only for "good cause." FED. R. CIV. P. 16(b)(4). "To show good cause, the party seeking to modify the scheduling order has the burden of showing that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *Squyres v. Heico Cos., LLC*, 782 F.3d 224, 237 (5th Cir. 2015) (internal quotations omitted). Courts consider the following factors in assessing whether the moving party demonstrates "good cause": (1) the explanation for the failure to timely comply with the scheduling order; (2) the importance of the modification; (3) potential prejudice in allowing the modification; and (4) the availability of a continuance to cure such prejudice. *See id.* "Notwithstanding this four-factor test, the court still has the inherent power to control its own docket to ensure that cases proceed before it in a timely and orderly fashion." *Hernandez*, 617 F. Supp. 2d at 493 (internal quotations omitted). To achieve this, trial courts are given broad discretion to modify scheduling orders "so that the integrity and purpose of the pretrial order may be preserved." *Id.* at 492; *see also Bilbe v. Belsom*, 530 F.3d 314, 317 (5th Cir. 2008) ("We afford district courts a great deal of deference in determining whether to modify scheduling orders, especially where, as here, the record suggests that the movant repeatedly demonstrated a lack of diligence.")

48. Here, Mr. Dondero failed to offer an adequate explanation for the failure to timely comply with the scheduling order or any potential prejudice that he will suffer in the absence

of such modification. In his Motion, Mr. Dondero seeks a two- to three-month delay in these proceedings to conduct discovery, prepare for trial, and to accommodate counsel's schedule. Motion ¶ 10. The Motion is nothing more than a delay tactic.

49. According to Mr. Dondero, "[d]iscovery will be fairly voluminous and numerous witnesses and potentially experts will need to be deposed, particularly as to the affirmative defenses asserted in Defendant's answer." *Id*. ¶ 12. However, he does not identify what discovery is needed or how expert testimony could possibly be useful in this case. Notably, at the time Mr. Dondero filed his Motion, he still had time under the Scheduling Order to timely seek whatever discovery he wanted, yet he offers no explanation for this failure to do so. *See Squyres*, 782 F.3d at 238 (affirming trial court's finding that there was no good cause to amend scheduling order where moving party "made no attempt to explain" delay in taking discovery and failed to "identify any discovery that he was unable to take"); *Hernandez*, 617 F. Supp. at 495 (no good cause shown where moving party "fails to explain how the complexities of this case warrant an extension"); *Binh Hoa Le v. Exeter Fin. Corp.*, No. 3:15-CV-38239-L, 2019 WL 1436375, at *16 (N.D. Tex. Mar. 31, 2019) (denying continuance where party "has not shown that he exercised diligence for purposes of" Rule 16(b) in attempting to schedule discovery before the deadline in the scheduling order for completing discovery).

50. Next, Mr. Dondero contends that his lawyers will be too occupied with the Debtor's motion for a permanent injunction to deal with this Adversary Proceeding, and that the discovery schedule will be "burdensome" on them. Motion ¶¶ 13-15. This is insufficient to demonstrate "good cause." *See Hernandez*, 617 F. Supp. at 495 (noting that while party claims his counsel's "burdensome" schedule will prevent him from meeting the discovery deadline, "such an excuse does not constitute good cause"). This Court has already held three hearings on the same subject matter (including two extensive, day-long evidentiary hearings), and no one has sought

13

additional discovery in that matter. Moreover, the May trial date for the permanent injunction was known no later than February 1, 2021 when the alternative scheduling order in that adversary proceeding became fixed.[7] Given that (1) discovery in this Adversary Proceeding is due to end on April, 30, 2021, (2) the trial on the permanent injunction will take place during the week of May 17, 2021, and (3) the trial in this Adversary Proceeding will take place during the week of June 21, 2021, the schedule actually works perfectly.

51.     Finally, Mr. Dondero contends that "good cause" exists to grant the Motion because he "does not believe he consented to the default Scheduling Order" and that a Rule 7026(f) conference did not occur. Motion ¶ 16. But, as Mr. Dondero effectively concedes, his explicit consent was not required, as the Scheduling Order expressly states: "If the parties do not submit a proposed scheduling order or do not schedule a status conference with the Court to discuss the provisions and deadlines of a scheduling order within forty-five days of the filling of this adversary proceeding, then *the parties are deemed to have consented to the terms of the Alternative Scheduling Order*." **Morris Exhibit 11** ¶ 3 (emphasis added). Moreover, as Mr. Dondero and his lawyers know, a Rule 7026(f) conference is not a condition precedent for the imposition of the Court's alternative schedule. Indeed, the parties never held a Rule 7026(f) conference in the permanent injunction adversary proceeding, yet Mr. Dondero relies on the docket call and trial dates automatically imposed in that case as one of the bases for the Motion. Motion ¶¶ 13-15. This is disingenuous at best. Any modification of the scheduling order would only buy Mr. Dondero more time and cause unnecessary delay in these proceedings. *See Hernandez*, 617 F. Supp. at 498-99 (denying continuance where "the integrity of the Court's scheduling order and the

---

[7] *See Order Regarding Adversary Proceedings Trial Setting and Alternative Scheduling Order* dated December 11, 2020 and filed at AP Docket No. 18 (providing for a docket call during the week of May 10, 2021 and a trial on the merits during the week of May 17, 2021) in Adv. Pro. 20-03190.

14
DOCS_NY:42721.6 36027/002

importance of deterring such dilatory behavior by the parties weighs against granting a continuance").

## CONCLUSION

For the foregoing reasons, the Debtor respectfully requests that the Court deny the Motion.

Dated:  March 30, 2021.                    **PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No.143717)
Ira D. Kharasch (CA Bar No. 109084)
John A. Morris (NY Bar No. 2405397)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
E-mail:    jpomerantz@pszjlaw.com
           ikharasch@pszjlaw.com
           jmorris@pszjlaw.com
           gdemo@pszjlaw.com
           hwinograd@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

15