Deborah Deitsch-Perez
State Bar No. 24036072
Michael P. Aigen
State Bar No. 24012196
STINSON LLP
3102 Oak Lawn Avenue, Suite 777
Dallas, Texas 75219
(214) 560-2201 telephone
(214) 560-2203 facsimile

**ATTORNEYS FOR DEFENDANT JAMES DONDERO**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** § | | **Case No. 19-34054** |
| § | | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.** § | | **Chapter 11** |
| § | | |
| Debtor. § | | |

| | | |
|---|---|---|
| § | | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** § | | |
| § | | |
| Plaintiff. § | | |
| v. § | | **Adversary No. 21-03003-sgj** |
| § | | |
| **JAMES D. DONDERO,** § | | |
| § | | |
| Defendant. § | | |

# JAMES DONDERO'S REPLY IN SUPPORT OF MOTION TO
# <u>WITHDRAW THE REFERENCE</u>

**Table of Contents**

Page

I. PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENT ............................1

II. SUMMARY OF KEY FACTS ...............................................................................................2

III. ARGUMENT ............................................................................................................................2

    A. Dondero Has Demonstrated That This Adversary Proceeding Requires Substantial Consideration Of Federal Tax Law Triggering Mandatory Withdrawal. ..................... 2

    B. Dondero Is Unequivocally Entitled To A Jury Trial On The Non-Core Breach Of Contract Claim, Requiring Withdrawal. ..................... 4

    C. Merely Filing A Proof Of Claim Does Not Waive A Jury Trial Right On Unrelated Matters. ..................... 6

    D. The Withdrawn Affirmative Defense Of Setoff Did Not Waive The Jury Trial Right. 8

    E. Considerations Of Efficiency Dictate Withdrawal Of The Entire Adversary Proceeding Now And For All Purposes. ..................... 8

IV. CONCLUSION ......................................................................................................................10

## Table of Authorities

Page(s)

**Cases**

*Am. Tel. & Tel. Co. v. Chateaugay Corp.*,
 88 B.R. 581 (S.D.N.Y. 1988)..................................................................................................4

*In re Ames Dep't Stores Inc.*,
 512 B.R. 736 (S.D.N.Y. 2014)................................................................................................4

*In re Base Holdings, LLC*,
 No. 09-34269-SGJ-7, 2014 WL 895403 (N.D. Tex. Mar. 5, 2014) .........................................8

*In re Base Holdings, LLC*,
 No. 3:11-CV-3531-D, 2015 WL 1808536 (N.D. Tex. Apr. 21, 2015) ....................................8

*In re Bella Vita Custom Homes*,
 No. 16-34790-BJH, 2018 WL 2966838 (N.D. Tex. May 29, 2018).........................................5

*In re Clay*,
 35 F.3d 190 (5th Cir.1994) .....................................................................................................9

*In re Davis*,
 No. 07-33986-H3-7, 2012 WL 2871662 (S.D. Tex. July 10, 2012),
 aff'd, 538 F. App'x 440 (5th Cir. 2013)..................................................................................5

*In re Enron Corp.*,
 No. 05 CIV. 4079 (GBD), 2005 WL 1185804 (S.D.N.Y. May 18, 2005)................................4

*Faulkner v. Berg*,
 2008 Bankr. LEXIS 2069 (Bankr. N.D. Tex. July 23, 2008) ................................................10

*GenOn Mid-Atl. Dev., LLC v. Natixis Funding Corp.*,
 No. 4:19-CV-3078, 2020 WL 429880 (S.D. Tex. Jan. 28, 2020).......................................9, 10

*Germain v. Connecticut Nat. Bank*,
 988 F.2d 1323 (2d Cir. 1993)..................................................................................................7

*In re Goldblatt's Bargain Stores, Inc.*,
 No. 05 C 03840, 2005 WL 8179250 (N.D. Ill. Dec. 6, 2005) .................................................6

*Guevoura Fund Ltd. v. Sillerman*,
 No. 18 CIV. 9784 (CM), 2018 WL 6713124 (S.D.N.Y. Dec. 3, 2018)....................................4

