BTXN 138 (rev. 03/15)

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| In Re:<br>Highland Capital Management, L.P.<br><br>         Debtor(s) | § § § § § | Case No.: 19–34054–sgj11<br>Chapter No.: 11 |
| Highland Capital Management, L.P.<br>         Plaintiff(s)<br> vs.<br>James Dondero<br>         Defendant(s) | § § § § § § | Adversary No.: 21–03003–sgj<br><br>Civil Case No.: 3:21–CV–01010–E |
| Highland Capital Management, L.P.<br>         Plaintiff(s)<br> vs.<br>James Dondero<br>         Defendant(s) | § § § § § § § § | |

# NOTICE OF TRANSMITTAL REGARDING WITHDRAWAL OF REFERENCE

I am transmitting:

- ☐ One copy of the Motion to Withdraw Reference (USDC Civil Action No. – DNC Case) **NOTE**: A Status Conference has been set for  at , in _ before U.S. Bankruptcy Judge _. The movant/plaintiff, respondent/defendant or other affected parties are required to attend the Status Conference.
- ☑ One copy of: <u>Report and Recommendation</u> .

**TO ALL ATTORNEYS:** Fed.R.Bankr.P. 5011(a) A motion for withdrawal of a case or proceeding shall be heard by a district judge, [*implied*] that any responses or related papers be filed likewise.

DATED:  7/7/21         FOR THE COURT:
                  Robert P. Colwell, Clerk of Court

                  by: /s/Sheniqua Whitaker, Deputy Clerk



**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed July 6, 2021**

United States Bankruptcy Judge

___

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT L.P., | § § | CASE NO. 19-34054-SGJ-11 (CHAPTER 11) |
| DEBTOR. | § | |
| _____ | § | |
| HIGHLAND CAPITAL MANAGEMENT L.P., | § § | ADVERSARY NO. 21-03003 |
| PLAINTIFF, | § | (CIV. ACTION #3:21-CV-01010-E) |
| | § | |
| VS. | § | |
| | § | |
| JAMES DONDERO, | § | |
| DEFENDANT. | § | |

**REPORT AND RECOMMENDATION TO DISTRICT COURT PROPOSING THAT IT: (A) GRANT DEFENDANT'S MOTION TO WITHDRAW THE REFERENCE AT SUCH TIME AS BANKRUPTCY COURT CERTIFIES THAT ACTION IS TRIAL READY; AND (B) DEFER PRETRIAL MATTERS TO BANKRUPTCY COURT**

## I. INTRODUCTION

The above-referenced adversary proceeding (the "Adversary Proceeding") is related to the bankruptcy case of Highland Capital Management, L.P. (the "Bankruptcy Case").[1] Highland Capital Management, L.P. (the "Debtor" or "Highland") filed a voluntary Chapter 11 petition on October 16, 2019 in the United States Bankruptcy Court of Delaware. That court subsequently entered an order transferring venue to the Northern District of Texas, Dallas Division, on December 4, 2019. A Chapter 11 plan was confirmed by the bankruptcy court on February 22, 2021. The chapter 11 plan has been appealed by the Defendant in this action, James D. Dondero ("Dondero-Defendant"), and certain parties related to him. The appeal of the plan is now pending before the Fifth Circuit, but no stay pending appeal has been granted.

On January 22, 2021, shortly before its Chapter 11 plan was confirmed, the Debtor, as Plaintiff, brought this Adversary Proceeding against Dondero-Defendant, who was Highland's co-founder and former President and Chief Executive Officer. The Adversary Proceeding pertains to three promissory notes (collectively, the "Notes") executed by Mr. Dondero in favor of the Debtor in 2018. Each of the Notes were demand notes. On December 3, 2020, the Debtor sent Dondero-Defendant a letter demanding payment by December 11, 2020, as allowed under the terms of the notes. Following Dondero-Defendant's failure to pay on the Notes in response to the demand letter, the Debtor brought this action to collect on the Notes. The Debtor's Chapter 11 plan contemplates collection on these Notes (as well as several other notes of parties related to Dondero-Defendant) as part of its funding to pay creditors.

---

[1] Bankruptcy Case No. 19-34054.

