PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717) (*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 2405397) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward (Texas Bar No. 24044908)
Zachery Z. Annable (Texas Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, TX 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § § § § § § | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | | Case No. 19-34054-sgj11 |
| Reorganized Debtor. | | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § § § § § § § § § § § § § | |
| Plaintiff, | | Adversary Proceeding No. |
| vs. | | 21-3003-sgj |
| JAMES DONDERO, NANCY DONDERO, AND THE DUGABOY INVESTMENT TRUST, | | |
| Defendants. | | |

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND .............................................................................. 4

    A.    The Notes ................................................................................................. 4

        Notes to Mr. Dondero (the "Dondero Notes"): ...................................... 4

        Notes to HCRE Partners, LLC (n/k/a NexPoint Real Estate Partners, LLC) (the "HCRE Notes"): ......................................................... 4

        Notes to Highland Capital Management Services, Inc. ("the "HCMS Notes"): .................................................................................................. 4

        Note to Nexpoint Advisors, L.P. (the "Nexpoint Note," and collectively with the Dondero Note, the HCRE Notes, and the HCMS Notes, the "Notes"): ................................................................................................... 5

    B.    Highland Commences the Adversary Proceedings ................................. 5

    C.    The Alleged Agreement .......................................................................... 5

    D.    Dugaboy Lacked Authority to Enter into the Alleged Agreement ......... 6

    E.    Highland's Claims for Relief .................................................................. 7

    F.    The Motion .............................................................................................. 8

III.  ARGUMENT ...................................................................................................... 8

    A.    Legal Standard ........................................................................................ 8

    B.    Highland's Claim for Declaratory Relief Should Not be Dismissed ..... 9

        1.    An Actual Controversy Exists Between the Parties .................... 9

        2.    Highland Has Standing to Assert Claim for Declaratory Relief ............. 12

    C.    Highland Sufficiently States a Claim for Breach of Fiduciary Duty Against Dugaboy and Nancy Dondero ........................................... 16

        1.    Highland Sufficiently Alleges that Dugaboy Owes a Fiduciary Duty to Highland as a Consequence of Entering into the Alleged Agreement ................................................................. 16

2.    Highland Has Standing to Assert a Claim for Breach of Fiduciary DutyAgainst Dugaboy ........................................................................... 20

D.    Highland States a Claim for Aiding and Abetting Breach of Fiduciary Duty Against The Donderos ............................................................... 21

CONCLUSION ........................................................................................................... 25

DOCS_NY:44153.1 36027/003

## **TABLE OF AUTHORITIES**

**CASES**

*Anadji v. Keisler*,
    CV B-07-184, 2008 WL 11388565, (S.D. Tex. June 26, 2008) ................................ 12

*Ashcroft v. Iqbal*,
    556 U.S. 662, 678 (2009) .................................................................................. 9

*Ass'n of Am. Physicians & Surgeons, Inc. v. Texas Med. Bd.*,
    627 F.3d 547 (5th Cir. 2010) ............................................................................. 13

*Baker v. Putnal*,
    75 F.3d 190 (5th Cir. 1996) ............................................................................... 8

*Bank Nat. Ass'n v. Verizon Communications Inc.*,
    817 F. Supp. 2d 934 (N.D. Tex. 2011) ......................................................... 21, 22

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) .......................................................................................... 8

*Betancourt v. Federated Dept. Stores*,
    732 F. Supp. 2d 693 (W.D. Tex. 2010) ............................................................. 13

*Blackburn v. Marshall*,
    42 F.3d 925 (5th Cir. 1995) ............................................................................... 9

*Bolick v. Alea Group Holdings, Ltd.*,
    278 F. Supp. 2d 278 (D. Conn. 2003) ................................................................ 23

*Bond Purchase, L.L.C. v. Patriot Tax Credit Properties, L.P.*,
    746 A.2d 842 (Del. Ch. 1999) ........................................................................... 19

*Brown v. Jones County Junior Coll.*,
    463 F. Supp. 3d 742 (S.D. Miss. 2020) ........................................... 14, 21, 22, 24

Cantor Fitzgerald, L.P. v. Cantor,
    2000 WL 307370, (Del.Ch. Mar. 13, 2000) ...................................................... 16

*Capitaliza-T Sociedad De Responsabilidad Limitada De Capital Variable v.*
    *Wachovia Bank of Delaware Nat. Ass'n*,
    CIV. 10-520 JBS KMW, 2011 WL 864421 (D. Del. Mar. 9, 2011) ...................... 24

*Collins v. Morgan Stanley Dean Witter*,
    224 F.3d 496 (5th Cir. 2000) .............................................................................. 8

*Cornell Glasgow, LLC v. La Grange Properties, LLC*,
    CIV.A. N11C-05013JRS, 2012 WL 2106945, (Del. Super. Ct. June 6, 2012) ...... 23

iii

*Feeley v. NHAOCG, LLC,*
    62 A.3d 649 (Del. Ch. 2012) ................................................................. 16

*Frye v. Anadarko Petroleum Corporation,*
    953 F.3d 285 (5th Cir. 2019) ................................................................. 10

*Harris v. Coastal Offshore, Inc.,*
    No. C-11-58, 2011 WL 2457922, (S.D.Tex. June 16, 2011)................................... 8

*Hosp. Internists of Austin, P.A. v. Quantum Plus, LLC,*
    1:18-CV-466-RP, 2019 WL 1922051, (W.D. Tex. Jan. 23, 2019)........................ 9, 10

*Hurd v. BAC Home Loans Servicing, LP,*
    880 F. Supp. 2d 747 (N.D. Tex. 2012) ............................................... 9, 10, 11

*In re Am. Bus. Fin. Services, Inc.,*
    361 B.R. 747 (Bankr. D. Del. 2007).................................................... 21, 22

*In re Draw Another Circle.,*
    602 B.R. 905 (Bankr. D. Del. 2019) ....................................................... 24

*In re Estate of Conaway,*
    CIV.A. 6056-VCG, 2012 WL 524190 (Del. Ch. Feb. 15, 2012)........................... 19

*In re Highland Group, Inc.,*
    136 B.R. 475 (Bankr. N.D. Ohio 1992)..................................................... 15

*In re Krisu Hosp., LLC,*
    19-20347-RLJ11, 2021 WL 1186483, (Bankr. N.D. Tex. Mar. 26, 2021),
    *reconsideration denied,* 2021 WL 3232574
    (Bankr. N.D. Tex. July 29, 2021) .......................................................... 14

*In re Oracle Corp. Derivative Litig.,* 2020 WL 3410745, (Del. Ch. June 22, 2020) .................. 23

*In re Pan Am. Hosp. Corp.,*
    364 B.R. 839 (Bankr. S.D. Fla. 2007) ...................................................... 15

*In re Parker,*
    264 B.R. 685 (B.A.P. 10th Cir. 2001), *aff'd,* 313 F.3d 1267 (10th Cir. 2002) ........................ 15

*In re Sunarhauserman, Inc.,*
    126 F.3d 811 (6th Cir. 1997) ............................................................. 14

*In re The Brown Sch.,*
    368 B.R. 394 (Bankr. D. Del. 2007)....................................................... 20

*In re TOCFHBI, Inc.,*
    413 B.R. 523 (Bankr. N.D. Tex. 2009)..................................................... 23

iv

*In re USA Detergents, Inc.*,
  418 B.R. 533 (Bankr. D. Del. 2009) ........................................................................... 21

*In re USACafes, L.P. Litig.*,
  600 A.2d 43 (Del.Ch.1991) ......................................................................................... 17

*In re USDigital, Inc.*,
  443 B.R. 22 (Bankr. D. Del. 2011) ............................................................................. 23

*Jones v. Colorado Cas. Ins. Co.*,
  CV 12-1968-PHX-JAT, 2013 WL 4759260, (D. Ariz. Sept. 4, 2013) ........................ 23

*Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*,
  677 F.2d 1045 (5th Cir.1982) ....................................................................................... 8

KE Prop. Mgmt., Inc. v. 275 Madison Mgmt.,
  19 Del. J. Corp. L. 805, 821–22, 1993
  WL 285900 (Del.Ch. July 27, 1993) ................................................................ 16, 17, 18

