PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717) (*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 266326) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward (Texas Bar No. 24044908)
Zachery Z. Annable (Texas Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 19-34054-sgj11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P. | § | Chapter 11 |
| | § | |
| Reorganized Debtor. | § | |

| | | |
|---|---|---|
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| v. | § | Adversary No. 21-03003-sgj |
| | § | |
| JAMES D. DONDERO, NANCY DONDERO, AND | § | |
| THE DUGABOY INVESTMENT TRUST, | § | |
| | § | |
| Defendants. | § | |

| | | |
|---|---|---|
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| v. | § | |
| | § | Adversary No.: 21-03005-sgj |
| NEXPOINT ADVISORS, L.P., JAMES | § | |
| DONDERO, NANCY DONDERO, AND THE | § | |
| DUGABOY INVESTMENT TRUST, | § | |
| | § | |
| Defendants. | § | |

| | | |
|---|---|---|
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| v. | § | |
| | § | Adversary No.: 21-03006-sgj |
| HIGHLAND CAPITAL MANAGEMENT SERVICES, INC., JAMES DONDERO, NANCY DONDERO, AND THE DUGABOY INVESTMENT TRUST, | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| Defendants. | § | |

| | | |
|---|---|---|
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| v. | § | |
| | § | Adversary No.: 21-03007-sgj |
| HCRE PARTNERS, LLC (n/k/a NEXPOINT REAL ESTATE PARTNERS, LLC), JAMES DONDERO, NANCY DONDERO AND THE DUGABOY INVESTMENT TRUST, | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| Defendants. | § | |

DOCS_NY:44113.7 36027/003

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................... 1

THE ARBITRATION CLAUSE DID NOT SURVIVE DEBTOR'S REJECTION
    OF LPA ................................................................................................................................ 3

THE DONDERO DEFENDANTS WAIVED ARBITRATION .................................................. 9

THE DONDERO DEFENDANTS ARE ESTOPPED FROM ARBITRATING ....................... 15

POINTLESS, WASTEFUL DELAY ...................................................................................... 18

CONCLUSION .................................................................................................................... 20

## TABLE OF AUTHORITIES

### CASES

*Allen v. C & H Distribs., L.L.C.,*
    813 F.3d 566 (5th Cir. 2015) ................................................................................ 17

*Barrett-Bowie v. AmeriDream Educ. Concepts, LLC,*
    2014 U.S. Dist. LEXIS 39534, (N.D. Tex. Feb. 26, 2014) ..................................... 16

*Doctor's Assocs., Inc. v. Distajo,*
    107 F.3d 126 (2d Cir. 1997) .................................................................................. 12

*Edwards v. Aetna Life Ins. Co.,*
    690 F.2d 595 (6th Cir. 1982) ................................................................................ 17

*General Guaranty Insurance Co. v. New Orleans General Agency, Inc.,*
    427 F.2d 924 (5th Cir. 1970) ................................................................................ 12

*In re Fleming Companies, Inc.,*
    325 B.R. 687 (Bankr. D. Del. 2005) ..................................................................... 7, 8

*Janvey v. Alguire,*
    2014 U.S. Dist. LEXIS 193394 (N.D. Tex. July 30, 2014) ............................... 4, 5, 8

*Jethroe v. Omnova Solutions, Inc.,*
    412 F.3d 598 (5th Cir. 2005) ................................................................................ 17

*Keytrade USA, Inc. v. Ain Temouchent M/V,*
    404 F.3d 891 (5th Cir. 2005) ............................................................................ 12, 13

*Love v. Tyson Foods, Inc.,*
    677 F.3d 258 (5th Cir. 2012) ............................................................................ 15, 16

*Miller Brewing Co. v. Fort Worth Distrib. Co.,*
    781 F.2d 494 (5th Cir. 1986) ................................................................................ 12

*New Hampshire v. Maine,*
    532 U.S. 742 (2001) .......................................................................................... 15, 16

*Price v. Drexel Burnham Lambert, Inc.,*
    791 F.2d 1156 (5th Cir. 1986) .............................................................................. 13

*Reed v. City of Arlington,*
    650 F.3d 571 (5th Cir. 2011) ................................................................................ 15

*Republic Ins. Co. v. PAICO Receivables, LLC,*
    383 F.3d 341 (5th Cir. 2004) ............................................................................ 12, 13

DOCS_NY:44113.7 36027/003

*Southeastern Pa. Transp. Auth. v. AWS Remediation, Inc.,*
  2003 WL 21994811 (E.D. Pa. Aug. 18, 2003) ........................................................................ 8

*Subway Equip. Leasing Corp. v. Forte,*
  169 F.3d 324 (5th Cir. 1999) ................................................................................................. 12

*Wells Fargo Bank, N.A. v. Titus Chinedu Oparaji (In re Titus Chinedu Oparaji),*
  698 F.3d 231 (5th Cir. 2012) ................................................................................................. 17

*Williams v. Cigna Fin. Advisors, Inc.,*
  56 F.3d 656 (5th Cir. 1995) ................................................................................................... 12

DOCS_NY:44113.7 36027/003

**DEBTOR'S BRIEF IN SUPPORT OF ITS**
**OBJECTION TO MOTION TO COMPEL ARBITRATION AND STAY LITIGATION**

Highland Capital Management, L.P., the reorganized debtor (the "Debtor" or "HCMLP")

in this chapter 11 case ("Bankruptcy Case") and the plaintiff in these procedurally consolidated

adversary proceedings (the "Adversary Proceedings"), files this brief (the "Brief") in support of

its objection (the "Objection") to the *Motion to Compel Arbitration and Stay Litigation* (the

"Arbitration Motion") filed by defendants James Dondero, Nancy Dondero, and the Dugaboy

Investment Trust (collectively, the "Dondero Defendants") in each of the Adversary Proceedings.