*In re Heritage Org., L.L.C.*,
 2006 Bankr. LEXIS 3470 (Bankr. N.D. Tex. Dec. 15, 2006).................................................10

*In re Jensen*,
    946 F.2d 369 (5th Cir. 1991) ..............................................................................................7

*In re JRjr33, Inc.*,
    No. 18-32123-SGJ-7, 2020 WL 7038302 (Bankr. N.D. Tex. Nov. 30, 2020) .....................6, 7

*In re Keener*,
    No. 03-44804, 2008 WL 912933 (Bankr. S.D. Tex. Apr. 2, 2008) .........................................5

*Light Energy Installers, LLC v. Kyocera Intl, Inc.*,
    No. 1:16-MC-36, 2018 WL 4298635 (N.D.N.Y. Sept. 10, 2018) ...........................................4

*In re Madoff*,
    597 B.R. 466 (Bankr. S.D.N.Y. 2019) ...................................................................................7

*In re Manchester, Inc.*,
    No. 08-30703-11-BJH, 2008 WL 5273289 (Bankr. N.D. Tex. Dec. 19, 2008) .......................6

*In re Montemayor*,
    547 B.R. 684 (Bankr. S.D. Tex. 2016) ...................................................................................5

*In re Ondova Ltd. Co.*,
    No. 09-34784-SGJ-11, 2009 WL 3681905 (N.D. Tex. Oct. 2, 2009) .....................................4

*In re Orion Pictures Corp.*,
    4 F.3d 1095 (2d Cir. 1993)......................................................................................................9

*In re Pali Holdings, Inc.*,
    488 B.R. 841 (Bankr. S.D.N.Y. 2013) ...................................................................................5

*In re Prince*,
    No. 09-43627, 2012 WL 1095506 (Bankr. E.D. Tex. Mar. 30, 2012) ....................................5

*In re Quality Lease & Rental Holdings, LLC*,
    No. 14-60074, 2016 WL 416961 (Bankr. S.D. Tex. Feb. 1, 2016) ....................................9, 10

*S. Pac. Transp. Co. v. Voluntary Purchasing Groups, Inc.*,
    252 B.R. 373 (E.D. Tex. 2000)................................................................................................4

*Salloum v. Comm'r of Internal Revenue*,
    113 T.C.M. (CCH) 1563 (T.C. 2017) .....................................................................................3

*In re Satelco, Inc.*,
    58 B.R. 781 (Bankr. N.D. Tex. 1986) ....................................................................................5

*In re Se. Materials, Inc.*,
    467 B.R. 337 (Bankr. M.D.N.C. 2012)...................................................................................5

*In re Sherwin Alumina Co., LLC*,
    No. 16-20012, 2016 WL 11188458 (Bankr. S.D. Tex. Dec. 21, 2016)
    (report and recommendation adopted sub nom.) .................................................................9

*Stern v. Marshall*,
    564 U.S. 462 (2011).............................................................................................. *passim*

*Tow v. Park Lake Communities, LP*,
    No. CV H-17-3364, 2018 WL 287861 (S.D. Tex. Jan. 4, 2018) ...............................................5

*In re White Motor Corp.*,
    42 B.R. 693 (N.D. Ohio 1984).................................................................................................4

*In re Willington Convalescent Home, Inc.*,
    850 F.2d 50 (2d Cir. 1988).......................................................................................................5

*In re Windstream Hldgs., Inc.*,
    No. 19-22312 (RDD), 2020 WL 1304147 (Bankr. S.D.N.Y. Mar. 17, 2020) .......................7, 8

## Rules and Statutes

28 U.S.C. § 157(d) .........................................................................................................................1

28 U.S.C. § 157(e) .........................................................................................................................1

Fed. R. Bankr. P. 5011 ...................................................................................................................1

## Other Authorities

1 Collier on Bankruptcy ¶ 3.02[3][c] (16th ed. 2021) ................................................................4, 5

Pursuant to 28 U.S.C. §§ 157(d) and (e), Federal Rule of Bankruptcy Procedure 5011 and L.B.R 5011-1, Defendant James Dondero ("Dondero") hereby respectfully submits his reply in support of his motion to withdraw the reference (the "Motion").