2

Under the United States District Court for the Northern District of Texas' standing order of reference[2], proceedings arising in, or related to, a case under Title 11 are automatically referred to the bankruptcy court. Dondero-Defendant submitted a *Motion and Memorandum of Law in Support to Withdrawal the Reference*[3] (the "Motion") seeking to have the reference withdrawn, such that this Adversary Proceeding would be adjudicated in the District Court. The bankruptcy court conducted a status conference concerning the Motion, pursuant to Local Bankruptcy Rule 5011-1, on May 25, 2021.

The bankruptcy court submits the following report and recommendation to the District Court, ultimately recommending that the Motion be granted, ***but only at such time as the bankruptcy court certifies to the District Court that the lawsuit is trial ready***. The bankruptcy court further recommends that the District Court ***defer to the bankruptcy court the handling of all pretrial matters***.

## II.    NATURE OF THE ADVERSARY PROCEEDING

### a.  The Complaint and Procedural History

The Debtor commenced this Adversary Proceeding by filing its *Complaint for (I) Breach of Contract and (II) Turnover of Property of the Debtor's Estate*[4] on January 22, 2021. The Debtor's Complaint asserts two causes of action: (1) a breach of contract claim ("Count 1") and (2) a turnover action under 11 U.S.C. § 542(b) for the amounts owed on the Notes ("Count 2"). The principal amounts and execution dates for each of the three Notes were: (i) $3,825,000, executed February 2, 2018, (ii) $2,500,000, executed August 1, 2018, and (iii) $2,500,000, executed August 13, 2018. The Debtor now seeks monetary damages totaling $9,004,013.07, inclusive of accrued but unpaid

---

[2] Misc. Order No. 33.
[3] Adversary Case No. 21-03003, Dkt. 21.
[4] Adversary Case No. 21-03003, Dkt. 1.

interest and cost of collection. Because the Debtor alleges the amounts due on the Notes are property of its estate, it argues that turnover pursuant to 11 U.S.C. § 542(b) is appropriate.

After being served with summons on January 28, 2021, Dondero-Defendant filed his *Original Answer*[5] on March 16, 2021 before subsequently filing his *Amended Answer*[6] on April 6, 2021.

Dondero-Defendant has three pending proofs of claim in the Bankruptcy Case that are unliquidated, contingent claims. Two other proofs of claim previously filed by Mr. Dondero were withdrawn with prejudice before the commencement of the Adversary Proceeding on December 4, 2020.[7] ***Proof of Claim No. 188 was Dondero-Defendant's proof of claim directly relating to the Notes and was one of the two proofs of claim withdrawn with prejudice.***

### b. The Motion to Withdraw the Reference, Response Opposed, and Reply

On April 15, 2021, Dondero-Defendant filed the Motion. As a result, the above-captioned civil action was created in the District Court. On May 6, 2021, the Debtor filed its *Response Opposed to Defendant's Motion to Withdraw the Reference*[8] (the "Response Opposed"). On May 21, 2021, Dondero-Defendant filed his *Reply in Support of the Motion to Withdraw the Reference*[9] (the "Reply"). The bankruptcy court held a status conference, as required by Local Bankruptcy Rule 5011-1, on May 25, 2021, to assist in the bankruptcy court's preparation of this Report and Recommendation.

### i. The Movant's Position

---

[5] Adversary Case No. 21-03003, Dkt. 6.
[6] Adversary Case No. 21-03003, Dkt. 16.
[7] *Order Approving Stipulation and Agreed Order Authorizing Withdrawals of Proofs of Claim 138 and 188 Filed by James Dondero*, Bankruptcy Case No. 19-34054, Dkt. 1510.
[8] Adversary Case No. 21-03003, Dkt. 30.
[9] Adversary Case No. 21-03003, Dkt. 44.

4

Dondero-Defendant argues that the withdrawal of the reference is mandatory for the Debtor's breach of contract count and, alternatively, permissive withdrawal of the reference is proper for both counts.[10]

Dondero-Defendant argues that mandatory withdraw of the reference is required under the precedent of this court.[11] Specifically, he argues that the Notes were, in essence, tax loans that were forgivable and issued in lieu of compensation. Further, forgivable loans as compensation are allegedly used throughout the private equity industry as a tax-efficient form of compensation and any decision made by the bankruptcy court will have resounding consequences on the private equity industry. Thus, the breach of contract claim will allegedly involve a substantial and material consideration of non-Bankruptcy federal law (tax law) that will result in more than a *de minimis* effect on interstate commerce, making withdrawal mandatory.[12]