*Kelly Inv., Inc. v. Cont'l Common Corp.*,
  No. CIV. A. 01-609, 2001 WL 630467, (E.D. La. June 5, 2001) ............................... 12

*Lauter v. Citgo Petroleum Corp.*,
  CV H-17-2028, 2018 WL 801601 (S.D. Tex. Feb. 8, 2018 ...................................... 15

*Matter of Austin Dev. Co.*,
  19 F.3d 1077 (5th Cir. 1994) ...................................................................................... 15

*Matter of Cont'l Airlines*,
  981 F.2d 1450 (5th Cir. 1993) .................................................................................... 15

*Matter of Jartran, Inc.*,
  732 F.2d 584 (7th Cir. 1984) ...................................................................................... 15

*MedImmune, Inc. v. Genetech, Inc.*,
  549 U.S. 118, 127 (2007).............................................................................................. 10

*Omaha Life Ins. Co. v. Womack-Rodriguez*,
  461 F. Supp. 3d 455 (W.D. Tex. 2020) ...................................................................... 13

*Paterson v. Weinberger*,
  644 F.2d 521 (5th Cir. 1981) ...................................................................................... 13

*Prison Legal News v. Livingston*,
  CIV. A. C-09-296, 2009 WL 5170229, (S.D. Tex. Dec. 17, 2009).......................... 21

v

*Se. Louisiana Bldg. & Const. Trades Council, AFL-CIO v.*
  *State of Louisiana ex rel. Jindal Constr. Trades Council ex rel. Jindal,*
  CIV.A. 13-370, 2013 WL 6709750, (E.D. La. Dec. 18, 2013) ................................................ 13

*Superior MRI Servs., Inc. v. Alliance Healthcare Servs., Inc.,*
  778 F.3d 502 (5th Cir. 2015) ................................................................................................. 13

*Total Safety v. Rowland,*
  No. CIV.A. 13-6109, 2014 WL 6485641, (E.D. La. Nov. 18, 2014) ....................................... 9

*Trahan v. Lazar,*
  457 F. Supp. 3d 323 (S.D.N.Y. 2020) ...................................................................... 17, 18, 20, 22

*U.S. Small Bus. Admin. v. Smith Stratton, Wise, Heher & Brennan, LLP,*
  CIV A 05-190, 2009 WL 323211, (E.D. Pa. Feb. 6, 2009) .................................................... 17

*United States ex rel. Haight v. RRSA (Commercial Div.), LLC,*
  3:16-CV-1975-S, 2021 WL 1721585, (N.D. Tex. Apr. 30, 2021) .......................................... 13

*United States v. Bollinger Shipyards, Inc.,*
  775 F.3d 255 (5th Cir. 2014) .................................................................................................. 9

*Venator Group Specialty, Inc. v. Matthew/Muniot Family, LLC.,*
  322 F.3d 835 (5th Cir. 2003) ............................................................................................ 10, 11

*Watson v. Citimortgage, Inc.,*
  814 F.Supp.2d 726 (E.D.Tex.2011) ...................................................................................... 11

Wheeler v. Magdovitz (In re Wheeler),
  137 F.3d 299 (5th Cir. 1998) ................................................................................................. 15

*Wooten v. McDonald Transit Assocs., Inc.,*
  788 F.3d 490 (5th Cir. 2015) .................................................................................................. 9

*Young v. Liberty Mut. Group, Inc.,*
  CV-12-2302-PHX-JAT, 2013 WL 840618, (D. Ariz. Mar. 6, 2013) ...................................... 23

**OTHER AUTHORITIES**

U.S. CONST. ART III, § 2 ........................................................................................................... 12

**RULES**

Fed. R. Civ. P. 12(b)(1) ............................................................................................................... 13

Fed.R.Civ.P. 8(a)(2) ...................................................................................................................... 8

**HIGHLAND'S MEMORANDUM OF LAW IN SUPPORT OF OPPOSITION TO
MOTION TO DISMISS FIFTH, SIXTH, AND SEVENTH CLAIMS FOR RELIEF**

Highland Capital Management, L.P., the plaintiff in the above-captioned and related adversary proceedings (the "<u>Adversary Proceedings</u>") and the reorganized debtor[2] ("<u>Highland</u>" or the "<u>Debtor</u>" as may temporally be required) in the above-captioned chapter 11 case (the "<u>Bankruptcy Case</u>"), hereby submits this memorandum of law (the "<u>Brief</u>") in support of its *Opposition to Motion to Dismiss Fifth, Sixth, and Seventh Claims for Relief* (the "<u>Opposition</u>")[3] to *Defendants' Rule 12(b)(6) Motion to Dismiss Plaintiff's Fifth, Sixth, and Seventh Claims for Relief* [Docket No. 82][4] (the "<u>Motion</u>") filed by defendants James Dondero ("<u>Mr. Dondero</u>"), Nancy Dondero (together with Mr. Dondero, the "<u>Donderos</u>"), and The Dugaboy Investment Trust ("<u>Dugaboy</u>," and collectively with Mr. Dondero and Nancy Dondero, the "<u>Defendants</u>"). In support of its Opposition, Highland states as follows:

## I.
## INTRODUCTION[5]

1.    Through the Adversary Proceedings, Highland seeks to recover more than $50 million from Defendants and hold them liable for their wrongful conduct. Highland brings claims against Mr. Dondero and affiliated Obligors for breaching a series of Notes, all of which are in

---

[2] On February 22, 2021, the Bankruptcy Court entered the *Order (i) Confirming the Fifth Amended Plan of Reorganization (as Modified) and (ii) Granting Related Relief* [Bankr. Docket No. 1943] (the "<u>Confirmation Order</u>") which confirmed the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P., as Modified* [Bankr. Docket No. 1808] (the "<u>Plan</u>"). The Plan went Effective (as defined in the Plan) on August 11, 2021, and Highland is the Reorganized Debtor (as defined in the Plan) since the Effective Date. *See Notice of Occurrence of Effective Date of Confirmed Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Bankr. Docket No. 2700].

[3] This Opposition is being concurrently filed in Adversary Proceeding Nos. 21-3003, 21-3005, 21-3006, and 21-3007, as the claims asserted against Defendants and the arguments raised in the Motion in each of these proceedings are identical.

[4] Refers to the docket number maintained in the Adversary Proceeding.

[5] Capitalized terms shall have the meaning ascribed thereto below.

1

default. Defendants maintain that they have no obligation to repay the amounts loaned under the Notes because Highland allegedly agreed to forgive the obligations upon the occurrence of certain "conditions subsequent." In support of this baseless defense, Mr. Dondero maintains that while he controlled Highland, he entered into the Alleged Agreement with his sister, Nancy Dondero, who was supposedly acting on behalf of Dugaboy, Mr. Dondero's trust and one of Highland's limited partners. In entering into the Alleged Agreement on behalf of Highland, Dugaboy would have managed and exercised control over Highland's property and therefore owed fiduciary duties to Highland. Accordingly, in response to Mr. Dondero's concocted Alleged Agreement story, in its Amended Complaint, Highland (i) seeks a declaration that Dugaboy was not authorized to enter into the Alleged Agreement under the LPA and was not authorized to control Highland or its property or otherwise bind Highland; (ii) brings claims for breach of fiduciary duty against Dugaboy for supposedly entering into and never disclosing the Alleged Agreement; and (iii) brings claims for aiding and abetting against the Donderos for knowingly participating in Dugaboy's breach of fiduciary duty to Highland.[6]

2. In their attempt to dismiss the Claims, Defendants contend that (a) Highland does not have standing to assert any of the Claims because such Claims "accrued" after the petition date; (b) there is no "actual controversy" underlying the Claim for declaratory relief because the terms of the LPA are supposedly "clear on their face;" and (c) factually, Dugaboy was simply "exercising its rights" to "approve compensation" under the LPA, and therefore owed no "duty" to Highland. Defendants' attempt to dismiss the aiding and abetting claim against them is premised

---

[6] As discussed below, Highland believes that the Alleged Agreement is a demonstrably false, wholly fabricated story made up in a desperate attempt to draw out these simple collection actions and avoid liability. The Claims have been filed to show the folly of Defendants' evasions and assure that Highland can recover its losses.