In support of its Objection, HCMLP states as follows:

## INTRODUCTION

1.     The Dondero Defendants now give us the latest installment of their ever-changing

defense of these simple adversary proceedings to collect on demand notes that together constitute

one of the estate's most valuable assets. These defendants invoke a right to arbitration they don't

have, based on a rejected limited partnership agreement ("LPA") they simultaneously

mischaracterize and ignore, intending to frustrate the liquidation of estate assets by multiplying

litigation, wasting time, and increasing chaos.

2.     The Dondero Defendants never had a right to arbitrate the original subject matter

of these adversary proceedings.[1] Even if they once had a right to arbitrate certain issues (such as

---

[1] The Arbitration Motion seeks only to arbitrate three of the five new counts in the Debtor's amended complaints, which themselves were necessitated by the shifting sands of the Dondero Defendants' story. *First*, James Dondero argued that the demand notes were simply forgiven. When asked whether he paid income tax on the cancelation of debt from that alleged forgiveness, Mr. Dondero admitted he had not. That admission led him to make his *second* argument—that the Debtor had somehow agreed that the notes would be forgiven on satisfaction of a "condition subsequent." When asked who made such an agreement on the Debtor's behalf, Mr. Dondero initially claimed that he did—that he had made an agreement with himself. Apparently after realizing how absurd that sounded, Mr. Dondero then changed his story a *third* time—now claiming (only slightly less absurdly) that it was his sister, Nancy Dondero, on Dugaboy's behalf, who made this peculiar agreement to forgive the notes. This "Alleged Agreement" is, evidently, not memorialized in any writing and exists entirely in the Dondero Defendants' collective mind. But it

their putative affirmative defenses), the LPA, under which that right would have arisen, has been rejected under Bankruptcy Code § 365. And even if the LPA had not been rejected, the Dondero Defendants waived any right to arbitrate. Their deliberate actions — including serving extensive written discovery demands in the above-referenced adversary proceedings (which the Debtor has responded to) and doing so in a manner that plainly violates the very arbitration clause they now seek to invoke — and their representations to this Court should cause this Court to judicially estop them from claiming such a right now.

3.     And even if they had a right to arbitrate, and even if they hadn't waived it, and even if they were not estopped from claiming a right to arbitrate, the Dondero Defendants seek relief in the Arbitration Motion that would tear apart these Adversary Proceedings — which they stipulated to consolidate — splitting them into several pieces. The District Court (with this Court's assistance) would hear the claims against the obligors under the Notes (including Mr. Dondero) who do not claim a right to arbitrate, while an arbitrator hears some — but not all — of the claims against the Dondero Defendants. Making matters worse, the District Court and the hypothetical arbitrators would hear the exact same evidence from the exact same witnesses concerning the merits of the Defendants' newly concocted "conditions subsequent" defense. Were any of this possible, it would certainly be wasteful and inefficient, squandering time and judicial resources simply to increase the possibility of inconsistent results on the same claims and defenses, multiplying appeals, and casting this entire case ever deeper into a miasma of litigation.

4.     The Arbitration Motion lacks merit, ignores orders of this Court, flouts both law and fact, and offends common sense. It should be denied.

---

was that position that necessitated the Debtor to add counts pertaining to fraudulent transfer and breach of fiduciary duty, three of which the Dondero Defendants now seek to arbitrate.

## THE ARBITRATION CLAUSE DID NOT SURVIVE DEBTOR'S REJECTION OF LPA

5.      In some 20 pages, the Dondero Defendants devote all of two sentences, including a citation to an inapplicable case from outside this jurisdiction, to addressing a fundamental flaw undermining the entire Arbitration Motion: the Debtor rejected the LPA — including the arbitration provision — under section 365 of the Bankruptcy Code ("Section 365"). Under Article V.A. of the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (As Modified)* [Docket No. 1808] (the "Plan"), any executory contract not already assumed in accordance with an order of the Court or included in the Plan Supplements (as identified and defined in the Confirmation Order, defined below) as an assumed contract was deemed rejected as of the entry of the Court's order confirming the Plan. The *Order (I) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (II) Granting Related Relief* [Docket No. 1943] (the "Confirmation Order") provided for the rejection of all non-assumed executory contracts, including the LPA. *See* Confirmation Order ¶ Q.

6.      There is no dispute that the LPA was an executory contract that was deemed rejected under the Confirmation Order. The implications of that rejection are obvious: the Debtor is excused from any obligations it once had under the rejected LPA, and any damages non-debtor parties to the rejected LPA may have must be asserted as general unsecured claims against the estate.

7.      By blithely ignoring the LPA's rejection, the Dondero Defendants would presume to have this Court order specific performance of a rejected executory contract, legally and practically nullifying this Court's Confirmation Order. The same District Court that will hear these Adversary Proceedings ruled that non-debtor parties to an executory contract that contained arbitration provisions could not compel arbitration after that executory contract was rejected, even

3

"while acknowledging there are strong federal policy considerations behind the FAA that should be taken into account."[2]

8.      In *Janvey,* Judge Godbey carefully and extensively analyzed whether the arbitration provisions of a larger executory contract should be considered as separate executory contracts subject to rejection under Section 365, and concluded they should: "Under Countryman's … test this Court concludes that arbitration agreements must be analyzed as separate executory contracts, based on the nature of the agreement as well as arbitration caselaw regarding severability … 'an arbitration agreement is a classic executory contract, since neither side has substantially performed the arbitration agreement at the time enforcement is sought.'"[3] Having determined that the arbitration provisions constituted an executory contract *and* that the executory contract had been rejected, Judge Godbey reasoned, "the appropriate remedy in this circumstance cannot be for the Court to require specific performance by the trustee—*i.e.,* to compel arbitration—because 'injured part[ies] cannot insist on specific performance by the trustee.'"[4]