## I. PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENT

1. It is no secret why Debtor wants this Court to retain this case; it is not simply that the Court is "extensively familiar" with the case, it is that the Court has expressed its dislike and distrust of Dondero,[1] and therefore Debtor wants the advantage of a non-jury fact-finder who already has indicated in words and actions that she does not believe a word Mr. Dondero says.[2] Respectfully, it is Debtor -- not Dondero -- who is forum shopping and that is precisely why there is a constitutional imperative for Dondero to receive the jury trial to which he is entitled in the District Court.

2. Contrary to Plaintiff's argument, Dondero has established that mandatory withdrawal is required because determination of the claims against him require substantial consideration of federal tax law. In addition, withdrawal is appropriate because the dispositive claim (the contract claim on which the supposed turnover claim is dependent) is a non-core claim for which Mr. Dondero has a jury trial right that the bankruptcy court is unable to constitutionally provide. Mr. Dondero's currently filed and previously withdrawn Proofs of Claim do not constitute consent to bankruptcy court jurisdiction over *this adversary proceeding* or a waiver of his right to a jury trial.

3. Finally, the Bankruptcy Court's demonstrated mistrust of Dondero, along with considerations of judicial economy are strong reasons that the reference should be withdrawn for all purposes, and not merely for trial as Debtor proposes, with the adversary proceeding stayed pending the withdrawal.[3]

---

[1] Debtor Response ("Resp."), ¶¶ 2-3 [Case No. 21-03003, Dkt. No. 30].
[2] Motion to Recuse, ¶¶ 1-2[Case No. 19-34054, Dkt. No. 2060]; Brief in Support, ¶¶ 4-60 [Dkt. No. 2061]; Appx. [Dkt. No. 2062] (attached to the accompanying Declaration of D. Deitsch-Perez ("Deitsch-Perez Declaration") as Exs. 1-3.
[3] So confident of this Court's leanings, Debtor did not even respond to Dondero's *Motion to Stay Pending the Motion to Withdraw the Reference* [Dkt. No. 22].

## II.  SUMMARY OF KEY FACTS

4. On January 22, 2021, Plaintiff commenced this adversary proceeding against Dondero, asserting a state law, non-core breach of contract claim and an entirely dependent turnover claim. Dondero denied consent to the Bankruptcy Court entering final orders or judgment, and demanded a jury trial in District Court. [Dkt. No. 6, ¶¶ 3-5, 44, 45; Dkt. No. 16, ¶¶ 3-5, 46, 47].

5. While Dondero filed certain proofs of claim, the Bankruptcy Court ordered the withdrawal with prejudice of Proofs of Claim Nos. 138 and 188 [Dkt. No. 1510] on December 4, 2020 before this adversary proceeding was filed, negating any bearing those have on this case. Dondero also filed Proofs of Claim Nos. 141, 142, and 145 (the "Remaining POCs"). These claims have no bearing on this adversary proceeding or significance to the bankruptcy as a whole.[4] Moreover Dondero is not seeking in this adversary any setoff that would entangle this adversary proceeding with a core-matter proof of claim.[5]

## III.  ARGUMENT

**A. Dondero Has Demonstrated That This Adversary Proceeding Requires Substantial Consideration Of Federal Tax Law Triggering Mandatory Withdrawal.**

6. Debtor's argument presupposes no defense to payment of the Notes. Dondero's principal defense is that the Notes are subject to conditions subsequent under which the Notes would be forgiven as compensation. If Debtor does not hamper Dondero's defense by refusing to respond to discovery, Dondero will establish that these Notes, like other loans to senior Highland executives, were to be forgiven on the occurrence of conditions subsequent. Debtor argues that the face of the Notes indicates they are due.[6] However, to understand why they so appear in the face of subsequent

---

[4] POC 141 and 145 (potential contingent claims as former LP of debtor and successor of Canis Major Trust related to 2008 tax audit); POC 142 (contingent unliquidated contribution and indemnity claims as former officer and director).

[5] Dondero's Obj. and Ans. to Pl.'s Interrog. No. 3, May 7, 2021, attached to the Deitsch-Perez Declaration as Ex. 4.