Alternatively, Dondero-Defendant argues that, if mandatory withdrawal is not required, there is cause shown for permissive withdrawal of the reference because: (1) the Texas Constitution guarantees a party to a contract a right to a jury trial; (2) the contract claim is a purely state law, non-core claim; (3) the turnover claim, under the Bankruptcy Code, is wholly derivative of the contract claim, as the amount to be turned over is based on the resolution of the contract claim; and (4) efficiency, uniformity and forum shopping factors all favor withdrawal.[13]

Further, Dondero-Defendant contends he has made a demand for a jury trial and has not consented, expressly or impliedly, to the equitable jurisdiction of the bankruptcy court to enter

---

[10] *See* Adversary Case No. 21-03003, Dkt. 21 at 5-7.
[11] *See In re Nat'l Gypsum Co.*, 145 B.R. 539, 541 (N.D. Tex. 1992) (stating "withdrawal must be granted if it can be established (1) that the proceeding involves a substantial and material question of both Title 11 and non-Bankruptcy Code federal law; (2) that the non-Code federal law has more than a de minimis effect on interstate commerce; and (3) that the motion for withdrawal was timely."); *see also City of Clinton, Ark. v. Pilgrim's Pride Corp.*, No. 4:09-CV-386-Y, 2009 WL 10684933, at *1 (N.D. Tex. Aug. 18, 2009).
[12] Adversary Case No. 21-03003, Dkt. 21 at 5-7.
[13] *Id.* at 7-11.

5

final orders in the Adversary Proceeding or hold a jury trial. Dondero-Defendant further argues he has withdrawn his only proof of claim relating to the Notes, thus negating any argument he has consented to the bankruptcy court having jurisdiction over the litigation of the Notes.

In summary, Dondero-Defendant views mandatory withdrawal of the reference as warranted, because the contract claim will allegedly be substantially based on federal tax law issues, and permissive withdrawal as alternatively proper, because the turnover claim is being used as a "Trojan Horse" to attempt to make a non-core breach of contract claim become core.[14]

As far as timing, Dondero-Defendant requests that the District Court immediately withdraw the reference and hear all pre-trial matters until the parties are trial-ready.

### ii. *The Debtor-Plaintiff's Position*

The Debtor argues that no basis exists for mandatory withdrawal of the reference because no substantial and material consideration of federal tax law issues will be necessary in this Adversary Proceeding. The Debtor argues that Dondero-Defendant has provided no specificity as to what tax issues would be in play, and mere speculation about tax issues is not enough to justify mandatory withdrawal of the reference.[15] To that point, the Debtor notes that Dondero-Defendant has not pointed to any section of the federal tax code to support a basis for his defenses. The Debtor characterizes the entirety of the Motion as an attempt to forum shop and avoid another hearing in front of the bankruptcy court through assertion of baseless tax defenses.

The Debtor further argues that there is no cause shown for permissive withdrawal because a turnover action under Section 542(b) of the Bankruptcy Code is an inherently core claim. The Notes, as argued, are already property of the bankruptcy estate, as matured and payable on

---

[14] *Id.* at 8-9; *see In re Soundview Elite Ltd.*, 543 B.R. 78, 97 (Bankr. S.D.N.Y. 2016).
[15] *See In re White Motor Corp.*, 42 B.R. 693, 705-06 (N.D. Ohio 1984).

6

December 11, 2020, and the turnover action only concerns federal bankruptcy law.[16] The Debtor argues that the defenses and disputes raised by Dondero-Defendant do not restrict the Debtor's ability to collect property of the estate under 11 U.S.C. § 542(b).[17]

The Debtor additionally argues that Dondero-Defendant's assertion that he has retained his jury trial rights is wrong, as he has consented to the equitable jurisdiction of the bankruptcy court through the filing of five proofs of claims and asserting setoffs in his defense to the Adversary Proceeding. The Debtor further argues that the filing of Proof of Claim No. 188 (related to the Notes), clearly demonstrated Dondero-Defendant's consent to the jurisdiction and authority of the bankruptcy court to resolve the interconnected claims and setoff defenses he has asserted—thereby directly impacting the claims-allowance process and the restructuring of the debtor-creditor relations. Further, the Debtor argues, in a supplemental filing, that Dondero-Defendants' withdrawing Proof of Claim No. 188 in December 2020 with prejudice does not allow him to withdraw his consent to the jurisdiction of the bankruptcy court.[18] In essence, the Debtor argues that, as soon as Dondero-Defendant filed Proof of Claim No. 188, he had consented to bankruptcy court jurisdiction for any proceeding involving the Notes during the Bankruptcy Case and waived his jury trial rights.