2

on the same deficient argument that there is no underlying fiduciary duty claim against Dugaboy. These contentions are meritless.

3.     ***First***, principles of "accrual" are irrelevant to whether Highland has "standing." The Debtor's bankruptcy filing did not extinguish or impair its right to hold Defendants liable for their wrongful conduct, and the Defendants' failure to disclose the Alleged Agreement does not shield them from liability.  Indeed, accepting Highland's allegations as true, the Amended Complaint establishes that an "actual controversy" exists concerning whether Dugaboy had the authority to bind Highland or otherwise manage and control its property through the entry of the Alleged Agreement and resolves the parties' legal rights under the LPA.  Defendants' argument regarding the "interpretation" of the LPA is simply insufficient to defeat the Claims, particularly at the motion to dismiss stage.[7]

4.     ***Second***, Defendants' assertion that Dugaboy did not owe Highland a fiduciary duty is premised on the same flawed assumption that the Alleged Agreement to forgive over $50 million somehow constitutes "compensation" and that there are no limits on Dugaboy's discretion.  In entering into the purported Alleged Agreement, Dugaboy assumed and owed Highland fiduciary duties because it managed and exercised control over Highland's property and was obligated to act reasonably and disclose all actions purportedly taken on Highland's behalf.[8]

---

[7] Note that Defendants' argument is further undermined because section 3.10 of the LPA (the provision that Defendants rely upon) is based on certain contingencies which Defendants simply ignore.

[8] In his Answer to the Amended Complaint against him, James Dondero contends that "[t]he purpose of this agreement was to provide compensation to Defendant James Dondero, who was otherwise underpaid compared to reasonable compensation levels in the industry, through the use of forgivable loans, a practice that was standard at HCMLP and in the industry."  Adv. Pro. 21-3003, Docket No. 83 ¶ 82.  Highland disputes this contention but notes that none of the other Obligors make that contention or offer any explanation for why the loans to them would be subject to the Alleged Agreement.

5.     ***Third***, the Amended Complaint sufficiently alleges a claim for aiding and abetting a breach of fiduciary duty against the Donderos for knowingly participating in Dugaboy's underlying illicit transaction, namely, the authorization of the Alleged Agreement.

6.     For the foregoing reasons, and for the reasons below, Highland sufficiently alleges the Claims, and the Motion should be dismissed in its entirety.

## II.
## FACTUAL BACKGROUND

7.     Unless otherwise specified, the facts set forth herein summarize the allegations set forth in the Amended Complaint.

**A.     The Notes**

8.     Mr. Dondero and certain entities he controls are the makers under a series of promissory notes in favor of Highland.  These notes were executed between 2013 and 2019 and are summarized as follows:

**Notes to Mr. Dondero (the "Dondero Notes"):**

1. A promissory note for $3,825,000, executed on February 2, 2018, payable on demand.
2. A promissory note for $2,500,000, executed on August 1, 2018, payable on demand.
3. A promissory note for $2,500,000, executed on August 13, 2018, payable on demand.

**Notes to HCRE Partners, LLC (n/k/a NexPoint Real Estate Partners, LLC) (the "HCRE Notes"):**

1. A promissory note for $100,000, executed on November 27, 2013, payable on demand.
2. A promissory note for $2,500,000, executed on October 12, 2017, payable on demand.
3. A promissory note for $750,000, executed on October 15, 2018, payable on demand.
4. A promissory note for $900,000, executed on September 25, 2019, payable on demand.
5. A term note for $6,059,831, executed on May 31, 2017, payable in thirty (30) equal annual installment payments, each due on the 31st day of December each calendar year.

**Notes to Highland Capital Management Services, Inc. (the "HCMS Notes"):**

1. A promissory note for $150,000, executed on March 28, 2018, payable on demand.
2. A promissory note for $200,000, executed on June 25, 2018, payable on demand.
3. A promissory note for $400,000, executed on May 29, 2019, payable on demand.
4. A promissory note for $150,000, executed on June 26, 2019, payable on demand.

4

**Note to Nexpoint Advisors, L.P. (the "Nexpoint Note," and collectively with the Dondero Note, the HCRE Notes, and the HCMS Notes, the "Notes"):**

1. A term note for $30,746,812.33, executed on May 31, 2017, payable in thirty (30) equal annual installment payments, each due on the 31st day of December each calendar year.

9.     Mr. Dondero, NexPoint, HCRE, and HCMS (collectively, the "Obligors") all defaulted under each of their Notes, and the Notes are currently due and payable. The aggregate amount currently due and owing to Highland under the Notes is over $50 million.[9]

## B.     Highland Commences the Adversary Proceedings

10.     On January 22, 2021, the Debtor filed the *Complaint for (I) Breach of Contract and (II) Turnover of Property of the Debtor's Estate* [Docket No. 1] (the "Original Complaint").[10] In the Original Complaint, Highland brought claims for (i) breach of contract for Mr. Dondero's breach of his obligations under the Notes and (ii) turnover by Mr. Dondero for the outstanding amounts under the Notes, plus all accrued and unpaid interest until the date of payment plus the Debtor's costs of collection and reasonable attorney's fees.

## C.     The Alleged Agreement

11.     The Obligors contend that they are not liable under the Notes because the Debtor previously agreed that it would not collect on the Notes "upon fulfillment of conditions subsequent." Each of the Obligors asserts the following affirmative defense:

> Plaintiff's claims are barred … because prior to the demands for payment Plaintiff agreed that it would not collect the Notes upon fulfillment of conditions subsequent. Specifically, sometime between December of the year in which each note was made and February of the following year, [] Nancy Dondero, as representative for a

---

[9] Another entity owned and controlled by Mr. Dondero—Highland Capital Management Fund Advisors, L.P. ("HCMFA")—is the maker under two promissory notes in the aggregate principal amount of $7,400,000. HCMFA is also in default and a collection action has been commended against it. Adv. Pro. 21-3004. Because Highland loaned HCMFA $7,400,000 after the Alleged Agreement was supposedly entered into, HCMFA was forced to manufacture a defense other than the fictitious "conditions subsequent" defense relied upon by Obligors. HCMFA's fictitious defense will be addressed in due course.

[10] *See also* Adv. Pro. 21-3005 Docket No. 1 (the "NexPoint Original Complaint); Adv. Pro. 21-3006 at Docket No. 1 (the "HCMS Original Complaint"); Adv. Pro. 21-3007 at Docket No. 1 (the "HCRE Original Complaint").

majority of the Class A shareholders of Plaintiff agreed that Plaintiff would forgive the Notes if certain portfolio companies were sold for greater than cost or on a basis outside of James Dondero's control. This agreement setting forth the conditions subsequent to demands for payment on the Notes was an oral agreement; however, Defendant [] believes there may be testimony or email correspondence that discusses the existence of this agreement that may be uncovered through discovery in this Adversary Proceeding.

[Docket No. 83 ¶ 82] (the "Amended Answer") (the "Alleged Agreement").[11]

### D.        Dugaboy Lacked Authority to Enter into the Alleged Agreement

12.        Under section 4.2 of the *Fourth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P. (*the "LPA"), Dugaboy was not authorized to enter into the Alleged Agreement on behalf of the Partnership, or otherwise bind the Partnership (as "Partnership" is defined in the Limited Partnership Agreement). (Am. Compl. ¶ 42).

13.        Section 4.2(b) of the Limited Partnership Agreement states:

> Management of Business. No Limited Partner shall take part in the control (within the meaning of the Delaware Act) of the Partnership's business, transact any business in the Partnership's name, or have the power to sign documents for or otherwise bind the Partnership other than as specifically set forth in this Agreement.

(Am. Compl. ¶ 43) (quoting LPA § 4.2(b)).

14.        No provision in the Limited Partnership Agreement authorizes any of the Partnership's limited partners to bind the Partnership. (Am. Compl. ¶ 43).

15.        Nancy Dondero also lacked authority to enter into the Alleged Agreement or to otherwise bind the Debtor. (Am. Compl. ¶ 43).