9.      Ultimately, the District Court in *Janvey* refused to compel arbitration in light of the rejection of the arbitration clause-containing contract because "[i]f the Court required the Receiver to adopt these arbitration agreements, it would greatly burden and deplete the receivership estate. Such a result, weighed in the balance, would be unjust and inequitable."[5]   If enforcing an arbitration provision is unjust and inequitable simply because arbitration is sought against the party

---

[2] *Janvey v. Alguire,* 2014 U.S. Dist. LEXIS 193394 at *41 (N.D. Tex. July 30, 2014).

[3] *Id.* at *112-13 (quotations omitted).

[4] *Id.* at *113 (quotations omitted, noting also that the "legislative history of § 365(g) makes clear that the purpose of the provision is to provide only a damages remedy for the non-bankrupt party").

[5] *Id.* at *116. *Janvey* involved proceedings in a federal equities receivership action.  Noting the paucity of caselaw arising in the relatively uncommon context of such receiverships, Judge Godbey relied entirely on the more robust body of Bankruptcy Code jurisprudence for his rulings and treated the receiver as though it were a trustee under the Bankruptcy Code.  *See id.* at *100-01.

that rejected the contract under Section 365, additional equitable considerations that may become evident in these cases would militate even more strongly against compelling arbitration here.[6]

10.     If the Dondero Defendants legitimately wanted this Court to consider the strong federal policy favoring arbitrations as part of an opposition to the Debtor's rejection of the LPA, they could have.  They didn't.  As noted above, the Confirmation Order effected the rejection of the LPA as part of confirmation of the Debtor's Plan, but the Confirmation Order was not entered until after the Dondero Defendants had a full opportunity to object to the rejection of the LPA. More significantly, the complaints in these Adversary Proceedings were filed on January 22, 2021, almost two weeks *before* plan confirmation, meaning that the Dondero Defendants had notice and time to oppose confirmation on the basis that rejection of the LPA could implicate their ability to arbitrate at least their affirmative defense to the complaints.[7]

11.     James P. Seery, Jr., the Debtor's Chief Executive Officer, testified at confirmation and removed any doubt that collection actions had been commenced to recover under the notes:

> The debtor has certain notes that are demand notes.  These are all from related entities.  Most of the notes, the demand notes, we have demanded, and *we have commenced litigation to collect*.  And we assume that we're going to be able to collect those …. We have accelerated those notes and we've asserted demands and *we commenced litigation*, I believe, on each of those last week to collect.  So we

---

[6] Consider, for example, a statement from the concurring opinion in *Janvey v. Alguire,* 847 F.3d 231 (5th Cir. 2017), an appellate decision from the same case affirming the District Court's denial of a motion to compel arbitration on a different issue, and which left the District Court's decision discussed above undisturbed.  Judge Higginbotham, in a concurring opinion, wrote "separately to state what is, to these eyes, a more fundamental reason that the arbitration clauses in this case are not enforceable.  Simply put, arbitration agreements may be rejected when they are instruments of a criminal enterprise, as these arbitration agreements were."  847 F.3d at 246.

[7] The Dondero Defendants cannot credibly claim ignorance of their need to preserve a right to arbitrate at that stage of the proceedings.  The complaints were filed before the confirmation hearing, and the Dondero Defendants certainly knew at that point that they were (eventually) going to raise an affirmative defense regarding some secret agreement(s) to excuse over $50 million of debt.  They knew or should have known by then that such an affirmative defense would rely on a highly questionable allegation that an insider had made an oral agreement with himself (and when that story didn't work, with his sister) to forgive tens of millions of dollars of valid debt and that it was inconceivable that the Debtor would not challenge the validity of, enforceability of, and corporate authority of whomever these defendants alleged were parties to, that extraordinary agreement.  This dispute was not only foreseeable, it was a foregone certainty.  If the Dondero Defendants believed that dispute was subject to the Arbitration Clause, they were obligated to raise that issue at plan confirmation.  Rather than doing so, they sat in silence.

5

do estimate that we will collect on all of the notes that we've demanded and **commenced action** on.

Transcript, Confirmation Hearing (February 2, 2021) at 123:23-124:12 (emphases added).

12.     The Dondero Defendants prosecuted objections to a great many factual and legal issues associated with plan confirmation.  Among those issues was the accuracy and assumptions underlying the Debtor's financial projections and liquidation analysis contained in the Debtor's plan supplement [Docket No. 1875-1] (the "Projections") that formed the basis of the Debtor's showing under Bankruptcy Code sections 1129(a)(7) and (11).  The Projections relied critically on the 100% recovery of the demand notes. *See* Projections at 3 (assumption "C").  The Dondero Defendants objected to plan confirmation based on several components of the Projections but raised no objection to the collectability of demand notes that are the subject of these Adversary Proceedings.  Again, these Adversary Proceedings had already been commenced. Mr. Seery made sure everyone knew that at confirmation, and the Debtor made sure that everyone knew the Debtor expected to collect on the notes in 2021.