[6] Debtor Resp. ¶ 19 [Case 21-03003, Dkt. No. 30].

agreement rendering the Notes subject to potential forgiveness is rooted in tax law that the fact-finder will have to examine to determine whether the Debtor is entitled to demand payment now.

7. *Salloum v. Comm'r of Internal Revenue*, 113 T.C.M. (CCH) 1563 (T.C. 2017) notes the complex fact and federal tax law determinations applying to whether notes are loans or compensation. The fact-finder will need to hear fact and expert testimony about how loans are used as a deferred compensation device and how those devices are structured. Such analysis requires the Court to determine the particulars and nuances of the Notes, the circumstances and testimony regarding the creation of the Notes, testimony on the conditions subsequent and financial benchmarks resulting in the Notes becoming compensation, whether those conditions subsequent were met, how the funds from the Notes were ultimately treated, and by whom. *Id.* at 1-5.

8. The court in *Salloum* described the relevant issues in determining whether a particular transfer of funds was a loan with a condition subsequent or immediate compensation:

> The determination of whether a transfer of funds constitutes a loan is a question of fact. See, e.g., Fisher v. Commissioner, 54 T.C. 905, 909 (1970). In order for a transfer of funds to constitute a loan, at the time the funds are transferred there must be an unconditional obligation (i.e., an obligation that is not subject to a condition precedent) on the part of the transferee to repay, and an unconditional intention on the part of the transferor to secure repayment of, the funds . . .
>
> Whether a transfer of funds constitutes a loan may be inferred from factors surrounding the transfer, including the existence of a debt instrument, the existence of a written loan agreement, the provision of collateral securing the purported loan, the accrual of interest on the purported loan, the solvency of the purported borrower at the time of the purported loan, the treatment of the transferred funds as a loan by the purported lender and the purported borrower, a demand for repayment of the transferred funds, and the repayment of the transferred funds.

*Id*. at 5 (citations omitted).

9. Plaintiff wants to characterize this action as nothing but a simple suit on a demand note. However, these are not simple notes. One Note expressly states "[t]his Note is paid to the Maker to help satisfy any current tax obligations of a former partner or current partner." Plaintiff's own monthly operating reports identified the balances due on all three notes as "DUE FROM OTHER –

3

TAX LOANS" and "Partner Tax Loans." *Motion* at 2. And all three Notes reference the existence of other "existing or hereafter arising" related agreements (*e.g.*, Dkt. 1-1 ¶ 8) that Mr. Dondero will explain related to the conditions under which the loans would be forgiven.

10. Because an understanding of the complex tax requirements for a bona fide note that also has the capacity to be deferred compensation is needed to adjudicate this proceeding, the cases cited by Debtor concerning "routine application of a non-Bankruptcy Code federal statute" or "routine application of the tax code" or tax issues that bankruptcy courts "routinely consider" are inapt.[7] Debtor expresses no other challenge to Dondero's right to mandatory withdrawal.

**B. Dondero Is Unequivocally Entitled To A Jury Trial On The Non-Core Breach Of Contract Claim, Requiring Withdrawal.**

11. Debtor hides behind its wholly derivative turnover claim to attempt to characterize this Adversary Proceeding as a core matter. But the turnover claim is illusory. It seeks exactly the same relief Debtor seeks on its claim for breach of contract concerning the Notes.

12. Debtor falls into the trap identified by Colliers. Colliers points out that "[t]he categorization of 'orders to turn over property of the estate' as core proceedings has misled some courts into expanding bankruptcy court authority beyond that permissible under *Marathon*," giving as an example "an action on matured promissory notes given pursuant to a stock purchase plan."[8] As Colliers points out, "[t]he problem with these cases is that, under their rationale, every action brought