As far as timing, the Debtor argues that, if the court finds permissive withdrawal of the reference is appropriate, the reference should not be withdrawn until after the parties are trial-ready, and all pretrial matters should be handled by the bankruptcy court until such time.

---

[16] *See Tow v. Park Lake Cmtys., LP*, 2018 U.S. Dist. LEXIS 1720, at *3-*5 (S.D. Tex. Jan. 4, 2018); *see also Porretto v. Nelson (In re Porretto)*, 2012 Bankr. LEXIS 4919, at *11-*12 (Bankr. S.D. Tex. Oct. 18, 2012); *see also Romo v. Monetmayor (In re Montemayor)*, 547 B.R. 684, 692 (Bankr. S.D. Tex. 2016) (bankruptcy court had authority under *Stern* to issue a final order in an action brought pursuant to Section 542(b), because an action "to turnover assets belonging to the bankruptcy estate [is] a matter which solely concerns federal bankruptcy law").
[17] *See Tow*, 2018 U.S. Dist. LEXIS 1720, at *3-*5; *see also Shaia v. Taylor (In re Connelly)*, 476 B.R. 223, 230 (Bankr. E.D. Va. 2012).
[18] *Addendum to Plaintiff's Opposition to Defendant's Motion to Withdraw the Reference*, Adversary Case No. 21-03003, Dkt. 31 at 1.

### III. MANDATORY WITHDRAWAL OF THE REFERENCE IS NOT APPLICABLE

Withdrawal of the reference pursuant to 28 U.S.C. § 157(d) provides for the possibility of mandatory withdrawal of the reference from the bankruptcy court: "The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." Under the precedent of this District, in *Nat'l Gypsum Co.* and *Pilgrim's Pride*, mandatory withdrawal of the reference must be granted when: (1) the motion was timely filed; (2) a non-Bankruptcy Code federal law at issue has more than a *de minimis* effect on interstate commerce; and (3) the proceeding involves a substantial and material question of non-Bankruptcy Code federal law.[19]

It has been well established that "mandatory withdrawal is to be applied narrowly" and to "prevent 157(d) from becoming an 'escape hatch.'"[20] Unsubstantiated assertions that non-bankruptcy federal law issues are substantial and material to an adversary proceeding are insufficient to warrant mandatory withdrawal.[21] The bankruptcy court routinely considers tax law issues and, here, Dondero-Defendant has provided no meaningful explanation of the alleged materiality, complexity, and relevance of federal tax issues to the Adversary Proceeding. No relevant portions of the tax laws that will allegedly be implicated are cited, nor is there any explanation of how the issues are beyond the expertise of the bankruptcy court. Thus, Dondero-

---

[19] 145 B.R. at 541; 2009 WL 10684933 at *1.
[20] *Manila Indus., Inc. v. Ondova Ltd. (In re Ondova Ltd.)*, 2009 U.S. Dist LEXIS 101134, at *6 (N.D. Tex. Oct. 1, 2009), *adopted in its entirety*, 2009 U.S. Dist. LEXIS 102071 (N.D. Tex. Nov. 3, 2009).
[21] *Keach v. World Fuel Servs. Corp, (In re Montreal Me. & Atl. Ry.)*, 2015 U.S. Dist. LEXIS 74006, at *21-*23 (D. Me. June 8, 2015) (insufficient basis for mandatory withdrawal where party failed to demonstrate specifically why a court would have to "engage in anything beyond routine application of current law" and the party "tries to kick up some dust to make the relevant analysis seem complicated").

Defendant has failed to meet his burden to demonstrate that mandatory withdrawal of the reference is appropriate.

### IV. THE BREACH OF CONTRACT CLAIMS AT THE CENTER OF THE ADVERSARY PROCEEDING ARE NONCORE CLAIMS, AND THE PENDING PROOFS OF CLAIM OF DONDERO-DEFENDANT ARE UNRELATED TO THEM

Permissive withdrawal of the reference is described in 28 U.S.C. § 157(d) as follows: "The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." The Bankruptcy Code does not define "cause shown," but the United States Court of Appeal for the Fifth Circuit, interpreting the Supreme Court case of *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, has identified a number of factors for courts to consider in determining whether permissive withdrawal of the reference is appropriate: (1) whether the matter is core or noncore; (2) whether the matter involves a jury demand; (3) whether withdrawal would further uniformity in bankruptcy administration; (4) whether withdrawal would reduce forum-shopping and confusion; (5) whether withdrawal would foster economical use of debtors' and creditors' resources; and (6) whether withdrawal would expedite the bankruptcy process.[22] Courts in this District have placed an emphasis on the first two factors.[23]