---

[11] As noted above, while James Dondero contends that "[t]he purpose of this agreement was to provide compensation to Defendant James Dondero, who was otherwise underpaid compared to reasonable compensation levels in the industry, through the use of forgivable loans, a practice that was standard at HCMLP and in the industry," none of the other Obligors adopt that contention or offer any explanation for why the loans would be subject to the Alleged Agreement. *See supra* n. 7. Highland also notes that in addition to the facial absurdity of the Alleged Agreement and the sloppiness of its fabrication, the purported Class A interests are limited partnership interests, not shareholdings.

6

E.     **Highland's Claims for Relief**

16.     On August 27, 2021, Highland filed its *Amended Complaint for (i) Breach of Contract, (ii) Turnover of Property, (iii) Fraudulent Transfer, and (iv) Breach of Fiduciary Duty* [Docket No. 79] (the "Amended Complaint").  In the Amended Complaint, Highland raises numerous additional claims arising from Defendants' unauthorized execution of the Alleged Agreement, including, (i) declaratory relief; (ii) breach of fiduciary duty; and (iii) aiding and abetting a breach of fiduciary duty (collectively, the "Claims").

17.     In its Fifth Claim for Relief, Highland seeks a declaration that:

> (a) limited partners, including but not limited to Dugaboy, have no right or authority to take part in the control (within the meaning of the Delaware Act) of the Partnership's business, transact any business in the Partnership's name, or have the power to sign documents for or otherwise bind the Partnership other than as specifically provided in the Limited Partnership Agreement,
>
> (b) Dugaboy was not authorized under the LPA to enter into the Alleged Agreement on behalf of the Partnership,
>
> (c) Dugaboy otherwise had no right or authority to enter into the Alleged Agreement on behalf of the Partnership, and
>
> (d) the Alleged Agreement is null and void.

(Am. Complaint ¶ 72).

18.     In its Sixth Claim for Relief, Highland alleges that (i) "if Dugaboy, as a limited partner, had the authority to enter into the Alleged Agreement on behalf of the Debtor, then Dugaboy would owe the Debtor a fiduciary duty," (Am. Compl. ¶ 74); and (ii) by entering into the Alleged Agreement, Dugaboy "breached its fiduciary duty of care to the Debtor," (*id.* ¶ 74); and (iii) the Debtor suffered damages as a result of Dugaboy's breach (*id.* ¶ 76).

19.     In its Seventh Claim for Relief, Highland raises a claim against the Donderos for aiding and abetting Dugaboy's breach of fiduciary duty, alleging that (i) the Donderos "were aware

7

that Dugaboy would have fiduciary duties to the Debtor if it acted to bind the Debtor," (Am. Compl. ¶ 78); and (ii) the Donderos "aided and abetted Dugaboy's breach of its fiduciary duties to the Debtor by knowingly participating in the authorization of the purported Alleged Agreement," (*id.* ¶ 79).

## F.    **The Motion**

20.    Defendants argue that Highland fails to allege a claim for declaratory relief on the grounds that (i) there is no "actual controversy," (Motion ¶¶ 14-16), and (ii) Highland "lacks standing" to assert such a claim, (*id.* ¶¶ 17-24).  Defendants contend that Highland's claim for breach of fiduciary duty against Dugaboy fails because neither Dugaboy nor Nancy Dondero owes a "fiduciary duty" to Highland. (Motion ¶¶ 25-31).  Defendants further maintain that Highland fails to state a claim for "aiding is abetting" breach of fiduciary duty against the Donderos because (i) "Dugaboy did not owe a fiduciary duty to plaintiff," and therefore, there could be no "aiding and abetting" of any breach thereof, (*id.* ¶ 37), (ii) Highland "lacks standing" to assert this claim, (*id.* ¶¶ 50-51), and (iii) Highland otherwise fails to allege this claim, (*id.* ¶¶ 38-49).

## III.
## ARGUMENT

## A.    **Legal Standard**

21.    "A motion to dismiss under rule 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (quoting *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir.1982)).  In assessing a motion to dismiss under Rule 12(b)(6), the court must "accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's complaint "need only include 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"

*Harris v. Coastal Offshore, Inc.*, No. C-11-58, 2011 WL 2457922, at *2 (S.D. Tex. June 16, 2011) (quoting FED. R. CIV. P. 8(a)(2)); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (noting a complaint should not be dismissed under Rule 12(b)(6) if it complies with Rule 8(a)'s requirement that it provide "only a short and plain statement of the claim showing that the pleader is entitled to relief in order to give defendants fair notice of what the claim is and the grounds upon which it rests") (internal quotations omitted); *United States v. Bollinger Shipyards, Inc.*, 775 F.3d 255, 260 (5th Cir. 2014) ("A claim is plausible if 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged'") (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015). A court may not dismiss a complaint under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle [them] to relief. *Total Safety v. Rowland*, No. CIV.A. 13-6109, 2014 WL 6485641, at *2 (E.D. La. Nov. 18, 2014) (citing *Blackburn v. Marshall,* 42 F.3d 925, 931 (5th Cir. 1995)).

22.    Accepting the allegations in the Amended Complaint as true and viewing them in the light most favorable to Highland, the Amended Complaint states plausible claims for (i) declaratory relief, (ii) breach of fiduciary duty, and (iii) aiding and abetting breach of fiduciary duty.

**B.    Highland's Claim for Declaratory Relief Should Not Be Dismissed**

23.    Highland sufficiently states a claim for declaratory relief.

**1.    An Actual Controversy Exists Between the Parties**

24.    Highland sufficiently demonstrates an actual controversy exists. In order to state a claim that is justiciable for declaratory relief, the request for declaratory relief must serve a "useful purpose in clarifying and settling legal relations at issue" in anticipation of some future conduct.

9

*Hosp. Internists of Austin, P.A. v. Quantum Plus, LLC*, 1:18-CV-466-RP, 2019 WL 1922051, at *4-5 (W.D. Tex. Jan. 23, 2019); *see also Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 769 (N.D. Tex. 2012) ("The federal [Declaratory Judgment] Act allows a federal court to declare the rights and legal relations of any interested party.") "Like any other cause of action, there must be an 'actual controversy' supporting a declaratory judgment action." *Hosp. Internists*, 2019 WL 1922051, at *4. To show an "actual controversy," the dispute at issue "must be definite and concrete, real and substantial, and admit of specific relief through a decree of a conclusive character." *Frye v. Anadarko Petroleum Corp.*, 953 F.3d 285, 294 (5th Cir. 2019) (internal quotations omitted). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 127 (2007). As such, declaratory actions are often brought concurrently with other underlying causes of action. *See Hosp. Internists*, 2019 WL 1922051. at *6, n. 7 (noting that plaintiff sought declaratory relief based on underlying breach of contract action); *Hurd*, 880 F. Supp. 2d at 769 ("The availability of a declaratory judgment depends upon the existence of a judicially remediable right[.]") The decision to grant declaratory relief is committed to the court's broad discretion. *See Venator Group Specialty, Inc. v. Matthew/Muniot Family, LLC.*, 322 F.3d 835, 838 (5th Cir. 2003); *Frye*, 953 F.3d at 294.

25.     Here, an "actual controversy" clearly exists. The subjects of whether: (i) Dugaboy had authority to enter into the Alleged Agreement under the terms of the LPA; (ii) Dugaboy otherwise had the authority to take part in the management and control of Highland's property; (iii) the benefits of the Alleged Agreement to Mr. Dondero constituted "compensation;" and (iv) the Alleged Agreement is null and void are "definite and concrete" and constitute "real and

10

substantial disagreement[s]" between parties having adverse legal interests. *MedImmune*, 549 U.S. at 127; *see also Frye*, 953 F.3d at 294 (actual controversy existed where "subject of the controversy is 'definite and concrete'" because it involved parties' obligations under agreement); *Venator*, 322 F.3d at 841 (denying motion to dismiss declaratory action where plaintiff's allegation of injury under "lease are sufficiently immediate to warrant judicial intervention because the present ambiguity concerning [party's] legal obligations create a situation in which [plaintiff] is being presently injured.")