13.     In the face of all of this, the Dondero Defendants said nothing to this Court about (a) the alleged oral insider agreement to excuse the notes, (b) an affirmative defense to the complaints seeking to monetize one of the most valuable assets of the estate, or (c) arbitration.[8] Instead, the Dondero Defendants evoked arbitration for the first time more than six months later

---

[8] Nancy Dondero and the trust she allegedly controls, Dugaboy, have been extremely active in this case.  For example, prior to confirmation, Dugaboy objected to a Rule 9019 motion (*see*, *e.g.*, Docket No. 1706) and sought the appointment of an examiner [Docket No. 1745].  Dugaboy also objected to the Plan [Docket No. 1667] and filed a "supplement" on the eve of the confirmation hearing for the specific purpose of taking into account certain "developments." [Docket No. 1868].  Despite its active participation in the bankruptcy case, including its strenuous objection to the Plan, Dugaboy (and its alleged control person, Nancy Dondero), never disclosed the Alleged Agreement to the Debtor, the Court, or any parties-in-interest and never sought to protect an arbitration clause for an inevitable dispute given the Debtor's express assumptions and disclosures about the collectability of the Notes.

6

in the form of the Arbitration Motion.[9] The law is clear: the LPA was rejected, so the Debtor is excused from any attempt to specifically enforce an obligation the Debtor might have once had under the LPA, whatever its original merits.

14. The Debtor agrees with the Dondero Defendants in one narrow sense: that this Court need not consider whether it has discretion to order arbitration or not. As established by both the District Court for the Northern District of Texas and the Fifth Circuit Court of Appeals, when the arbitration provisions of an executory contract are rejected (along with the rest of the contract), non-debtor parties simply cannot compel the debtor or trustee that rejected the contract to arbitrate. This is true whether the claim sought to be arbitrated is core, non-core, *Stern*-core, *Stern*-non-core, "arising from" the LPA, "arising under" the LPA, "related to" to the LPA, or vaguely inspired by the LPA.

15. The cases the Dondero Defendants cite for the proposition that non-core matters must be arbitrated are inapposite when the arbitration clause is found only in a rejected executory contract. Even the *Fleming* case cited in the Arbitration Motion for the proposition that the "Debtor's rejection of the LPA does not absolve Debtor of its obligation to arbitrate" doesn't support that argument. The Dondero Defendants fail to tell this Court that, in *Fleming,* it was the *debtor* that invoked an arbitration provision in a rejected executory contract.[10] The non-debtor party claimed that the *debtor* was not entitled to arbitrate because the debtor had breached the executory contract—*see* Bankruptcy Code section 365(g)—by rejecting it. In *Fleming,* then, *the*

---

[9] The novelty of the Dondero Defendants' arguments regarding arbitration is a motif running through this opposition. That these defendants have not raised an arbitration argument until now has fatal implications for the Arbitration Motion—waiver, estoppel—that are discussed below.

[10] *In re Fleming Cos., Inc.,* 325 B.R. 687 (Bankr. D. Del. 2005)

*party who wished to invoke the arbitration clause was the party that rejected the underlying executory contract.*[11]

16.     Here, it is the exact opposite: the Debtor—who intentionally rid itself of its obligations under the LPA by rejecting the LPA (without objection or so much as a word about arbitration from the Dondero Defendants)—is *opposing* the non-debtor's attempt to invoke a defunct arbitration provision contained in the rejected LPA.  The Debtor asks this Court only to enforce the Rejection Order in exactly the way the Debtor obtained it. Nothing of the sort occurred in *Fleming.*[12]

17.     The better-reasoned and controlling cases to consider whether an arbitration clause survives rejection of an underlying executory contract have ruled that a debtor's rejection of an executory contract (such as the LPA here) defeats the non-debtor party's attempt to invoke an arbitration clause in that rejected contract.[13]

18.     This is especially true where the non-debtor party has repeatedly waived the arbitration clause by, among many other things, saying nothing about arbitration when the underlying executory contract was being rejected.  The long record of this case is devoid of any indication that the Dondero Defendants sought or would ever seek to preserve some right to arbitrate disputes allegedly arising from the LPA.  That never happened until they filed their Arbitration Motion.  The failure to so much as mention arbitration in connection with the Debtor's

---

[11] *In re Fleming Co., Inc.,* 325 B.R. at 693 (quoting *Southeastern Pa. Transp. Auth. v. AWS Remediation, Inc.,* 2003 WL 21994811 at *3 (E.D. Pa. Aug. 18, 2003)).

[12] Although the court in *Fleming* regarded the "distinction" as to who was seeking to compel arbitration as "immaterial," that statement is *dictum* from a court whose decisions, unlike the Fifth Circuit Court of Appeals, are not controlling in this Court.

[13] *Janvey v. Alguire,* 847 F.3d 231 (5th Cir. 2017); *Janvey v. Alguire,* 2014 U.S. Dist. LEXIS 193394 (N.D. Tex. July 30, 2014).

rejection of the LPA was just the first act and omission that waived any right to arbitration the Dondero Defendants may have once had. There are more.

## THE DONDERO DEFENDANTS WAIVED ARBITRATION

19. In August, with the approval of counsel for all defendants, the Debtor filed unopposed motions for leave to amend its complaints in these Adversary Proceedings for the sole purpose of adding the claims arising from the assertion of the "conditions subsequent" defenses. In the orders granting those motions, the Court ordered that the "Debtor is deemed to have served the Amended Complaint on the defendant on July 13, 2021 . . ." *See*, *e.g.*, *Order Granting Debtor's Unopposed Motion for Leave to Serve and File Amended Complaint* [Adv. Pro. 21-03005, Docket No. 57].