---

[7] Contrary to Plaintiff's citation to *Am. Tel. & Tel. Co. v. Chateaugay Corp.*, 88 B.R. 581, 588 (S.D.N.Y. 1988), *In re Ames Dep't Stores Inc.*, 512 B.R. 736, 743 (S.D.N.Y. 2014), *S. Pac. Transp. Co. v. Voluntary Purchasing Groups, Inc.*, 252 B.R. 373, 382 (E.D. Tex. 2000), these cases *support* Dondero's position, with withdrawal granted in each due to substantial and material considerations of CERCLA and other federal law. *In re Ondova Ltd. Co.*, No. 09-34784-SGJ-11, 2009 WL 3681905, at *3 (N.D. Tex. Oct. 2, 2009) is also inapt because the movant sought the "highly unusual" withdrawal of an entire bankruptcy case. Also inapt are *In re Enron Corp.*, No. 05 CIV. 4079 (GBD), 2005 WL 1185804, at *2 (S.D.N.Y. May 18, 2005) and *In re White Motor Corp.*, 42 B.R. 693, 703 (N.D. Ohio 1984) because both predate *Stern* and in each the court found the federal issue not critical to resolution. In *Guevoura Fund Ltd. v. Sillerman*, No. 18 CIV. 9784 (CM), 2018 WL 6713124, at *4 (S.D.N.Y. Dec. 3, 2018) the court indicated it would have granted mandatory withdrawal if the issue was, like here, "seldom litigated," and, in any event, granted permissive withdrawal. Likewise *Light Energy Installers, LLC v. Kyocera Intl, Inc.*, No. 1:16-MC-36 (MAD/CFH), 2018 WL 4298635, at *3 (N.D.N.Y. Sept. 10, 2018), on which Debtor relies, concerned only "routine" applications of tax law, unlike the less common issue here.

[8] 1 Collier on Bankruptcy ¶ 3.02[3][c] (16th ed. 2021).

4

by a trustee or debtor in possession to recover money or property could be characterized as a turnover proceeding, effectively eradicating *Marathon*" even though "[e]ach of these cases involved a cause of action owned by the debtor at the time the title 11 case was filed which, by definition, is a 'related matter' not a core proceeding."[9]  Colliers collected and praised other courts that have held that *Marathon* cannot so easily be evaded, holding that "such cases are entitled to 'related' treatment."[10]

13. A breach of contract claim is incontrovertibly non-core, with a jury trial right. *In re Keener*, No. 03-44804, 2008 WL 912933, at *3 (Bankr. S.D. Tex. Apr. 2, 2008); *In re Bella Vita Custom Homes*, No. 16-34790-BJH, 2018 WL 2966838, at *2 (N.D. Tex. May 29, 2018).

14. The critical distinction is that when "an adversary proceeding presents a bona fide dispute as to liability, the matter cannot be viewed as a turnover proceeding." *In re Se. Materials, Inc.*, 467 B.R. 337, 354 (Bankr. M.D.N.C. 2012) (contrasting effort to recover a "matured, liquidated debt" that was the subject of a live proof of claim).  Thus, cases relied on by Debtor such as *In re Se. Materials* (which recognized that state law collection claims are not core turnover claims) are unavailing.  Similarly unhelpful for Debtor is *Tow v. Park Lake Communities, LP*, No. CV H-17-3364, 2018 WL 287861, at *1-2 (S.D. Tex. Jan. 4, 2018).  There, unlike here, the *only* claim at issue was for turnover of an account receivable that was needed for the Chapter 7 Trustee to begin paying claims, with the court recognizing that state law collection claims were generally non-core, ***citing this Court***.[11]  *Tow* seems to be an account receivable collection case masquerading

---

[9] *Id.* (citations omitted)

[10] *Id.*

[11] *In re Satelco, Inc.*, 58 B.R. 781, 789 (Bankr. N.D. Tex. 1986) ("[T]his Court holds that actions to collect accounts receivable based upon state law contract principles do not fall within the scope of turnover actions as contemplated by § 542 and § 157(b)(2)(E), absent a final judgment from a court of competent jurisdiction, a stipulation, or some other binding determination of liability."); *see also In re Prince*, No. 09-43627, 2012 WL 1095506, at *2 (Bankr. E.D. Tex. Mar. 30, 2012) (only turnover and fraudulent transfer claims filed); *In re Pali Holdings, Inc.*, 488 B.R. 841, 842 (Bankr. S.D.N.Y. 2013) (only turnover claim); *In re Montemayor*, 547 B.R. 684, 688 (Bankr. S.D. Tex. 2016) (same); *In re Davis*, No. 07-33986-H3-7, 2012 WL 2871662, at *2 (S.D. Tex. July 10, 2012), aff'd, 538 F. App'x 440 (5th Cir. 2013) (same). *In re Willington Convalescent Home, Inc.*, 850 F.2d 50, 52 (2d Cir. 1988), is also distinguishable, both because it predates *Stern* and because the only claims were turnover and preference, both core as opposed to the contested non-core, state law breach of contract claim here.

as a turnover claim, an example of bad facts (the Trustee's acknowledged urgent need for cash) making bad law.