As explained by the Supreme Court in *Stern v. Marshall*, Congress has divided bankruptcy *proceedings* (*i.e.,* adversary proceedings or contested matter within a bankruptcy case)—over which there is bankruptcy subject matter jurisdiction—into three different categories: (a) those that "aris[e] under" Title 11; (b) those that "aris[e] in" a Title 11 case; and (c) those that are "related

---

[22] *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 998-99 (5th Cir. 1985); *Mirant Corp. v. The Southern Co.*, 337 B.R. 107, 115-23 (N.D. Tex. 2006); 458 U.S. 50 (1982).
[23] See *Mirant*, 337 B.R. at 115-122.

9

to" a case under Title 11.[24] Further, those that arise under Title 11 or arise in a Title 11 case are defined as "core" matters[25] and those that are merely "related to" a Title 11 case are defined as "noncore" matters. The significance of the "core"/"noncore" distinction is that bankruptcy courts may statutorily enter final judgments in "core" proceedings in a bankruptcy case, while in "noncore" proceedings, the bankruptcy courts instead may only (absent consent from all of the parties) submit proposed findings of fact and conclusions of law to the district court, for that court's review and issuance of final judgment. This is the statutory framework collectively set forth in 28 U.S.C. § 1334 and 28 U.S.C. § 157. But while a proceeding may be "core" in nature, under 28 U.S.C. § 157(b)(2), and the bankruptcy court, therefore, has the *statutory* power to enter a final judgment on the claim under 28 U.S.C. § 157(b)(1), *Stern* instructs that any district court, in evaluating whether a bankruptcy court has the ability to issue final orders and judgments, must resolve not only: (a) whether the bankruptcy court has the statutory authority under 28 U.S.C. § 157(b) to issue a final judgment on a particular claim; but also (b) whether the conferring of that authority on an Article I bankruptcy court is *constitutional* (and this turns on whether "the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process").[26]

With respect to the claims asserted against Dondero-Defendant, it might be argued that both counts asserted against him are *statutorily* core in nature.[27] While Count 1 is a breach of contract claim for collection of amounts due under promissory notes—one of the simplest forms of a state law lawsuit—it might be argued that Count 1 is statutorily core under the catchall provision of 28

---

[24] 28 U.S.C. § 1334(b); *Stern v. Marshall*, 564 U.S. 462, 473-474 (2011).
[25] *Stern*, 564 U.S. at 473-474. Core proceedings include, but are not limited to, 16 different types of matters, including "counterclaims by [a debtor's] estate against persons filing claims against the estate." 28 U.S.C. § 157(b)(2)(C).
[26] *Stern*, 564 U.S. at 499.
[27] 28 U.S.C. § 157(b)(2)(E), (O).

U.S.C. § 157(b)(2)(O), as the resolution of the claim would be "affecting the liquidation of the assets of the estate." However, this position would not pass constitutional muster. The cause of action does not stem from the bankruptcy itself (*i.e.,* it stems from defaults on pre-petition notes) and would not be resolved through the claims allowance process (*since the only related proof of claim related to the Notes has been withdrawn*). In other words, the resolution of Count 1 is not so inextricably intertwined with the resolution of Dondero-Defendant's still-remaining proofs of claim so as to confer constitutional authority on the bankruptcy court to enter a final judgment on the breach of contract claims.

Count 2, the turnover cause of action, is brought pursuant to 11 U.S.C. § 542(b) and is listed as statutorily core under 28 U.S.C. § 157(b)(2)(E). If Count 2 were freestanding and the debts due under the Notes were undisputed, it is unrefuted by Dondero-Defendant that a turnover action under 11 U.S.C. § 542(b) would be both a statutory and constitutional core claim. *The issue is whether a turnover action to collect on a disputed pre-petition promissory note can be viewed as a core claim*. There is a split in authority on this issue. The Debtor cites authority that a turnover action is a core claim when collecting *matured* debts, as property of the estate, regardless of whether the indebtedness is *disputed*.[28] In contrast, Dondero-Defendant cites authority that the scope of turnover claims under the Bankruptcy Code should not be expanded to encompass debts in dispute that arose outside of bankruptcy, including authority from this court.[29]