26.     Highland's request for declaratory relief is also premised on its viable, underlying claims for (i) breach of contract, (ii) turnover, (iii) fraudulent transfer, (iv) breach of fiduciary duty, and (v) aiding and abetting of breach of fiduciary duty. (*See generally*, Am. Compl.).  The claim for declaratory relief will enable the Court to determine the parties' rights with respect to certain terms in the LPA and certain aspects of Highland's claims.  Highland's claim for declaratory relief is thus precisely the type of declaratory relief courts deem as sufficient on Rule 12(b)(6) motions. *See Hurd*, 880 F. Supp. 2d at 769 (plaintiff stated claim for declaratory relief where it was based on underlying, viable claims); *Watson v. Citimortgage, Inc.*, 814 F. Supp. 2d 726, 737–38 (E.D. Tex.2011) (denying dismissal of plaintiff's declaratory judgment action because complaint stated underlying claims upon which declarations were premised).

27.     Defendants' conclusory assertions that the "terms of the LPA are so clear on their face" and "explicitly authorizes Dugaboy as the Majority Interest to approve compensation for Jim Dondero," (Motion ¶¶ 14-16), gloss over the actual dispute.  Defendants vaguely contend that "based on [section 3.10 of the LPA]," Dugaboy "clearly had the right to approve compensation for the General partner and its Affiliates."  (Motion ¶ 3).  In so arguing, Defendants simply assume that the Alleged Agreement was entered into for purposes of "compensation."  Section 3.10 of the

11

LPA provides that "the General Partner and any Affiliate of the General Partner shall receive compensation from the Partnership *for services rendered pursuant to this Agreement or any other agreements* unless approved by a Majority Interest. (LPA § 3.10). The Alleged Agreement purportedly provides that Highland "would not demand collection of the Notes unless events had occurred that made fulfillment of conditions subsequent impossible." (Motion ¶ 6). Thus, Defendants' entire argument is premised on the faulty notion that any alleged "fulfillment of the conditions subsequent" pursuant to the Alleged Agreement constitutes "Compensation" for each of Mr. Dondero, HCRE, NexPoint, and HCMS pursuant to section 3.10 of the LPA. Whether Dugaboy had authority to enter into the Alleged Agreement, to the extent it exists pursuant to the LPA or otherwise, is at the heart of this Claim. Any argument premised on the "interpretation" of the LPA is simply insufficient to defeat Highland's Claim for declaratory relief on a Rule 12(b)(6) motion. *Kelly Inv., Inc. v. Cont'l Common Corp.*, No. CIV. A. 01-609, 2001 WL 630467, at *5 (E.D. La. June 5, 2001) (denying motion to dismiss premised on contractual language where, after interpreting the claim "in the light most favorite to [plaintiff] and taking all facts pleaded as true," parties' rights under agreements are "unclear" and plaintiff sufficiently stated claims).

## 2. Highland Has Standing to Assert Claim for Declaratory Relief

28.     Defendants contend that Highland lacks standing to assert its claim for declaratory relief because such a claim "accrued when [Highland] received Defendants' Amended Answers after the bankruptcy began," (Motion ¶ 20), and that such a claim therefore constitutes a "post-petition breach of a rejected contract," (*id.* ¶¶ 17-24). Defendants' contentions are not credible.

29.     First, based on the face of the Amended Complaint, Highland alleged sufficient facts to demonstrate "standing." "Federal courts have subject-matter jurisdiction over all "cases or controversies" arising under the Constitution and laws of the United States." *Anadji v. Keisler*, CV B-07-184, 2008 WL 11388565, at *2 (S.D. Tex. June 26, 2008), *report and recommendation*

*adopted*, CV B-07-184, 2008 WL 11388548 (S.D. Tex. July 15, 2008) (citing U.S. CONST. ART

III, § 2). "Standing is a component of subject matter jurisdiction." *United States ex rel. Haight v.*

*RRSA (Commercial Div.), LLC*, 3:16-CV-1975-S, 2021 WL 1721585, at *2 (N.D. Tex. Apr. 30,

2021).

30.     A party can challenge standing, or subject matter jurisdiction, by making a "facial"

or "factual" attack. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981); *Omaha Life Ins.*

*Co. v. Womack-Rodriguez*, 461 F. Supp. 3d 455, 466 (W.D. Tex. 2020). "A facial attack is based

solely on the pleadings and the Court must examine the sufficiency of the allegations in the

complaint, which are presumed to be true." *United States ex rel. Haight*, 2021 WL 1721585 at *2.

If the jurisdictional allegations are sufficient based on the pleadings alone, the complaint

stands. *Paterson*, 644 F.2d at 523.[12]

31.     "To overcome a facial attack under Fed. R. Civ. P. 12(b)(1) based upon ripeness or

'standing,'" a plaintiff must allege that it suffered "(1) injury in fact (2) fairly traceable to the

defendant's actions and (3) likely to be redressed by a favorable decision." *Womack-Rodriguez*,

461 F. Supp. 3d at 468. At the pleading stage, "general factual allegations of injury resulting from

the defendant's conduct may suffice[.]" *Betancourt v. Federated Dept. Stores*, 732 F. Supp. 2d

693, 699 (W.D. Tex. 2010).

---

[12] By contrast, an attack is "factual" if the defendant "submits affidavits, testimony or other evidentiary materials." *Womack-Rodriguez*, 461 F. Supp. 3d at 466 (citing *Superior MRI Servs., Inc. v. Alliance Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015)). Defendants' attack on Highland's "standing" is based on the pleadings alone, as opposed to affidavits or other evidence, and therefore constitutes a "facial" attack. (*See* Motion ¶¶ 17-24). The allegations must, therefore, be taken as true. *See Se. La. Bldg. & Const. Trades Council, AFL-CIO v. La. ex rel. Jindal Constr. Trades Council ex rel. Jindal*, CIV.A. 13-370, 2013 WL 6709750, at *6 (E.D. La. Dec. 18, 2013) ("if a defendant merely files a Rule 12(b)(1) motion without supporting it with documentary evidence, a "facial attack" on standing, the trial court must look to the sufficiency of the allegations in the complaint because they are presumed to be true"); *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010); *United States ex rel. Haight*, 2021 WL 1721585 at *2.

32. Taking the allegations in the Amended Complaint as true, Highland sufficiently demonstrates "standing." Highland alleges it suffered an (i) injury in the form of millions of dollars lost from its estate, (ii) resulting directly from Defendants' actions relating to, *inter alia*, the Alleged Agreement, (iii) that can be redressed by a judgment that any Alleged Agreement is null and void.

33. For the foregoing reasons, the Amended Complaint contains allegations that, when taken as true, are sufficient to defeat a dismissal premised on Rule 12(b)(1) standing. *See Brown v. Jones County Junior Coll.*, 463 F. Supp. 3d 742, 752 (S.D. Miss. 2020) ("The Court finds that the facts of this case, as pled in the Complaint, sufficiently establish that [plaintiff] has" standing); *Ass'n of Am. Physicians & Surgeons*, 627 F.3d at 553 (vacating lower court's Rule 12(b)(1) dismissal based on standing where "accept[ing] as true all material allegations of the complaint and constru[ing] the complaint in favor of the complaining party," and finding that party had standing to assert declaratory relief.)

34. Defendants' argument that Highland's claim for declaratory relief somehow "accrued" post-petition and constitutes a "post-petition" claim is frivolous. (Motion ¶¶ 17-24). Nevertheless, it warrants a response.