20. The unopposed motions for leave to amend were just one part of the parties' efforts to streamline and consolidate the Adversary Proceedings for discovery and related purposes. In fact, in late August, *with full knowledge that the Debtor was going to assert claims against James Dondero, Nancy Dondero, and Dugaboy arising from the unauthorized entry into the Alleged Agreement*, the parties negotiated, executed, and asked this Court to approve stipulations that addressed pre-trial matters, including fact and expert discovery, and consolidated the Adversary Proceedings for discovery purposes. *See*, *e.g.*, *Stipulation and Agreed Order Governing Discovery and Other Pretrial Issues* [Adv. Pro. 21-03003, Docket No. 78].

21. On September 6, 2021, this Court entered its *Order Approving Stipulation Governing Discovery and Other Pre-Trial Issues* [Adv. Pro. 21-03003, Docket No. 86] in all the Adversary Proceedings, approving an extensive pretrial and discovery schedule intended to govern those proceedings (the "Stipulations"). The Dondero Defendants signed those Stipulations and asked this Court to approve them. The Dondero Defendants:

9

- Never sought to insert a provision into the Stipulations contemplating arbitration of any claims or defenses;

- Never advised the Debtor that they would seek to arbitrate any claims or defenses;

- Never advised this Court that they would seek to arbitrate any claims or defenses;

- Never advised this Court that the Stipulations called for discovery that would be impermissible under the Arbitration Clause;

- Sought discovery impermissible under the Arbitration Clause;

- Accepted discovery responses from the Debtor impermissible under the Arbitration Clause;

- Never moved to amend or vacate the Stipulations after abruptly seeking to invoke the Arbitration Clause; and

- Did not inform this Court in their 20-page Arbitration Motion that arbitration and the Stipulations were irreconcilably in conflict.

22.     On September 3, 2021, *after* filing the Arbitration Motion but in compliance with the negotiated and court-approved Stipulations, the Dondero Defendants, together with the Obligors under the Notes, served extensive discovery on the Debtor. **Morris Dec. Ex. A**[14]  (the "AP Discovery").   The Dondero Defendants offer no explanation as to how they could simultaneously demand a stay of these proceedings in favor of arbitration while taking advantage of the Stipulations and the Federal Rules of Bankruptcy Procedure to take discovery in this forum.

23.     As if this duplicitous tactic were not outrageous enough, the Dondero Defendants plainly violated the very Arbitration Clause they now rely on by seeking such sweeping discovery. The Arbitration Clause (Section 6.14 of the LPA) contains express limitations on discovery:  two party depositions (six hours each), one non-party deposition, 25 requests for admission, 25

---

[14]   "Morris Dec." refers to the Declaration of John A. Morris submitted simultaneously in support of this Objection.

interrogatories, and 10 document requests.[15] Yet, through the AP Discovery, the Dondero Defendants have greatly exceeded these limits:

a.       James Dondero, just one of the Dondero Defendants who filed the Arbitration Motion, alone served 39 separate document requests (not including subparts) in three separate requests for production in April 2021 — 29 more requests for production than permitted under the Arbitration Clause. **Morris Dec. Ex. B**. Most of those requests related to the Dondero Defendants' affirmative defense that the Debtor agreed to forgive the demand notes subject to "conditions subsequent" — the same affirmative defense literally all defendants have now pled in the consolidated Adversary Proceeding.

b.       James Dondero agreed in Adversary Proceeding No. 21-03003 to no fewer than five depositions, two of parties James and Nancy Dondero [AP Docket Nos. 7 and 61], two purported experts retained by James Dondero, Mr. McGovern and Mr. Johnson [AP Docket Nos. 63 and 64], and PricewaterhouseCoopers [AP Docket No. 71].

c.       After all demand-notes defendants adopted the "conditions subsequent" defense and the parties agreed to consolidate discovery, the Dondero Defendants agreed to *four more* depositions, bringing the total to nine — six more than permitted under the Arbitration Clause. **Morris Dec. Ex. C**.

d.       In accordance with their Stipulations, the Dondero Defendants served the AP Discovery on September 3, 2021, containing, among other things, 59 document requests, bringing the total to 98 document requests — nearly *ten times* the amount permitted in the Arbitration Clause. *See* **Morris Dec. Ex. A**.

---

[15] The Dondero Defendants grudgingly inform the Court of these limits in the Arbitration Motion by quoting this essential part of the Arbitration Clause in a footnote – but fail to disclose that they will not only seek discovery in the adversary proceedings, but that they have agreed to and will seek discovery well beyond that permitted under the arbitration clause they cling to.

11

24. The Stipulations that the Dondero Defendants negotiated, signed, and sought and obtained this Court's approval of provide (i) complete discovery schedules, (ii) that discovery taken in one adversary proceeding can be used in all adversary proceedings, and that (iii) this Court retains jurisdiction over "all matters and disputes arising out of or otherwise governing the interpretation and enforcement of this Order." Notably, no mention of arbitration, nor the jurisdiction of the American Arbitration Association, nor the strict limits on discovery contained in the Arbitration Clause is anywhere to be found in the Stipulations.[16]

25. The Arbitration Motion must be seen for what it is: a last-minute dodge to avoid the impending litigation of these adversary proceedings by invoking an Arbitration Clause these defendants have studiously ignored to this point and have openly breached.

26. Although courts in the Fifth Circuit sometimes apply a presumption against waiver of an arbitration right, the right can certainly be waived.[17] "Waiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party."[18] In this context, prejudice "refers to the inherent unfairness—in terms of delay, expense, or damage to a party's legal position—that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue.'"[19] A party waives arbitration when it

---

[16] One possible explanation for the last-second invocation of arbitration is Nancy Dondero's last-second retention of Greenberg Traurig as her counsel. Whereas on August 17, 2021, Stinson LLP negotiated and signed the Stipulations on behalf of James Dondero, Nancy Dondero, and others, Greenberg Traurig LLP was listed as Ms. Dondero's counsel on the Arbitration Motion filed on September 1, 2021. New counsel cannot change the extensive record in these cases; and, in any event, Ms. Dondero's new counsel signed on the extensive discovery sought in the adversary proceedings, discovery that plainly violated the Arbitration Clause.