15. Perhaps emboldened by this Court's easy acceptance of its charge (before one iota of proof was considered) that Dondero was guilty of contempt,[12] Debtor's argument depends on the Court accepting its bare assertion that the Notes are "due and payable" and that any defense is "spurious" and "invalid." Response ¶ 33. But if Dondero's defenses are so spurious and invalid, why would the District Court be, as Debtor worries, "possibly more favorable." *Id*.

## C. Merely Filing A Proof Of Claim Does Not Waive A Jury Trial Right On Unrelated Matters.

16. After "importantly" but falsely contending in its Response that POC 188 waived Dondero's right to a jury trial because it expressly concerned the very same matters at issue in this adversary proceeding (Response ¶ 35), Debtor sheepishly admitted in a supplemental pleading [Dkt. 31] that Dondero withdrew that POC 188 before Debtor brought this adversary proceeding. It thus has no impact whatsoever. *In re Goldblatt's Bargain Stores, Inc.*, No. 05 C 03840, 2005 WL 8179250, at *5 (N.D. Ill. Dec. 6, 2005) (claims withdrawn before adversary proceeding are as if never filed); *In re Manchester, Inc.*, No. 08-30703-11-BJH, 2008 WL 5273289, at *3-6 (Bankr. N.D. Tex. Dec. 19, 2008) (permissible to withdraw a claim to preserve jury trial right). Plaintiff makes no allegation that this adversary action involves any of the pending proofs of claim signed by Dondero.

17. A party waives his right to a jury trial of a non-core adversary proceeding only if resolution of that adversary proceeding is inextricably intertwined with a proof of claim filed by the party. This Court said as much in *In re JRjr33, Inc.*:

> [T]o be clear, the mere fact that the JGB Defendants have filed proofs of claim in the bankruptcy case did not automatically give the bankruptcy court the constitutional authority to adjudicate all the Trustee's claims against the JGB Defendants. However, because the Trustee's claims against the JGB Defendants are essentially counterclaims

---

[12] *See* Order to Show Cause ¶ 1 [Case No. 19-34054, Dkt. No. 2255]; Resp. to Show Cause Order at 19-20 [Case No. 19-34054, Dkt. No. 2313].

6

> to the JGB Defendants' proofs of claim, *that are inextricably intertwined with resolving the proofs of claim themselves*, the bankruptcy court can constitutionally issue final orders/judgments, despite the fact that two Counts … might exist outside of the realm of bankruptcy.

No. 18-32123-SGJ-7, 2020 WL 7038302 at *6 (Bankr. N.D. Tex. Nov. 30, 2020) (emphasis added). *In re JRjr33* makes it clear that when a non-core claim such as Dondero's is not inextricably intertwined with a filed proof of claim, cases such as *In re Jensen*, 946 F.2d 369, 374 (5th Cir. 1991) on which Debtor relies, are inapposite.[13]

18. This case is more like *In re Windstream Hldgs., Inc.*, No. 19-22312 (RDD), 2020 WL 1304147 (Bankr. S.D.N.Y. Mar. 17, 2020). In *Windstream*, the plaintiffs, Windstream debtors, filed an adversary proceeding against the defendants alleging violation of the Lanham Act and similar state deceptive trade practices laws. *Id.* at *1. Defendants timely claimed jury trial rights, did not consent to the bankruptcy court conducting a jury trial, and moved to withdraw the reference. *Id.*

19. The plaintiff-debtors argued that defendants were not entitled to a jury trial on the Lanham Act and state law claims, because one of the defendants filed proofs of claim in some of the debtors' cases. *Id.* at *6. Citing *Germain v. Connecticut Nat. Bank*, 988 F.2d 1323, 1330 (2d Cir. 1993), *Stern v. Marshall*, 564 U.S. 462, 497-98 (2011), and *In re Madoff*, 597 B.R. 466, 476, 485 (Bankr. S.D.N.Y. 2019) the court upheld the defendants' right to a jury trial and withdrew the reference because the Lanham Act and state law claims were "not integrally tied to the restructuring of the debtor-creditor or creditor-creditor relations." *Windstream,* 2020 WL 1304147 at *6, *8-*9.