---

[28] *Shaia*, 476 B.R. at 230 ("To properly constitute a core proceeding under § 157(b)(2)(E), the debt must be 'matured, payable on demand, or payable on order.' 'Matured' refers to 'debts that are presently payable, as opposed to those that are contingent and become payable only upon the occurrence of a certain act or event.' …. While the Defendants assert they are not indebted to the Trustee, it is simply not relevant that the Defendants dispute liability on the instrument. The presence of a dispute does not preclude a debt from being matured. … A cause of action is a turnover proceeding under § 542(b) of the Bankruptcy Code where it seeks collection rather than creation or liquidation of a matured debt."); *see also In re Willington Convalescent Home, Inc.*, 850 F.2d at 52 n.2 ("The mere fact that Connecticut denies that it owes the matured debt for Willington's services because of a recoupment right 'does not take the trustee's action outside the scope of section 542(b)'").

[29] *In re Se. Materials, Inc.*, 467 B.R. 337, 354 (Bankr. M.D.N.C. 2012)( The distinction is when "an adversary proceeding presents a bona fide dispute as to liability, the matter cannot be viewed as a turnover proceeding"); *In re*

11

This court views the turnover claim as derivative of the breach of contract claims. The breach of contract claims are clearly non-core, and the bankruptcy court lacks constitutional authority to confer jurisdiction over them (absent consent—which does not exist here). A turnover action under 11 U.S.C. § 542(b) cannot be tacked onto a complaint so as to confer authority in the bankruptcy court to adjudicate an otherwise non-core claim. To hold otherwise would run counter to the dictates of the Supreme Court in *Marathon*.

In summary, this court believes that the turnover claim in the Complaint, to collect on a disputed indebtedness under the Notes, "do[es] not fall within the scope of turnover actions as contemplated by § 542 and § 157(b)(2)(E)," absent a judgment or stipulation resolving the dispute as to the indebtedness.[30] Thus, the turnover claim, as brought, is not a core claim that the bankruptcy court can finally adjudicate, absent the consent of all parties.

## V. JURY TRIAL RIGHTS AND DEMAND

Pursuant to 28 U.S.C. § 157(e), if a litigant has the right to a jury trial under applicable non-bankruptcy law, a bankruptcy court may conduct the jury trial only if: (a) the matters to be finally adjudicated fall within the scope of bankruptcy subject matter jurisdiction; (b) the district court of which the bankruptcy court is a unit authorizes the bankruptcy court to do so; and (c) all of the parties consent.[31]

Starting first with whether a right to a jury trial even exists, the Seventh Amendment, of course, provides a jury trial right in cases in which the value in controversy exceeds twenty dollars and

---

*Satelco, Inc.*, 58 B.R. 781, 789 (Bankr. N.D. Tex. 1986) ("[T]his Court holds that actions to collect accounts receivable based upon state law contract principles do not fall within the scope of turnover actions as contemplated by § 542 and § 157(b)(2)(E), absent a final judgment from a court of competent jurisdiction, a stipulation, or some other binding determination of liability.").

[30] *Satelco*, 58 B.R. at 789.

[31] "If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties." 28 U.S.C. § 157(e) (West 2019).

12

the cause of action is to enforce statutory rights that are at least analogous to rights that were tried at law in the late 18th century English courts.[32] Suits "at law" refers to "suits in which legal rights were to be ascertained and determined" as opposed to "those where equitable rights alone were recognized and equitable remedies were administered."[33] This analysis requires two steps: (1) a comparison of the "statutory action to 18th century actions brought in the courts of England prior to the merger of the courts of law and equity"; and (2) whether the remedy sought is "legal or equitable in nature . . . [t]he second stage of this analysis" being "more important than the first."[34]

It is well established that the act of filing a proof of claim can operate to deprive a creditor of a jury trial right, by subjecting a claim, that would otherwise sound only in law, to the equitable claims allowance process.[35] Thus, Dondero-Defendant, by having several *pending* proofs of claims, has consented to the bankruptcy court's equitable jurisdiction and waived his right to a jury trial as to the subject matter of the *pending* proofs of claim.[36] However, as earlier noted, prior to the commencement of this Adversary Proceeding on January 22, 2021, Dondero-Defendant withdrew two of his proofs of claim on December 4, 2020 with prejudice—including Proof of Claim No. 188 which related to the Notes. To be sure, Proof of Claim No. 188, if pending, would have made the claims asserted in the Adversary Proceeding so inextricably intertwined with the equitable process of claims resolution, so as to constitute consent to the equitable jurisdiction of the bankruptcy court. Without a pending proof of claim, the breach of contract claims is precisely the kind of action that would sound in law rather than in equity. By withdrawing his proof of claim