35. Highland's claim for declaratory relief accrued the moment James Dondero, Nancy Dondero, and Dugaboy entered into the Alleged Agreement. (Am. Compl. ¶ 36). The Defendants' liability was not created by the filing of pleadings, and Defendants offer no authority in support of their conclusory assertion to the contrary. Indeed, it is absurd to contend that the Defendants could and did escape liability by failing to disclose their wrongful conduct before the rejection of the

14

LPA. Defendants' contention that this is a "post-petition" claim is equally without merit since principles of "accrual" have no relevance to such a determination.[13]

36.     Defendants' reliance on *Lauter v. Citgo Petroleum Corp.*, CV H-17-2028, 2018 WL 801601 (S.D. Tex. Feb. 8, 2018), is misplaced. There, the court noted that while a party's rejection of the agreement relieved both parties to the agreement from post-petition performance obligations thereunder, such rejection "did not cut off the right of [debtor's] estate or its successors-in-interest to pursue claims based on pre-petition breaches of the Agreement." *Id.* at * 15. The court found that the plaintiff lacked standing to pursue the claim because it constituted a post-petition breach, as opposed to a pre-petition breach. *Id.* Highland's pre-petition claim against Defendants under the rejected LPA is precisely the type of claim Highland has standing to pursue under *Lauter*.[14] Defendants otherwise offer no credible support for their argument that Highland

---

[13] To determine whether a claim constitutes a pre- or post-petition claim, the "majority of courts look to 'when the acts giving rise to a liability took place, not when they accrued.'" *In re Krisu Hosp., LLC*, 19-20347-RLJ11, 2021 WL 1186483, at *4 (Bankr. N.D. Tex. Mar. 26, 2021), *reconsideration denied*, 2021 WL 3232574 (Bankr. N.D. Tex. July 29, 2021) (quoting *In re Sunarhauserman, Inc.*, 126 F.3d 811, 818 (6th Cir. 1997) ("regardless of the substantive law on which the claim is based, the proper standard for determining that claim's administrative priority looks to when the acts giving rise to a liability took place, not when they accrued.") In other words, "[t]he focus should be on the time when the act giving rise to the claim was performed...." *In re Highland Group, Inc.*, 136 B.R. 475, 481 (Bankr. N.D. Ohio 1992) (same); *In re Parker*, 264 B.R. 685, 697 (B.A.P. 10th Cir. 2001), *aff'd*, 313 F.3d 1267 (10th Cir. 2002) (rejecting accrual theories and finding that claim "arose on the date it allegedly occurred, which was prior to the filing of the debtor's petition"); *In re Jartran, Inc.*, 732 F.2d 584, 584 (7th Cir. 1984) (finding claim for amounts owing for ads published under agreements was pre-petition as opposed to post-petition where "the agreement among the parties was entered into, and the ads were placed without possibility of revocation, before the petition was filed"); *Highland Group*, 136 B.R. at 481 (finding a claim pre-petition as opposed to post-petition where an indemnification agreement was entered into prior to a bankruptcy filing, even if the "conduct giving rise to the indemnification occurs post-petition"); *In re Pan Am. Hosp. Corp.*, 364 B.R. 839, 847 (Bankr. S.D. Fla. 2007) (rejecting "accrual theory" in support of argument that claim was "post-petition" where "the alleged conduct that gives rise to whatever claim may be asserted on behalf of [party] indisputably occurred pre-petition"); *Wheeler v. Magdovitz (In re Wheeler)*, 137 F.3d 299, 300–01 (5th Cir. 1998) (holding that claim arose pre-petition when negligent services were rendered, not post-petition when claim first accrued and became actionable under state law). Dugaboy's actions regarding the Alleged Agreement is precisely the type of misconduct which gives rise to this pre-petition claim

[14] The remaining cases relied on by Defendants are equally distinguishable. *In re Continental Airlines*, 981 F.2d 1450 (5th Cir. 1993), dealt with whether a debtor's rejection of a collective bargaining agreement with pilots terminated the debtor's obligations under the agreement's furlough provisions triggered by a post-petition, pre-rejection business shutdown. In holding that the "rejection of the [agreement] did not relieve [the debtor] of its furlough pay obligations arising from the three-day shutdown," the court reasoned that the rejection of a contract "does not invalidate the contract, or treat the contract as if it did not exist," and that "a party aggrieved by contract rejection may assert a claim for [rejection] damages." 981 F.2d at 1459. The issue of rejection damages is entirely irrelevant to the present facts. *In re Austin Development Co.*, 19 F.3d 1077 (5th Cir. 1994), dealt with a debtor's rejection of a lease and why such

lacks standing to assert its claim for declaratory relief. Highland sufficiently alleges a claim for declaratory relief. Accordingly, Defendants' motion to deny the Fifth Claim for Relief for relief should be denied.

**C.** **Highland Sufficiently States a Claim for Breach of Fiduciary Duty against Dugaboy and Nancy Dondero**

    **1.** **Highland Sufficiently Alleges that Dugaboy Owes a Fiduciary Duty to Highland as a Consequence of Entering into the Alleged Agreement**

37. Defendants seek dismissal of Highland's Sixth Claim for breach of fiduciary duty against Dugaboy on the ground that Dugaboy, as a limited partner, "was merely exercising its right to approve compensation pursuant to the LPA when it entered into the [Alleged] Agreement," and therefore, "Dugaboy owes no fiduciary duty to the Plaintiff as a consequence of simply exercising its right under the LPA." (Motion ¶ 29). Defendants' argument is deficient for numerous reasons.

38. While limited partners do not generally owe default fiduciary duties to a limited partnership, "under certain circumstances, limited partners can assume fiduciary duties if they take on an active role in the management of the entity." *Feeley v. NHAOCG, LLC*, 62 A.3d 649, 662 (Del. Ch. 2012); *see also Cantor Fitzgerald, L.P. v. Cantor*, 2000 WL 307370, at *22 (Del. Ch. Mar. 13, 2000) (imposing fiduciary duties on limited partners based on circumstances of limited partnership's business); *KE Prop. Mgmt., Inc. v. 275 Madison Mgmt.,* 19 Del. J. Corp. L. 805, 821–22, 1993 WL 285900 (Del. Ch. July 27, 1993) (imposing fiduciary duties on limited partner who exercised discretionary authority). "To the extent that a partnership agreement empowers a limited partner with discretion to take actions affecting the governance of the limited partnership, the limited partner may be subject to the obligations of a fiduciary, including the operation to act in good faith as to the other partners." *KE Prop. Mgmt.,* 1993 WL 285900 at *9. Fiduciary duties

---

rejection did not "effect termination of that lease" or an "implied forfeiture of rights of third parties to that lease." 19 F.3d at 1083. Whether the LPA was terminated through Highland's rejection is not at issue here.

may also be imposed on a limited partner if the "general partner and a limited partner are controlled by the same entity." *Id.* at *8.

39.     "The principle of fiduciary duty, stated most generally, [is] that one who controls property of another may not, without implied or express agreement, intentionally use that property in a way that benefits the holder of the control to the detriment of the property or its beneficial owner." *In re USACafes, L.P. Litig.,* 600 A.2d 43, 48 (Del. Ch. 1991). "There are, of course, other aspects—a fiduciary may not waste property even if no self interest is involved and must exercise care even when [their] heart is pure—but the central aspect of the relationship is, undoubtedly, fidelity in the control of property for the benefit of another." *Id.*; *U.S. Small Bus. Admin. v. Smith Stratton, Wise, Heher & Brennan, LLP*, CIV A 05-190, 2009 WL 323211, at *2 (E.D. Pa. Feb. 6, 2009) (noting that 'a limited partner is not liable for the obligations of the limited partnership unless [they] [are] also a general partner, or, in addition to the exercise of [their] rights and powers as a limited partner, [they] take part in the control of the business.' Therefore, the operative question is whether [limited partner] Defendants became *de facto* general partners or took "part in the control of the business.")

40.     Here, Highland alleges that by entering into the Alleged Agreement, Dugaboy took "part in the control of the Partnership's business" and property and otherwise bound the Partnership by effectively giving away more than $50 million in assets, and that Dugaboy is, therefore, subject to fiduciary duties.  (Am. Compl. ¶¶ 42-44).  *See KE Prop. Mgmt.*, 1993 WL 285900 at *9; *Trahan v. Lazar*, 457 F. Supp. 3d 323, 346 (S.D.N.Y. 2020) (complaint states breach of fiduciary claim against former limited partner where plaintiff "alleges that '[e]ach Partner had complete control over his or her own division' of [partnership], thus playing an active role in management.")

17

41.     Defendants' contention that "Dugaboy was merely exercising its right to approve compensation" under the LPA and that Dugaboy therefore owed no fiduciary duties (Motion ¶ 29), is deficient for the same reasons discussed *supra*.  Again, such an argument assumes that the Alleged Agreement constituted "compensation" within the meaning of the LPA.[15]  Defendants' argument ignores the allegations that the Alleged Agreement was not contemplated by the LPA and that such behavior constitutes "control" over Highland's business sufficient to impose fiduciary duties on Dugaboy.  Indeed, taken to its logical conclusion, Defendants' contention that no duty was owed would result in Nancy Dondero and Dugaboy having a blank check to give all of Highland's assets to Mr. Dondero and the other Obligors under the guise of "compensation." There is no basis in fact, contract, or the law giving Dugaboy such boundless authority.