[17] *Williams v. Cigna Fin. Advisors, Inc.,* 56 F.3d 656, 661 (5th Cir. 1995).

[18] *Miller Brewing Co. v. Fort Worth Distrib. Co.,* 781 F.2d 494, 497 (5th Cir. 1986).

[19] *Subway Equip. Leasing Corp. v. Forte,* 169 F.3d 324, 327 (5th Cir. 1999) (quoting *Doctor's Assocs., Inc. v. Distajo,* 107 F.3d 126, 134 (2d Cir. 1997)).

"'engage[s] in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration.'"[20]

27.      The Fifth Circuit Court of Appeals has declined to find waiver when litigants have invoked their rights to arbitration early and unequivocally in the litigation, but it *has* found waiver when litigants have failed to do so.

### Compare

- "[T]he defendant, by answer, has given notice of insisting on arbitration"— *General Guaranty Insurance Co. v. New Orleans General Agency, Inc.,* 427 F.2d 924, 929 n. 5 (5th Cir. 1970);

- Merely participating in initial discovery *without* "shower[ing] the opposing party with interrogatories and discovery requests"—*Keytrade USA, Inc. v. Ain Temouchent M/V,* 404 F.3d 891, 898 (5th Cir. 2005) (quotation and alterations omitted).

### with

- Party requested arbitration shortly before trial after answering complaint, conducting discovery, and filing numerous motions—*Republic Ins. Co. v. PAICO Receivables, LLC,* 383 F.3d 341, 344-45 (5th Cir. 2004);

- Party "initiated extensive discovery, answered twice, filed motions to dismiss and for summary judgment, filed and obtained two extensions of pre-trial deadlines, all without demanding arbitration"—*Price v. Drexel Burnham Lambert, Inc.,* 791 F.2d 1156, 1159, 1162 (5th Cir. 1986)

28.      To the extent it ever actually existed (which, based on the record, is highly questionable), the "conditions subsequent" defense was known only to Mr. and Ms. Dondero before the commencement of the Adversary Proceedings.  Mr. Dondero knew (or should have known) in January 2021 when the actions were commenced that (a) his defense was the oral agreement that he allegedly entered into with his sister, (b) that he had the burden of proving that his sister was authorized, as the trustee of Dugaboy, to bind the Debtor to the Alleged Agreement,

---

[20] *Keytrade USA v. Ain Temouchent M/V,* 404 F.3d 891, 897 (5th Cir. 2005) (quoting *Republic Ins. Co. v. PAICO Receivables, LLC,* 383 F.3d 341, 344 (5th Cir. 2004)).

and that (c) based on the Projections, the commencement of the actions, and the testimony at the confirmation hearing, the Debtor would contest the defense — and that the Arbitration Clause was therefore in play.

29. Yet, Mr. Dondero and the other defendants controlled by him pressed ahead with litigation in this Court. Like Mr. Dondero, the Obligors all raised the "conditions subsequent" defense in amended answers (after Mr. Dondero finally settled on the outline of the defense). Despite having the burden of proving that Nancy Dondero was authorized under the LPA to enter into the Alleged Agreement on the Debtor's behalf, the Obligors moved to withdraw the reference, have propounded extensive discovery requests, and have demanded and agreed to many depositions, some of which have already occurred. Together with the Dondero Defendants, they have: (a) participated in pretrial hearings and arguments before this Court in these adversary proceedings; (b) negotiated and drafted the detailed Stipulations that contemplated all pre-trial litigation in this Court with trials on the merits to be conducted in the United States District Court for the Northern District of Texas; (c) engaged in pretrial litigation in accordance with those Stipulations; and (d) "showered the opposing party with interrogatories and discovery requests" (which themselves vastly exceed the limits of the very Arbitration Clause that they seek to invoke, notwithstanding the Debtor's rejection of the LPA).

30. By breaching the Arbitration Clause, by failing to move to compel arbitration at any one of the numerous opportunities they had to do so, by seeking discovery in the Adversary Proceedings (let alone of a scope and in an amount that grossly exceeds the explicit limits the Arbitration Clause imposes) and by keeping the Debtor and this Court completely in the dark about their evident desire to invoke the Arbitration Clause for several months,[21] the Dondero Defendants

---

[21] One imagines the Dondero Defendants arguing that the only reason they seek to invoke the Arbitration Clause now is because of the counts against them in the Debtor's amended complaint, which raised allegedly arbitrable issues only

have waived any right to arbitrate any issues in these adversary proceedings. They have waived the relief they seek in the Arbitration Motion. It should be denied.

### **THE DONDERO DEFENDANTS ARE ESTOPPED FROM ARBITRATING**

31.     By requesting — and receiving — extensive discovery from the Debtor well in excess of what they would be permitted under the Arbitration Clause, and then demanding specific performance of the rejected Arbitration Clause, the Dondero Defendants have asked this Court to let them have it both ways — to say and do one thing, and then ask for its opposite. The Fifth Circuit — employing the doctrine of judicial estoppel — eschews this type of manipulative pleading and estops a party from receiving relief inconsistent with that party's prior positions. The Dondero Defendants should be judicially estopped from invoking the Arbitration Clause because they have asked for and received relief in this Court diametrically opposed to the Arbitration Clause.