20. Judge Drain relied on the holding in *Stern* "that merely filing a proof of claim does not subject a creditor to the bankruptcy court's power to enter a final order on *all* matters in which the

---

[13] Debtor's reliance on *In re Madoff* is similarly unavailing. *Madoff* makes clear: "Not every claim filing triggers a bankruptcy court's equitable jurisdiction and defeats the defendant-creditor's right to a jury trial. . . . Rather, a creditor loses its jury trial right <u>only with respect to claims whose resolution affects the allowance or disallowance of the creditor's proof of claim or is otherwise so integral to restructuring the debtor-creditor relationship</u>." (quotations and citations omitted) (emphasis added). In its Response Plaintiff ignores the imperative *integrally related* prong. *Madoff* differs from our case because the claims in the *Madoff* adversary proceeding would directly result in the allowance or disallowance of related proofs of claim.

7

bankruptcy court has jurisdiction, even where Congress denominated the matter as 'core.'" *Id.* at *4 (*citing Stern*, 564 U.S. at 496-97) (refuting argument that *Langenkamp* is premised on waiver) (emphasis in original). As the Court should conclude here, the bankruptcy court concluded that defendants were entitled to a jury trial on the remaining issues, including breach of contract. *Id.* at *8.

**D.  The Withdrawn Affirmative Defense Of Setoff Did Not Waive The Jury Trial Right.**

21.  As a preliminary matter, Dondero's setoff defense was disclaimed, so it is not a factor here. But even if Dondero had not disavowed it, it would not have been dispositive.

22.  Plaintiff's argument that the (now disclaimed) affirmative defenses of offset asserted by Dondero submits him to the equitable jurisdiction of this Court is directly contradicted by the U.S. District Court for this district, in *In re Base Holdings, LLC*, No. 09-34269-SGJ-7, 2014 WL 895403, at *4 (N.D. Tex. Mar. 5, 2014). There, the District Court rejected the recommendation of this Court against withdrawal, holding that state law counterclaims (much less setoffs) that would not necessarily be resolved by resolution of a party's proof of claim cannot constitutionally be decided by the bankruptcy court.

23.  In its Second Report and Recommendation to the District Court in *In re Base Holdings, LLC*, at Docket No. 200, pages 26-27, of the Adversary Proceeding Case No. 09-02356, conceded that there were, "[G]enuine questions whether the bankruptcy court would have constitutional authority to finally adjudicate the counterclaims – particularly if the real goal of [the Debtor] is to augment the estate rather than simply setoff or eliminate [the creditor's] claim." As a result, this Court recommended withdrawal, which the District Court ordered. *In re Base Holdings, LLC*, No. 3:11-CV-3531-D, 2015 WL 1808536 (N.D. Tex. Apr. 21, 2015).

**E.  Considerations Of Efficiency Dictate Withdrawal Of The Entire Adversary Proceeding Now And For All Purposes.**

24.  Because, as shown above, this Court must conclude that at least Count 1 of this adversary proceeding involves a non-core claim for which Dondero is entitled to, and has not waived,

the right to a jury trial that the bankruptcy court cannot constitutionally conduct, this Court must recommend withdrawal of the reference to the District Court for at least this count. *In re Sherwin Alumina Co., LLC*, No. 16-20012, 2016 WL 11188458, at *2 (Bankr. S.D. Tex. Dec. 21, 2016) (report and recommendation adopted sub nom.) (holding where legal and equitable relief pled, legal claims predominate, jury trial right exists, withdrawal is mandatory).

25. Thus, the only remaining question is whether the turnover claim should be determined by this Court separate from the non-core count that needs to be determined by a jury trial in the District Court. Dondero respectfully submits that leaving any part of this case in the Bankruptcy Court is not appropriate given the substantial and material tax issues, as well as for judicial efficiency.