---

[32] *See City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 708 (1999).
[33] *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989).
[34] *See Levine v. M & A Custom Home Builder & Developer, LLC*, 400 B.R. 200, 205 (S.D. Tex. 2008) (quoting *Granfinanciera*, 492 U.S. at 42).
[35] *See Langenkamp v. Culp*, 498 U.S. 42, 44-45 (1990).
[36] *Id.*

related to the Notes, Dondero-Defendant withdrew the claim from the claims allowance process of the bankruptcy court and preserved his right to a jury trial on the Notes.[37]

To reiterate, Dondero-Defendant's three remaining proofs of claims are unrelated to the collection on the Notes, and he has not otherwise consented to the jurisdiction of the bankruptcy court for claims related to the Notes. Dondero-Defendant has also withdrawn his affirmative defense of setoff in the Adversary Proceeding. Dondero-Defendant has also not consented to the bankruptcy court conducting a jury trial pursuant to 11 U.S.C. § 157(e).

In summary, Dondero-Defendant's lack of waiver of his jury trial rights, expressly or impliedly, is further reason why the bankruptcy court does not believe it can finally adjudicate the claims in the Adversary Proceeding.

## VI. PENDING MATTERS

On May 25, 2021, the bankruptcy court held a status conference with regard to the Motion. At such time, the bankruptcy court approved, in part, *James Dondero's Motion to Stay Pending the Motion to Withdraw the Reference of Plaintiff's Complaint*,[38] and thereafter issued the *Order Granting In Part James Dondero's Motion to Stay Pending the Motion to Withdraw the Reference of Plaintiff's Complaint*[39] (the "Stay Order") on June 4, 2021. The Stay Order dictated that all response deadlines, pre-trial deadlines, and hearing dates would be stayed until July 28, 2021. Discovery under the *Amended Scheduling Order*[40] was to proceed with two changes: (i) the deadline for service of expert disclosures to be changed to May 28, 2021, and (ii) the deadline for

---

[37] *Smith v. Dowden*, 47 F.3d 940, 943 (8th Cir. 1995) ("[T]he successful withdrawal of a claim pursuant to Fed. R. Bankr. P. 3006 prior to the trustee's initiation of an adversarial proceeding renders the withdrawn claim a legal nullity and leaves parties as if the claim had never been brought."); *In re Goldblatt's Bargain Stores, Inc.*, No. 05 C 03840, 2005 WL 8179250, at *5 (N.D. Ill. Dec. 6, 2005) (claims withdrawn before adversary proceeding are as if never filed); *see generally, In re Manchester, Inc.*, No. 08-30703-11-BJH, 2008 WL 5273289, at *3-6 (Bankr. N.D. Tex. Dec. 19, 2008) (permissible to withdraw a claim to preserve jury trial right).
[38] Adversary Case No. 21-03003, Dkt. 22.
[39] Adversary Case No. 21-03003, Dkt. 64.
[40] Adversary Case No. 21-03003, Dkt. 18.

completion of expert discovery to be changed to June 14, 2021. At this point, the parties are not trial-ready.

## VII. RECOMMENDATION

In light of: (a) the noncore, related-to claims in the Complaint; (b) the withdrawal of Proof of Claim No. 188, relating to the Notes, by Dondero-Defendant on December 4, 2020, which was the only proof of claim inextricably intertwined with the causes of action in the Adversary Proceeding; and (c) the lack of any other consent by Dondero-Defendant to the equitable jurisdiction of the bankruptcy court related to the Notes, the bankruptcy court recommends the District Court: refer all pre-trial matters to the bankruptcy court, and grant the Motion upon certification by the bankruptcy court that the parties are trial-ready.

With regard to such pretrial matters, the bankruptcy court further recommends that, to the extent a dispositive motion is brought that the bankruptcy court determines should be granted and would finally dispose of claims in this Adversary Proceeding, the bankruptcy court should submit a report and recommendation to the District Court for the District Court to adopt or reject.

***END OF REPORT AND RECOMMENDATION***