42.     Even assuming, *arguendo*, that Dugaboy was authorized to enter into the Alleged Agreement under the LPA, Dugaboy would still be subject to fiduciary obligations because the LPA empowered Dugaboy, as a limited partner, "discretion to take actions affecting the governance of the limited partnership."  *KE Prop. Mgmt.*, 1993 WL 285900 at *9.  Section 3.10 of the LPA does not eliminate these fiduciary duties. *See Trahan*, 457 F. Supp. 3d at 346 (finding the terms of the LPA did not eliminate fiduciary duties imposed on limited partners where the complaint alleged that the limited partners took an active role in managing the partnership).

43.     The allegations in the Amended Complaint also sufficiently give rise to the inference that Dugaboy (the limited partner) and Strand (the general partner) were controlled by the same individual or entity – Mr. Dondero.  (*See* Am. Compl. ¶ 2) (alleging that Mr. Dondero "controlled the Debtor" and was the "lifetime beneficiary of Dugaboy"); (*id.* at Exhibit 5, p. 32

---

[15] Defendants also ignore other parts of the very provision that they rely on, such as whether the Alleged Agreement was entered during a "NAV Ratio Trigger Period."  LPA §3.10(a).

(Mr. Dondero signing LPA on behalf of Strand as "President"). For this additional reason, Dugaboy is subject to fiduciary duties. *See KE Prop. Mgmt.,* 1993 WL 285900 at *8.

44. Defendants' case cites are inapposite. In *Bond Purchase, LLC v. Patriot Tax Credit Properties, L.P.*, 746 A.2d 842 (Del. Ch. 1999), the court held that a limited partner did not owe a fiduciary duty where "the Partnership Agreement does not grant [limited partner] any rights to take actions affecting the governance of the Partnership," or "the right to manage or control Partnership property." 746 A.2d at 864. The court noted that "a fiduciary is typically one who is entrusted with the power to manage and control the property of another." *Id.* Here, unlike in *Bond*, Dugaboy managed and controlled Highland's property and took certain discretionary actions affecting Highland's governance—namely, the decision to forgive $50 million dollars of loans. While the court in *In re Estate of Conaway*, CIV.A. 6056-VCG, 2012 WL 524190 (Del. Ch. Feb. 15, 2012), held that a limited partner did not breach any fiduciary duties where "he merely exercised his contracted-for rights under the terms of the LPA," the court acknowledged that a fiduciary duty may be imposed upon a limited partner "in circumstances enabling the limited partner to exercise management or control over the partnership." 2012 WL 524190 at *3 Here, unlike in *Conaway*, (a) section 3.10 of the LPA was not a "right" Dugaboy (or any particular limited partner) contracted for, and (b) Highland alleges that in entering into the Alleged Agreement, Dugaboy managed and controlled Highland. This is precisely the type of circumstance in which courts impose fiduciary duties on a limited partner. Defendants otherwise do not cite to any credible authority in support of their contention that Dugaboy does not, as a matter of law, owe a fiduciary duty to Highland by entering into the Alleged Agreement.[16]

---

[16] Defendants' citation to Del. Code Ann. Tit. 6, § 17-303(b)(8)(o) is also misguided. That provision provides that: "a limited partner does not participate in the control of the business" where that limited partner acts in "[s]uch other matters as are stated in the partnership agreement or in any other agreement or in writing." Again, section 3.10 is not

45.     Defendants' conclusory assertion that Dugaboy owed no fiduciary duty to Highland because it "was merely exercising its right to approve compensation pursuant to the LPA" are issues of fact and thus insufficient to defeat Highland's claims on a 12(b)(6) motion to dismiss. *See In re The Brown Sch.*, 368 B.R. 394, 412 (Bankr. D. Del. 2007) (denying motion to dismiss claim for breach of fiduciary duty where there is factual dispute, finding that plaintiff "has alleged sufficient  facts  to state a claim for breach of fiduciary duty against  [defendant]  and  should  be allowed to prove this claim.")  Accepting the allegations as true and viewing them in the light most favorable to Highland, the Amended Complaint states a claim for breach of fiduciary duty against Dugaboy that is plausible on its face.  *See Trahan*, 457 F. Supp. 3d at 346.   Accordingly, Defendants' Motion to dismiss Highland's Sixth Claim for Relief should be denied.

      **2.**      **<u>Highland Has Standing to Assert a Claim for Breach of Fiduciary Duty against Dugaboy</u>**

46.      Defendants contend that Highland lacks standing to assert a claim for breach of fiduciary duty on the basis that such a claim "accrued" after the Petition Date and that it therefore constitutes a post-petition claim based upon a rejected executory contract. (Motion ¶¶ 34-36).  This is the same flawed "facial" argument Defendants raise in their attempt to dismiss Highland's claim for declaratory relief. *See supra*, Section III.B.2.   As briefed above, pre-petition claims arise from transactions that occurred prior to the petition date, and principles of "accrual" have no relevance to such a determination.  Highland's breach of fiduciary duty claim arises from Dugaboy entering into the Alleged Agreement, a transaction that arises from pre-petition conduct. *See id.*

47.     Taking the allegations in the Amended Complaint as true, Highland sufficiently alleges it has standing to assert a claim for breach of fiduciary duty.   Highland's injury is (i)

---

a "bargained-for" right (Dugaboy is not even mentioned by name), and the Amended Complaint alleges that Dugaboy took control of the management of Highland's business in contravention of the LPA.

"concrete, particularized, and actual" because it alleges the loss of millions of dollars from its estate; (ii) clearly traceable to Dugaboy's actions in entering into the Alleged Agreement; and (iii) clearly redressable by a favorable ruling in Highland's favor in the award of damages and declaratory relief. *See Prison Legal News v. Livingston*, CIV. A. C-09-296, 2009 WL 5170229, at *9 (S.D. Tex. Dec. 17, 2009). Accordingly, Highland sufficiently alleges a breach of fiduciary claim against Dugaboy, and Defendants' Motion to dismiss the Sixth Claim for Relief should be denied.

**D.      Highland States a Claim for Aiding and Abetting Breach of Fiduciary Duty against the Donderos**

48.      Highland states a claim for aiding and abetting breach of fiduciary duty against the Donderos.      To state a claim for aiding and abetting a breach of fiduciary duty,  a  plaintiff  must plead: (i) the existence of a fiduciary relationship; (ii) a breach of that relationship; (iii) knowing participation in the breach by a defendant who is not a fiduciary; and (iv) damages proximately caused from the concerted action of the fiduciary and the non-fiduciary. *In re Am. Bus. Fin. Servs., Inc.*, 361 B.R. 747, 757 (Bankr. D. Del. 2007); *U.S. Bank Nat. Ass'n v. Verizon Commc'ns Inc.*, 817 F. Supp. 2d 934, 944 (N.D. Tex. 2011); *Brown Sch.*, 368 B.R. at 402. Defendants' motion to dismiss this claim is premised on the argument that the Donderos "could not have aided and abetted" because there is no "underlying breach of fiduciary duty" claim against Dugaboy. (Motion ¶ 37). As discussed *supra*, Highland sufficiently alleges its underlying breach of fiduciary claim against Dugaboy, and for this reason alone, Defendants' Motion should be denied. *See In re USA Detergents, Inc.*, 418 B.R. 533, 546 (Bankr. D. Del. 2009) (denying motion to dismiss aiding and abetting claim where plaintiff "set out sufficient facts to survive dismissal on the breach of fiduciary duty claims"). Highland also plausibly alleges that each of the Donderos "knowingly participated" in Dugaboy's underlying breach by alleging that the Donderos "were aware" of

21

Dugaboy's fiduciary duties to Highland if it authorized the Alleged Agreement, (Am. Compl. ¶ 78), and that they "participat[ed] in the authorization of the purported Alleged Agreement," (*id.* ¶ 79).