32.     A court invokes the doctrine of judicial estoppel to prevent a party from asserting a position in a legal proceeding that is inconsistent with a position taken in a previous proceeding.[22] This equitable doctrine serves to "protect the integrity of the judicial process."[23] Because the doctrine of judicial estoppel is intended to protect the judicial system, rather than litigants, it is

---

recently. They would be wrong. If there is any legitimacy to their "undisclosed oral-agreement-to-excuse-$50 million" defense, James Dondero and the Obligors knew of that defense in January 2021—some nine months ago—a defense on which they have the burden of proof. One critical unproved element of that defense is that Nancy Dondero possessed the legal authority to act for Dugaboy in setting James Dondero's compensation. If the defense existed at all, it existed in January 2021, and the burden of proving that defense existed in January 2021. The Dondero Defendants had an affirmative obligation to raise the arbitrability of Nancy Dondero's authority in January 2021, not for the first time some nine months later.

[22] *See Reed v. City of Arlington,* 650 F.3d 571, 573-74 (5th Cir. 2011) (*en banc*).

[23] *New Hampshire v. Maine,* 532 U.S. 742, 749-50 (2001) (citation and internal quotation marks omitted).

15

unnecessary to show detrimental reliance by the opponent of the party against whom the doctrine is applied.[24]

33.     Courts in the Fifth Circuit generally consider three criteria when evaluating a defense of judicial estoppel: (1) the party against whom judicial estoppel is sought has asserted a legal position that is "plainly inconsistent" with a position asserted in a prior proceeding; (2) the court in the prior proceeding accepted that party's original position, thus creating the perception that the court was misled; and (3) the party to be estopped has not acted inadvertently.[25]    But judicial estoppel is not governed by "inflexible prerequisites or an exhaustive formula for determining [its] applicability," and numerous considerations "may inform the doctrine's application in specific factual contexts."[26]

34.     The Dondero Defendants' intentional conduct in this Court, affirmative representations to this Court, and receipt of relief from this Court militate strongly in favor of judicially estopping these defendants from invoking a right to arbitration.  Consider their conduct within the context of the Fifth Circuit's criteria for judicial estoppel:

a.     *Plainly inconsistent.*  This requirement looks to the party's conduct.[27]  The Dondero Defendants (a) affirmatively sought and obtained extensive discovery in the Adversary Proceedings, (b) served discovery requests that breached the express limits on discovery set forth

---

[24] *Love v. Tyson Foods, Inc.,* 677 F.3d 258, 261 (5th Cir. 2012).  Of course, HCMLP has already responded to the Dondero Defendants' extensive discovery requests served in the adversary proceedings, and therefore can, in fact, prove "detrimental reliance" through compliance with discovery requests that would plainly be improper under the arbitration clause.  As a court of equity, the Court should take that into account as a matter of fairness.

[25] *Love,* 677 F.3d at 261.

[26] *New Hampshire,* 532 U.S. at 751.

[27] *See, e.g., Barrett-Bowie v. AmeriDream Educ. Concepts, LLC,* 2014 U.S. Dist. LEXIS 39534, at *9-10 (N.D. Tex. Feb. 26, 2014) (plaintiff asserted "plainly inconsistent" positions by not disclosing in her bankruptcy schedules the claims against defendants arising out the servicing of her loan; clearly represented to the bankruptcy court that she had no such claim but then later asserted the opposite).

in the arbitration clause, (c) agreed to substantially more depositions than permitted under the arbitration clause (*see* **Morris Dec. Ex. C**), and (d) affirmatively sought and obtained this Court's approval of the Stipulations, which contained procedures, deadlines, discovery guidelines and requirements, and even jurisdictional provisions all diametrically opposed to what would pertain in any arbitration under the LPA. The Dondero Defendants' conduct is plainly inconsistent with the Arbitration Clause they now seek to exploit.

        b.    *Judicial acceptance.* This second requirement for the application of judicial estoppel ensures that judicial estoppel is only applied in situations where the integrity of the judiciary is jeopardized.[28] This Court accepted the statements of the Dondero Defendants' counsel in support of approval and adoption of the Stipulations. The Dondero Defendants asked this Court for something and got it. In fact, all of the Dondero Defendants' statements to this Court regarding the conduct of these Adversary Proceedings were heard and relied on by this Court. Had the Dondero Defendants alerted this Court or the Debtor of their intent to invoke a right to arbitrate, this Court and the Debtor would likely have made different decisions and entered different orders pertaining to the conduct of these Adversary Proceedings.[29] The Court accepted the Dondero Defendants' representations and actions and is now asked to grant relief wholly inconsistent with those representations and actions. This Court could be excused for feeling misled.

        c.    *Inadvertence.* This third requirement seeks to uncover whether "either that [the party] did not know of the inconsistent position or that [the party] had no motive to conceal it

---

[28] *Wells Fargo Bank, N.A. v. Titus Chinedu Oparaji (In re Titus Chinedu Oparaji),* 698 F.3d 231, 237 (5th Cir. 2012) ("Absent judicial acceptance of the inconsistent position, application of the rule is unwarranted because no risk of inconsistent results exists" (quoting *Edwards v. Aetna Life Ins. Co.,* 690 F.2d 595, 599 (6th Cir. 1982))).

[29] The Debtor would certainly have behaved differently had it had any inkling that these defendants would attempt, at this late stage, to compel arbitration. The Debtor's detrimental reliance is not, however, an element of judicial estoppel.

from the court."[30]  This Court need not read the Dondero Defendants' mind to reasonably ascertain that there was nothing inadvertent about months of pretrial litigation and discovery actively participated in by these defendants in federal court, nothing inadvertent about participating in the negotiation, drafting, and advocacy in favor of the Stipulations plainly inconsistent with arbitration, nothing inadvertent about appearing before this Court to address myriad issues pertaining to the conduct of these adversary proceedings without once mentioning arbitration.  The Dondero Defendants have intentionally taken and persisted for months in a position entirely inconsistent with the position they now take in the Arbitration Motion.  The integrity of this Court's proceedings cannot and should not be undermined by these defendants' distasteful willingness to contradict themselves.