26. Whether to withdraw the reference for the turnover claim is a question of permissive withdrawal. When the non-core claim predominates, as it does here, a bankruptcy court's trial of the core issue threatens to usurp a party's right to a jury trial and District Court determination (for instance by the application of collateral estoppel) and/or risks inconsistent determinations. *In re Orion Pictures Corp.*, 4 F.3d 1095, 1099-1101 (2d Cir. 1993).

27. Citing *Orion,* the Bankruptcy Court for the Southern District of Texas held that when a jury trial is properly requested, "the bankruptcy court must recommend . . . withdraw[al]" and that immediate withdrawal of *entire* adversary proceeding including core and non-core claims is the most efficient and practical practice. *In re Quality Lease & Rental Holdings, LLC*, No. 14-60074, 2016 WL 416961, at *5-6 (Bankr. S.D. Tex. Feb. 1, 2016) (report and recommendation adopted) (citing *Orion,* 4 F.3d at 1101 and *In re Clay,* 35 F.3d 190, 196–97 (5th Cir. 1994)); *see also GenOn Mid-Atl. Dev., LLC v. Natixis Funding Corp.*, No. 4:19-CV-3078, 2020 WL 429880, at *4 (S.D. Tex. Jan. 28, 2020) (even when jury right not at stake, where core claim predominates, withdrawal appropriate).

28. Significantly, in *GenOn* the court recommended withdrawal notwithstanding its acknowledged familiarity with the case and the potential for forum shopping, both of which counseled

9

against withdrawal. *Id.* at *3. Nonetheless, citing *Stern*, it found that the presence of non-core state law claims, tipped the scale in favor of withdrawal, albeit only for trial. *Id.* at *5.

29. Here, however, unlike in *GenOn*, but like *In re Quality Lease*, the right to a jury trial was properly invoked. Thus, as in *Quality Lease*, the reference should be withdrawn here immediately, not just for trial. Debtor's citation to *Faulkner v. Berg (In re Heritage Org., L.L.C.*, 2006 Bankr. LEXIS 3470, at *12-*15 (Bankr. N.D. Tex. Dec. 15, 2006) is especially helpful to Dondero. There, while the court initially recommended against withdrawing the reference (the opinion Debtor cited), after the parties sought a jury trial, the bankruptcy court recommended that the reference be withdrawn immediately for all purposes, and it was. *Faulkner v. Berg*, 2008 Bankr. LEXIS 2069, at *24-25 (Bankr. N.D. Tex. July 23, 2008). Debtor did not cite the latter opinion.

30. Having the case sooner than later will enable the District Court to have the familiarity necessary to make key trial determinations on the more complex evidentiary and expert issues that arise in a jury trial. Moreover, Plaintiff has indicated an intent to file a motion for summary judgment. Because the Bankruptcy Court can only recommend a resolution and the District Court will be required to decide such a motion *de novo* in any event, it will be more efficient for the District Court to start overseeing this case as soon as possible. This will maximize its familiarity with the case and avoid duplication of effort and wasted costs.

## IV.    CONCLUSION

WHEREFORE, for the reasons above, Dondero respectfully requests that the District Court enter an order: (1) immediately withdrawing the reference of the entirety of the case; (2) staying the matter pending determination; and (3) granting such further relief as equity and justice requires.

Dated: May 21, 2021                    Respectfully submitted,

                                       */s/Deborah Deitsch-Perez*
                                       Deborah Deitsch-Perez
                                       State Bar No. 24036072
                                       Michael P. Aigen

**10**

> State Bar No. 24012196
> STINSON LLP
> 3102 Oak Lawn Avenue, Suite 777
> Dallas, Texas 75219
> (214) 560-2201 telephone
> (214) 560-2203 facsimile
> Email: deborah.deitschperez@stinson.com
> Email: michael.aigen@stinson.com
>
> **ATTORNEYS FOR DEFENDANT JAMES DONDERO**

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on May 21, 2021, a true and correct copy of this document was served via the Court's CM/ECF system on counsel for the Plaintiff.

> */s/Deborah Deitsch-Perez*
> Deborah Deitsch-Perez