49.    Drawing all reasonable inferences in favor of Highland, the Amended Complaint adequately pleads its Seventh Claim for aiding and abetting a breach of fiduciary duty.  *See Brown Sch.*, 368 B.R. at 413 (denying motion to dismiss aiding and abetting claim where complaint sufficiently alleges that "non fiduciary" defendants "substantially and knowingly participated in, benefitted from and aided and abetted the breach of fiduciary duty engaged in" by underlying fiduciary); *In re Am. Bus. Fin. Servs.*, 361 B.R. at 758 ("Applying the relaxed standards of notice pleading, the Court concludes that the [] Complaint states a claim" for aiding and abetting); *U.S. Bank*, 817 F. Supp. 2d at 944 (denying motion to dismiss aiding and abetting of fiduciary duty claim where "[plaintiff's] factual allegations allow the court to reasonably infer that [defendants] knowingly aided and abetted [fiduciaries'] breach of fiduciary duty" where allegations detail underlying illicit transaction involving millions of dollars); *Trahan*, 457 F. Supp. 3d at 350 (denying motion to dismiss aiding and abetting breach of fiduciary duty where "Plaintiff has adequately pleaded that the Limited Partner Defendants owed and breached fiduciary duties to Plaintiff," that "Each Defendant allegedly 'knowingly and substantially assisted the other Defendants' breaches of their fiduciary duties,'" and that "each Defendant allegedly had knowledge of the fiduciary duties owed to [plaintiff] "'through their positions, duties, responsibilities, and experience at [company]'" and "through their access to the LPA and LLC Agreement.'")  Accordingly, Defendants' Motion to dismiss this claim should be denied.

50.    Defendants' remaining arguments are frivolous.

51.     Defendants maintain that is "legally impossible for Nancy Dondero to have aided and abetted Dugaboy's alleged fiduciary duty … as she was acting as Dugaboy in her trustee status." (Motion ¶ 38).   Defendants offer no credible legal authority in support of this contention, other than reciting the general elements of aiding and abetting claims and otherwise citing case law that is inapplicable.  (*See id.* ¶¶ 38-43).  In *In re USDigital, Inc.*, 443 B.R. 22 (Bankr. D. Del. 2011), the court held that where an underlying claim for breach of fiduciary duty was against a director defendant, that same defendant could not "have aided and abetted the same fiduciary duty he allegedly breached in a previous count."  443 B.R. at 47.   The court found that plaintiff sufficiently plead facts supporting an inference that other defendants "knowingly participated in the fiduciary duty breaches" by "play[ing] an active role in the Director Defendant's decision to" engage in the underlying breach. *Id.*  Here, unlike in *USDigital*, Highland does not bring a claim against the same party—*i.e.*, Dugaboy—for aiding and abetting its own breach of fiduciary duty. Highland pleads that Nancy Dondero, a third party, aided and abetted Dugaboy's underlying breach by playing an active role in Dugaboy's execution of the Alleged Agreement.[17]

52.     Defendants' argument that "Nancy Dondero owes no fiduciary duty to [Highland]," (Motion ¶¶ 32-33), is of no moment.   Contrary to Defendants' representations, Highland does not allege an underlying breach of fiduciary claim against Nancy Dondero. (*See generally* Am.

---

[17] Defendants' remaining case cites are equally distinguishable.  *See Young v. Liberty Mut. Group, Inc.*, CV-12-2302-PHX-JAT, 2013 WL 840618, at *3 (D. Ariz. Mar. 6, 2013) (applying AZ law and finding no aiding and abetting claim where complaint only involved one tortious act – the breach of fiduciary duty, but no allegations of "aiding abetting" of that tortious act); *Jones v. Colo. Cas. Ins. Co.*, CV 12-1968-PHX-JAT, 2013 WL 4759260, at *3 (D. Ariz. Sept. 4, 2013) (same); *In re Oracle Corp. Derivative Litig.*, 2020 WL 3410745, at *11 (Del. Ch. June 22, 2020) (dealing with whether defendants as "fiduciary for an acquired entity can aid and abet breaches of duty by a fiduciary for the buyer"); *In re TOCFHBI, Inc.*, 413 B.R. 523, 538 (Bankr. N.D. Tex. 2009) (no aiding and abetting claim where there is no underlying fiduciary duty and where "a law firm owes no independent duty to creditors of its client"); *Bolick v. Alea Group Holdings, Ltd.*, 278 F. Supp. 2d 278, 281 (D. Conn. 2003) (dealing with whether there is aiding and abetting liability under Connecticut Fair Employment Practices Act "when one is the primary perpetrator of the alleged discrimination"); *Cornell Glasgow, LLC v. La Grange Props., LLC*, CIV.A. N11C-05013JRS, 2012 WL 2106945, at *11 (Del. Super. Ct. June 6, 2012) (finding that entities all constituted one "corporation").

Compl.).  As discussed *supra*, a claim for aiding and abetting a breach of fiduciary duty requires, *inter alia*, knowing participation in the breach by a defendant who is not a fiduciary.  *See Brown Sch.*, 368 B.R. at 402.  Any "duty" owed by Nancy Dondero to Highland is thus irrelevant to the Claims or the instant Motion, and any arguments premised on such duty should be disregarded by the Court.

53.  Defendants' contention that Highland does not adequately plead "scienter," (Motion ¶¶ 44-47), is insufficient to defeat Highland's Claim for the same reasons discussed *supra*. Highland sufficiently pleads all of the elements for a claim of aiding and abetting.  The two cases Defendants rely on in support of their "scienter" argument are inapposite.  In *Capitaliza-T Sociedad De Responsabilidad Limitada De Capital Variable v. Wachovia Bank of Del. National Association*, CIV. 10-520 JBS KMW, 2011 WL 864421 (D. Del. Mar. 9, 2011), the court found that the complaint "does contain allegations that defendants knew that [party] was engaging in transactions that exceeded its authorization," where allegations only mention certain "red flags" surrounding circumstances of illicit transaction, but not that defendants "knew" of the underlying illicit transaction itself.  2011 WL 864421 at *6.  Here, unlike in *Capitaliza-T*, the Amended Complaint states that the Donderos were "aware" of Dugaboy's specific fiduciary duties to Highland if he exercised control over Highland's management, and that they "knowingly" participated in the underlying illicit transaction, *i.e.*, the "authorization of the purported Alleged Agreement." (Am. Compl. ¶¶ 77-81).   In *In re Draw Another Circle*, 602 B.R. 905 (Bankr. D. Del. 2019), the allegations were deficient where they stated that the defendants "should have known" of the breach where the "directors' direct fiduciary relationships to debtor would have barred any aiding and abetting claim." 602 B.R. at 905.  Here, Highland sufficiently alleges that

24

the Donderos knowingly participated in the alleged breach, and any direct "direct" fiduciary relationship running from the Donderos to Highland is irrelevant.

54.     Defendants' conclusory contention that there was no "concerted action" on behalf of the Donderos, (Motion ¶¶ 48-49), is nothing more than a restatement of Defendants' previous attacks on the Claim, and for the reasons briefed *supra*, such argument should be rejected by the Court.  Finally, Defendants' assertion that Highland lacks "standing" to bring a claim for aiding and abetting is based on the same frivolous notions of "accrual" they rely on to dismiss the other Claims. (*See* Motion ¶¶ 50-51, relying on theories of "accrual," which are irrelevant).  For the same reasons discussed above, such argument should be summarily rejected by the Court.  *See supra*, Section III.B.2 n.13.  Accordingly, Defendants' Motion to dismiss the Seventh Claim for relief should be denied.

## CONCLUSION

WHEREFORE, Highland respectfully requests that the Court deny the Motion in its entirety and grant any further relief as the Court deems just and proper.

25

Dated:  September 28, 2021.

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No. 143717)
Ira D. Kharasch (CA Bar No. 109084)
John A. Morris (NY Bar No. 266326)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
        ikharasch@pszjlaw.com
        jmorris@pszjlaw.com
        gdemo@pszjlaw.com
        hwinograd@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward (Texas Bar No. 24044908)
Zachery Z. Annable (Texas Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110
Email: MHayward@HaywardFirm.com
        ZAnnable@HaywardFirm.com

*Counsel for Highland Capital Management, L.P.*

26