35.     The Dondero Defendants have spoken, written, and conducted themselves at all times plainly inconsistently with the Arbitration Clause or any arbitral process contemplated by the LPA.  They have done so intentionally and have succeeded in persuading this Court to rely on their actions and representations.  They must now be judicially estopped from derailing these proceedings in favor of an arbitration that conflicts with everything these defendants have said and done to this point.

## **POINTLESS, WASTEFUL DELAY**

36.     The Arbitration Motion asks this Court to (a) permit the Dondero Defendants an opportunity to arbitrate an affirmative defense and three new complaint counts brought only in response to that affirmative defense, and (b) stay all judicial proceedings regarding the central

---

[30] *Jethroe v. Omnova Solutions, Inc.,* 412 F.3d 598, 601 (5th Cir. 2005); *see also Allen v. C & H Distribs., L.L.C.,* 813 F.3d 566, 573-74 (5th Cir. 2015) (plaintiffs filing personal injury lawsuit could not have shown that their failure to disclose their suit was inadvertent because they knew of the facts underlying the claim during the pendency of the bankruptcy proceedings, and plaintiffs' motivation for concealment was self-evident because of the potential financial benefit resulting from nondisclosure).

subject matter of these adversary proceedings—the Dondero Defendants' failure to pay on demand notes and turn over funds that would liquidate one of the estate's most valuable assets.

37.     But even if this Court were persuaded that it would be prudent to stay the vast bulk of these adversary proceedings so that tangential issues of the Dondero Defendants' making could be arbitrated in accordance with an arbitration clause those defendants have both breached and ignored for months, the Court would be doing so to accomplish exactly nothing.  To understand why, one need only look again at the Arbitration Clause to realize the utter futility of arbitrating anything in these Adversary Proceedings.

38.     Whichever party dislikes any portion of the arbitrator's decision has an unfettered right to seek *de novo* review of that decision in the U.S. District Court for the Northern District of Texas (the same court that will conduct trials (if these cases are not summarily dismissed) concerning the exact same legal issues, facts, and witnesses regarding the "conditions subsequent" defense).  To wit:

> Any discovery not specifically provided for in this paragraph, whether to parties or non-parties, shall not be permitted. The arbitrators shall be required to state in a written opinion all facts and conclusions of law relied upon to support any decision rendered. The arbitrators will not have the authority to render a decision that contains an outcome based on error of state or federal law or to fashion a cause of action or remedy not otherwise provided for under applicable state or federal law. Any dispute over whether the arbitrators have failed to comply with the foregoing will be resolved by summary judgment in a court of law.

Arbitration Clause, Section 6.14 of the LPA.

39.     Because a "court of law" must resolve "any dispute" regarding the bases of the arbitrator's decision and because exclusive jurisdiction over these Adversary Poceedings rests in this Court and in this District, the inevitable dispute arising from one party or another dissatisfied by the arbitrator's decision will assuredly drag what this Court would have ordered to arbitration right back to where it came from. What is more, the arbitration would already proceed under a

cloud of illegitimacy because there has already been far too much discovery between these parties to conform with the strictures established in the Arbitration Clause. How can something that has already happened "not be permitted"?

40. Staying the genuine, fundamental matters at issue in these Adversary Proceedings for what would likely be months, at a minimum, in favor of some non-binding arbitration of alternative theories of recovery (raised by defendants who have waived arbitration), only to be assured of having those issues brought right back to the court they're in right now, is an enormous waste of time, money, and judicial and arbitral resources.

41. The Arbitration Motion does not even address whether the proceedings against other defendants who do not claim a right to arbitrate would be stayed. What of those cases? If they proceed, and because those defendants have adopted the same affirmative defenses the Dondero Defendants would be arbitrating, what prevents this Court (or the District Court) from reaching different results on the same issues as the arbitrators? Would the court rulings be binding on the Dondero Defendants as law of the case, irrespective of the arbitral result? How many more pieces of ancillary litigation related to the collection of demand notes will these defendants propagate before the system groans under the unwarranted burden?

42. After nearly a year of federal-court litigation already — after the LPA has been rejected, after the Dondero Defendants have repeatedly breached and waived the Arbitration Clause, after it has already been established that only some defendants in these consolidated adversary proceedings even assert a right to arbitrate — after all that, we must acknowledge this: arbitration is a pointless dalliance. It's delay for delay's sake.

## **CONCLUSION**

43. For these reasons, to preserve the integrity of the judicial process, to avoid the needless multiplication of litigation, to enforce this Court's prior orders, to ensure that what has

20

been waived stays waived, and to move these proceedings forward rather than backward, this Court should deny the Arbitration Motion.

Dated: September 28, 2021.

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No. 143717)
(*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084)
(*admitted pro hac vice*)
John A. Morris (NY Bar No. 266326)
(*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992)
(*admitted pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569)
(*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
E-mail:    jpomerantz@pszjlaw.com
           ikharasch@pcszjlaw.com
           jmorris@pszjlaw.com
           gdemo@pszjlaw.com
           hwinograd@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward (Texas Bar No. 24044908)
Zachery Z. Annable (Texas Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110
Email:    MHayward@HaywardFirm.com
          ZAnnable@HaywardFirm.com

*Counsel for Highland Capital Management, L.P.*

21