

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed December 3, 2021**

_____
**United States Bankruptcy Judge**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.<br><br>Reorganized Debtor. | Case No. 19-34054-sgj11<br><br>Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,<br><br>    Plaintiff.<br><br>v.<br><br>JAMES D. DONDERO, NANCY DONDERO, AND THE DUGABOY INVESTMENT TRUST,<br><br>    Defendants. | Adversary No. 21-03003-sgj |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,<br><br>    Plaintiff.<br><br>v.<br><br>NEXPOINT ADVISORS, L.P., JAMES DONDERO, NANCY DONDERO, AND THE DUGABOY INVESTMENT TRUST,<br><br>    Defendants. | Adversary No.: 21-03005-sgj |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,<br><br>    Plaintiff. | |

| | |
|---|---|
| v.<br>HIGHLAND CAPITAL MANAGEMENT SERVICES, INC., JAMES DONDERO, NANCY DONDERO, AND THE DUGABOY INVESTMENT TRUST,<br><br>      Defendants. | Adversary No.: 21-03006-sgj |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,<br><br>      Plaintiff.<br><br>v.<br><br>HCRE PARTNERS, LLC (n/k/a NEXPOINT REAL ESTATE PARTNERS, LLC), JAMES DONDERO, NANCY DONDERO AND THE DUGABOY INVESTMENT TRUST,<br><br>      Defendants. | Adversary No.: 21-03007-sgj |

## MEMORANDUM OPINION AND ORDER DENYING ARBITRATION REQUEST AND RELATED RELIEF

### I.    Introduction and Background

The four above-referenced adversary proceedings, Adversary Proceeding Nos. 21-3003, 21-3005, 21-3006, and 21-3007, started out as what seemed like simple suits by a Chapter 11 Debtor to collect on large promissory notes owed to it (collectively, the "Note Adversary Proceedings").  The court held a hearing on November 9, 2021 ("Hearing") on various motions filed by certain defendants in the Note Adversary Proceedings. This Memorandum Opinion and Order addresses certain motions to compel arbitration and to stay these Note Adversary Proceedings while arbitration would be proceeding.[1] For the reasons set forth below, the court will not compel arbitration or stay these Note Adversary Proceedings.

The Note Adversary Proceedings were originally brought many months ago by Plaintiff Highland Capital Management L.P., now a reorganized debtor ("Highland" or "Reorganized Debtor"), again, as simple suits on notes—that is, alleging breach of contract and seeking turnover of amounts owed from the various obligors under the notes (the "Note Obligor Defendants"). Each Note Obligor Defendant was closely related to Highland's former president, James Dondero ("Mr. Dondero),[2] and collectively borrowed tens of millions of dollars from Highland prepetition.  The

---

[1] Certain defendants herein earlier filed a motion to withdraw the reference in these Note Adversary Proceedings (arguing that the claims were statutory noncore claims or that the bankruptcy court otherwise did not have Constitutional authority to enter final orders). The District Court accepted the bankruptcy court's report and recommendation that the reference should be withdrawn when these Note Adversary Proceedings are trial-ready with the bankruptcy court acting essentially in the position of a magistrate judge for the District Court prior to trial, presiding over all pretrial matters.

[2] In fact, Mr. Dondero personally was an obligor on three notes.

indebtedness was memorialized in a series of demand and term notes. The indebtedness represented by those notes remains unpaid.

The Note Adversary Proceedings morphed, so to speak, when the Note Obligor Defendants defended the Note Adversary Proceedings by alleging that an oral agreement existed such that the underlying notes would be forgiven by Highland as compensation to Highland's former president, Mr. Dondero, if certain conditions subsequent occurred. The oral agreement was allegedly made on behalf of Highland, acting through one of its largest limited partners, Dugaboy Investment Trust ("Dugaboy"), which is a family trust of Mr. Dondero, on which the trustee is his sister Nancy Dondero ("Ms. Dondero").

When this "oral agreement" defense was articulated, this court granted Highland's request for leave to amend its original complaints in each of the Note Adversary Proceedings to allege alternative theories of liability and add Mr. Dondero,[3] Dugaboy, and Ms. Dondero as additional defendants on new counts—the theories being that, if such an oral agreement was made, it may have given rise other causes of action on the part of the actors involved. Highland amended its complaints in each of the Note Adversary Proceedings, adding new Counts III, IV, V, VI, and VII alleging, among other things, fraudulent transfers (Counts III and IV), declaratory judgment as to certain provisions of Highland's limited partnership agreement (Count V), breach of fiduciary duty (Count VI), and aiding and abetting breach of fiduciary duty (Count VII) (the "Amended Complaints").

Presently before the court are a set of virtually identical motions filed by Mr. Dondero, Dugaboy, and Ms. Dondero in each of the four Note Adversary Proceedings seeking to compel arbitration as to Counts V, VI, and VII of, and stay litigation altogether in, the Note Adversary Proceedings, pending the arbitration of Counts V, VI, and VII (the *Motion to Compel Arbitration and Stay Litigation* [Doc. 85, 66, 74, and 65, respectively, in each sequentially-numbered Note Adversary Proceeding[4]], the "Arbitration Motions"). Highland timely filed objections to the motions [Doc. 92, 76, 81, and 77] and replies were filed by Mr. Dondero, Dugaboy and Ms. Dondero [Doc. 107, 88, 93, and 88].[5]

As set forth below, Mr. Dondero, Dugaboy, and Ms. Dondero (hereinafter the "Dondero/Dugaboy Defendants") rely on a mandatory arbitration clause in Highland's Limited Partnership Agreement as the basis for their arbitration request. To be clear, there are no arbitration clauses in the underlying promissory notes. And the Note Obligor Defendants are not seeking arbitration of the breach of contract claims, turnover claims, or fraudulent transfer claims. It is

---

[3] Mr. Dondero was actually already a Note Obligor Defendant in Adv. Proc. No. 21-3003, as he as an obligor on three notes.

[4] All subsequent "Doc." references in this Memorandum Opinion and Order follow this convention.

[5] The court considered these replies despite the lateness of their filing, less than two business days before the Hearing. At the Hearing, Highland noted its displeasure with these replies being filed 37 days after Highland filed its objections but did expressly did not ask the court to strike the replies. The court reminds the parties, as Highland correctly pointed out, that the Local Civil Rules for the Northern District of Texas, and not the Local Bankruptcy Rules, apply to these adversary proceedings in all respects, since the reference to the Bankruptcy Court was withdrawn and this court is conducting all proceedings in the position of a magistrate judge for the District Court. The replies here were required to be filed no later than 14 days following the filing of Highland's objections. *See* Local Civil Rule 7.1(f).

only the Dondero/Dugaboy Defendants seeking arbitration as to Count V (seeking declaratory judgment as to provisions of the Highland limited partnership agreement) and Counts VI and VII (the fiduciary duty claims). The court denies the Arbitration Motions for the reasons stated below.

## II. The Agreement Containing the Arbitration Clause

First, a word about what is and is not in dispute regarding the Arbitration Motions. The parties agree that Highland's *Fourth Amended and Restated Agreement of Limited Partnership* (the "LPA")[6] contained Section 6.14, a typical mandatory arbitration provision that requires parties to the LPA to arbitrate certain disputes under certain circumstances (the "Arbitration Clause"):

> In the event there is an unresolved legal dispute between the parties and/or any of their respective officers, directors, partners, employees, agents, affiliates or other representatives that involves legal rights or remedies arising from this Agreement, the parties agree to submit their dispute to binding arbitration under the authority of the Federal Arbitration Act …

The Arbitration Clause also significantly limited discovery that could occur in arbitration:

> The discovery process shall be limited to the following: Each side shall be permitted no more than (i) two party depositions of six hours each, each deposition to be taken pursuant to the Texas Rules of Civil Procedure; (ii) one non-party deposition of six hours; (iii) twenty-five interrogatories; (iv) twenty-five requests for admissions; (v) ten request for production (in response, the producing party shall not be obligated to produce in excess of 5,000 total pages of documents, including electronic documents); and (vi) one request for disclosure pursuant to the Texas Rules of Civil Procedure.

***The parties further agree that the LPA, as an executory contract, was rejected under 11 U.S.C. § 365 in connection with the court's order confirming Highland's plan of reorganization in February 2021.***

The Dondero/Dugaboy Defendants acknowledge that Counts I–IV of the Amended Complaints (Breach of Contract; Turnover; Fraudulent Transfers under 11 U.S.C. § 548; and Fraudulent Transfers under 11 U.S.C. § 544 and the Texas Uniform Fraudulent Transfer Act) are not subject to the Arbitration Clause.

The Dondero/Dugaboy Defendants argue in the Arbitration Motions, however, that Counts V, VI, and VII of the Amended Complaints (seeking a declaratory judgment as to provisions of LPA and claiming breach of fiduciary duty and aiding and abetting of breach of fiduciary duty—

---

[6] The LPA was executed by Highland's then-general partner, Strand Advisors, Inc., through the individual James Dondero, who was also then Highland's CEO and Highland's majority limited partner, The Dugaboy Investment Trust, James Dondero's family trust, through its trustee, the individual Nancy Dondero, James Dondero's sister. (Various other limited partners also signed the LPA, but they are not Note Obligor Defendants.) The "oral agreement" defense alleges that The Dugaboy Investment Trust, through Nancy Dondero as trustee, as the holder of a Majority Interest (as defined in the LPA), entered into oral agreements on behalf of Highland with James Dondero to forgive the demand notes at the center of these Note Adversary Proceedings if certain conditions subsequent were met.

all counts that, notably, Highland only added after the Note Obligor Defendants articulated their "oral agreement" defense) *are* subject to the Arbitration Clause. Highland counters that: (a) the rejection of the LPA excuses Highland from being forced to submit to mandatory arbitration of Counts V, VI, and VII; (b) the Dondero/Dugaboy Defendants have waived the Arbitration Clause by not invoking it at any earlier point in these Note Adversary Proceedings; and (c) the Dondero/Dugaboy Defendants should be judicially estopped from invoking the Arbitration Clause now. Highland also argues that arbitration of some but not all the counts of the Amended Complaints would be inefficient and wasteful, and that any stay of proceedings in this court would do a disservice to the resolution of the admittedly non-arbitrable issues in Counts I–IV.

### III. The Significance of the Rejection of the Executory Contract (*i.e.*, the LPA) that Contained the Arbitration Clause

The court acknowledges that there is a wealth of federal case law dictating the strong federal policy undergirding the Federal Arbitration Act ("**FAA**"). *See, e.g., Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983) (describing the FAA as "a congressional declaration of a liberal federal policy favoring arbitration agreements"). The FAA was enacted by Congress in 1925 and became effective in 1926. It is codified at Title 9 of the United States Code and is predicated upon Congress's exercise of the Commerce Clause powers granted in the Constitution. The FAA contemplates the judiciary's respect for and enforcement of private parties' agreements to resolve disputes through arbitration. The FAA provides:

> A written provision in … a contract … to settle by arbitration a controversy thereafter arising out of such contract … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[7]

Thus, arbitration, pursuant to the FAA, is entirely a matter of contract. And, where a contract contains a provision in which parties agreed to submit future disputes thereunder to arbitration, these provisions should be enforced according to their terms. Section 4 of the FAA specifically directs a court to order parties to arbitrate upon a request by a party that is entitled to demand arbitration in a written contract. The courts have often stated that the FAA reflects a liberal federal policy favoring arbitration and requires arbitration agreements to be rigorously enforced according to their terms.[8]

The court also notes that some courts have grappled with whether a bankruptcy court needs to treat an arbitration provision in a contract any "less mandatory" than other courts. After all, bankruptcy cases are not like other lawsuits; they are multi-faceted, multi-party, and fast-moving. It has often been stated that the underlying purposes of the Bankruptcy Code are to: (a) provide debtors and creditors with orderly and effective administration of bankruptcy estates; and (b) *centralize disputes over debtors' assets and obligations in one forum*. But there is *no* "bankruptcy exception" to an arbitration agreement *per se*—not in any statute and not according

[7] 9 U.S.C. § 2.
[8] *See AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 339 (2011) (citations omitted).

5

to any court so far.  Some courts have opined or suggested that a bankruptcy court, when presiding over a proceeding involving "non-core" disputes pursuant to 28 U.S.C. § 157(b)—*i.e.,* disputes that are merely related to a bankruptcy case and would have been litigated elsewhere but for the broad nexus created by the debtor's bankruptcy filing—***generally*** must abstain from adjudication and direct the parties to arbitration when presented with an applicable arbitration provision.[9]  But when a bankruptcy court is presented with a "core" dispute—*i.e.,* one which derives from the provisions of the Bankruptcy Code—it *may* be permissible for the bankruptcy court to decline to order arbitration; after determining that "core" disputes are involved, courts tend to employ a framework for analysis derived from a nonbankruptcy Supreme Court case called *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220 (1987).  In a nutshell, the *McMahon* Court held that a party seeking to avoid arbitration pursuant to an otherwise applicable agreement must show that Congress—in enacting whatever statute is involved (*i.e.,* the Bankruptcy Code) intended to preclude arbitration and that intent must be deducible from: (1) the statute's text; (2) its legislative history; or (3) "an inherent conflict between arbitration and the statute's underlying purposes."[10]  Thus, courts—after finding "core" disputes are involved—tend to plow down a complicated trail of considering whether there is an "inherent conflict" between arbitration and the Bankruptcy Code in whatever dispute happens to be before the court.

The Fifth Circuit has addressed the topic of enforceability of arbitration clauses in bankruptcy in the cases of *In re Gandy* and *In re Nat'l Gypsum*.[11]  In those cases, the Fifth Circuit instructed that a bankruptcy court may refuse to enforce arbitration clauses and may itself adjudicate a dispute when it finds that: (a) a matter is core or derives from rights under the Bankruptcy Code; ***and*** (b) enforcement of the arbitration provision would irreconcilably conflict with the purposes or goals of the Bankruptcy Code.[12]

While this is all somewhat enlightening, a slightly different argument is presented to this court by Highland in its argument that the bankruptcy court should not compel arbitration. Highland does not deny the existence of any of the above case law nor the fact that Counts V, VI, and VII involve non-core matters that do not derive from rights under the Bankruptcy Code. Rather, Highland argues, these Note Adversary Proceedings present a circumstance that very few courts have addressed.  ***The LPA (or at least the Arbitration Clause) was an executory contract that Highland rejected in its confirmed Chapter 11 plan.***  As noted above, no one disputes that the LPA was rejected pursuant to Bankruptcy Code section 365.  The result, argues Highland, is

---

[9] At least one court has suggested that there is a "presumption in favor of arbitration [that] usually trumps the lesser interest of bankruptcy courts in adjudicating non-core proceedings." *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 108 (2d Cir. 2006). *But see Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1156-1158 (3d Cir. 1989) (determining there is no discretion to deny arbitration in non-core matters). *See also Gandy v. Gandy (In re Gandy)*, 299 F.3d 489, 496 (5th Cir. 2002) ("it is generally accepted that a bankruptcy court has no discretion to refuse to compel the arbitration of matters not involving 'core' bankruptcy proceedings under 28 U.S.C. § 157(b)"); *Ins. Co. of N. Am. v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp. (In re Nat'l Gypsum Co.)*, 118 F.3d 1056 (5th Cir. 1997) (same).

[10] *McMahon*, 482 U.S. at 227.

[11] *Gandy*, 299 F.3d at 489; *Nat'l Gypsum Co.*, 118 F.3d at 1056.

[12] *In re Nat'l Gypsum Co.*, 118 F.3d at 1068-69.

that Highland is no longer bound by the LPA's provisions that impose *specific performance* obligations on it—provisions such as the Arbitration Clause. A counterparty to a rejected executory contract can merely seek monetary damages, Highland argues, but it cannot force a debtor to *perform* under a rejected executory contract.

Highland's argument finds support in a both lengthy and well-reasoned opinion by District Judge David Godbey of this District — *Janvey v. Alguire*, 2014 U.S. Dist. LEXIS 193394 (N.D. Tex. Jul. 20, 2014), *aff'd on different grounds* at 847 F.3d 231 (5th Cir. 2017), dealing with federal receiverships (in which the court made analogies to the bankruptcy process)—as well as in an old law review article written by renowned University of Texas Law School Professor Jay Westbrook (often considered the modern-day expert on executory contracts in bankruptcy). *See* Jay Westbrook, *The Coming Encounter: International Arbitration and Bankruptcy*, 67 UNIV. OF MINN. LAW SCHOOL 595 (1983).

The *Janvey* opinion arose in the context of a federal receivership commenced at the request of the Securities and Exchange Commission in response to the massive R. Allen Stanford Ponzi scheme. Ralph S. Janvey was the receiver ("Receiver") who took possession of all receivership assets and records. Pursuant to those powers, the Receiver filed suit against former employees (the "Employee Defendants") who previously worked in various capacities for the Stanford enterprises ("Stanford Entities") and received salary, commissions, bonuses, or later forgiven loans from the Stanford Entities. The Receiver's suit alleged that the Employee Defendants received fraudulent transfers in violation of the Texas Uniform Fraudulent Transfer Act (TUFTA) or, in the alternative, were unjustly enriched at the expense of the creditors of the Receivership Estate. Some of the Employee Defendants filed motions to compel arbitration. According to a later Fifth Circuit opinion, the arbitration agreements were contained in: (1) promissory notes between the Employee Defendants and the company that governed the upfront loan payments that the company awarded to the Employee Defendants when they joined Stanford; (2) the broker-dealer forms that the company submitted to the Financial Industry Regulation Authority (FINRA) when registering the Employee Defendants as brokers; (3) FINRA's internal rules governing disputes between brokers and their employers; and (4) the company's Performance Appreciation Rights plan. The arbitration clauses provided that "any controversy arising out of or relating to this Note, or default on this Note, shall be submitted to and settled by arbitration pursuant to the constitution, bylaws, rules and regulations of the National Association of Securities Dealers (NASD)." *Janvey v. Alguire*, 847 F.3d 231, 237 (5th Cir. 2017).

The issue of whether arbitration was required went back and forth between Judge Godbey and the Fifth Circuit and, ultimately, the precise issue pending before Judge Godbey was whether to deny or grant the motions to compel arbitration based on the question of "whether the Receiver is bound by the arbitration clauses if he sues, as he must, on behalf of the Stanford Entities."

Judge Godbey declined to order arbitration because the Receiver had not adopted the arbitration agreements at issue and because arbitration of the Receiver's claims would frustrate a central purpose of federal equity receiverships. Judge Godbey noted that, before a general requirement to arbitrate exists, a party must first be bound to an arbitration agreement — either as a signatory or through a principle of law or equity. Judge Godbey stated that discussions of

possible exceptions to this general requirement to arbitrate, like *McMahon*'s contrary congressional command, ***are only necessary after such an initial determination***. Judge Godbey opined that equity receivers, as non-signatories to an arbitration agreement, can, in fact, be bound to the arbitration agreement to the same extent receivership entities would be bound. But there remained a significant resultant question: whether the Employee Defendants' arbitration agreements were contracts that the Receiver could ***reject***, "an ability that has deep historical roots for both federal equity receivers and bankruptcy trustees and that continues to be an important tool for both."

Applying Professor Vern Countryman's material breach test, Judge Godbey concluded that arbitration agreements must be analyzed as separate executory contracts, based on the nature of the agreement as well as arbitration caselaw regarding severability. Citing Professor Westbrook, he noted that, "'[v]iewed as an independent contractual obligation of the parties, an arbitration agreement is a classic executory contract, since neither side has substantially performed the arbitration agreement at the time enforcement is sought.' *Westbrook*, *supra note 26, at 623* (footnote omitted). Furthermore, the appropriate remedy in this circumstance cannot be for the Court to require specific performance by the trustee — *i.e.,* to compel arbitration — because 'injured part[ies] cannot insist on specific performance by the trustee.' *See id. at 619* (collecting cases)." *Janvey*, 2014 U.S. Dist. LEXIS 193394 at *113.

Judge Godbey went on to opine that the Receiver had rejected the arbitration agreement, that the rejection was proper, and that the Receiver was not bound to arbitrate—further noting that if the court required the Receiver to adopt the arbitration agreements, it would greatly burden and deplete the receivership estate. Such a result, weighed in the balance, would be unjust and inequitable.

The Fifth Circuit ultimately affirmed, 847 F.3d 231 (5th Cir. 2017), but applied a different analysis. It determined that the Stanford entity in whose shoes the Receiver had stepped, for purposes of bringing the TUFTA claims (*i.e.,* Stanford International Bank), was not a signatory to the arbitration agreements and was not otherwise bound by them. The Fifth Circuit also determined that, with regard to one Employee Defendant (Giusti) who stood in a unique position (in that there was an arbitration agreement that the Receiver's predecessor was party to and bound), that Guisti waived the right to arbitrate by substantially invoking the judicial process (through the filing of a motion to dismiss, an answer, serving written discovery and answering discovery— which had caused delay and expense). As for Judge Godbey's "broader policy argument" that the federal receivership statutes were at odds with the FAA's mandate in favor of arbitration, noting that these were "important concerns," the Fifth Circuit stated that "we are wary of endorsing these broad policy arguments in the absence of specific direction from the Supreme Court." *Id.* at 245. But the Fifth Circuit did not otherwise address the arguments.

While the *Janvey* case involved a federal receiver, Judge Godbey looked almost entirely to bankruptcy law and to Bankruptcy Code section 365 to reach his ruling. This court finds *Janvey* to be persuasive (and possibly binding) on this court. Moreover, just as a federal receiver is analogous to a bankruptcy trustee, a debtor-in-possession is, of course, statutorily the same as a bankruptcy trustee. *See, e.g.,* 11 U.S.C. § 1107.

To be clear, if a bankruptcy trustee rejects an executory contract, the rejection, of course, constitutes a breach of the contract and subjects the estate to a claim for money damages on behalf of the injured party. 11 U.S.C. § 365(g). Significantly, however, *the injured party cannot insist on specific performance by the trustee*. *See* Westbrook, *The Coming Encounter,* at 619 (and numerous cases cited therein). Instead, the injured party is treated as having a prepetition claim for damages arising as if the breach occurred immediately before the filing of the bankruptcy petition. Professor Westbrook notes that the issue then becomes whether such a prepetition claim, including a claim arising from rejection, must be liquidated pursuant to the arbitration clause. *Most jurisprudence in the bankruptcy context dealing with arbitration clauses does not analyze this as a traditional executory contract conundrum*. And yet, to use Professor Westbrook's words, an arbitration agreement is a classic executory contract, since neither side has substantially performed the arbitration agreement at the time enforcement is sought. *Id.* at 623. And although "arbitration survives the contract" *as a matter of contract law*, "executory obligations may be avoided by the trustee as a matter of bankruptcy law through the exercise of the trustee's power to reject executory contracts." *Id.* "If specific performance is not available against a trustee, it follows that an arbitration agreement is like any other executory contract which the trustee may reject." *Id.* at 624.

The *Janvey* decision is not the only case to have addressed the effect of rejection on the viability of an arbitration clause within a rejected executory contract. The Dondero/Dugaboy Defendants cite the court to *In re Fleming Companies, Inc.,* 325 B.R. 687 (Bankr. D. Del. 2005), a case from another bankruptcy court that predates *Janvey* by almost a decade, for the proposition that rejection of an executory contract does not prevent a party from invoking an arbitration clause in that contract. With due respect, the court believes the reasoning in *Janvey* to be more persuasive than the bankruptcy court's in *Fleming Cos.* (and *Janvey* is potentially binding precedent on this court). It also bears noting that it was the debtor in *Fleming Cos.,* not the executory contract's counterparty, who was invoking the arbitration clause in the contract the debtor had previously rejected. That distinction is not without significance.

In summary, this court accepts Highland's argument that the LPA was an executory contract duly rejected pursuant to Bankruptcy Code section 365, and that the Arbitration Clause should likewise be considered a separate executory agreement that was rejected. Accordingly, Highland cannot be forced to specifically perform under the Arbitration Clause or the LPA by mandatorily participating in arbitration of Counts V, VI, and VII. The court defers to the compelling reasoning of Judge Godbey in *Janvey* on this point. The court, like Judge Godbey, also finds as a matter of fact that requiring arbitration in this case would impose undue and unwarranted burdens and expenses on the parties to the detriment of Highland's creditors.

## IV.    Waiver

Even if this court is in error in determining that the Arbitration Clause is no longer binding on Highland because it was rejected pursuant to Bankruptcy Code section 365, the court finds as a matter fact that the Dondero/Dugaboy Defendants have waived any right to invoke the Arbitration Clause. The court has taken judicial notice of its own docket, both in these Note Adversary Proceedings and in the administrative Chapter 11 case, and has considered the entire

record of both proceedings, as well as the *Declaration of John A. Morris in Support of Debtor's Objection to Motion to Compel Arbitration and Stay Litigation* [Doc. 94, 78, 83, and 78], and the exhibits annexed thereto, in making the following findings of fact.

The Note Adversary Proceedings were filed in January 2021 (after Highland earlier made demands on the Note Obligor Defendants or otherwise declared events of default). One of the Note Obligor Defendants (Mr. Dondero) timely answered, pleading an affirmative defense that Highland agreed not collect on the underlying notes—but that answer contained nothing more specific than this, nor any mention of arbitration. Amended Answers were later filed by the Note Obligor Defendants, elaborating on and/or adopting the affirmative defense that, through the oral agreement, Highland agreed to forgive the obligations under the notes as compensation to Mr. Dondero "upon fulfillment of conditions precedent." Roughly 90 days after the filing of the Note Adversary Proceedings, the Note Obligor Defendants filed motions to withdraw the reference, which this court spent significant time addressing in making a report and recommendation to the District Court in each Note Adversary Proceeding. No mention of arbitration was made to this court during those proceedings. During a hearing before the court on June 10, 2021, Highland announced its intention to add claims against the Dondero/Dugaboy Defendants for breach of fiduciary duty, yet the issue of arbitration was not raised at that point, or a month later when the Dondero/Dugaboy Defendants received a draft of the Amended Complaint adding Counts V, VI, and VII. Pursuant to the parties' agreement, Highland filed that Amended Complaint on August 27, 2021, as the Dondero/Dugaboy Defendants' "oral agreement" defense became clearer. Only on September 1, 2021, did the Dondero/Dugaboy Defendants file their Arbitration Motions and raise the issue of arbitration under the Arbitration Clause for the first time in these proceedings, more than seven months after the litigation began. At the same time, the Dondero/Dugaboy Defendants also pursued extensive discovery, seeking and obtaining responses to interrogatories and documents requests in scope and number ***significantly more than the Arbitration Clause permitted***, all in accordance with pre-trial stipulations the defendants both negotiated with Highland and then asked this court to approve, which the court did.

Although courts in the Fifth Circuit sometimes apply a presumption against waiver of an arbitration right, the right can certainly be waived.[13] "Waiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party."[14] In this context, prejudice "refers to the inherent unfairness—in terms of delay, expense, or damage to a party's legal position—that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue.'"[15] A party waives arbitration when it "'engage[s] in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration.'"[16]

---

[13] *Williams v. Cigna Fin. Advisors, Inc.,* 56 F.3d 656, 661 (5th Cir. 1995).

[14] *Miller Brewing Co. v. Fort Worth Distrib. Co.,* 781 F.2d 494, 497 (5th Cir. 1986).

[15] *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 327 (5th Cir. 1999) (quoting *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 134 (2d Cir. 1997)).

[16] *Keytrade USA v. Ain Temouchent M/V,* 404 F.3d 891, 897 (5th Cir. 2005) (quoting *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 344 (5th Cir. 2004)). *See also Price v. Drexel Burnham Lambert, Inc.,* 791 F2d

While every situation is unique, here the court finds that the Dondero/Dugaboy Defendants waived their right (if any still remained) to demand arbitration, due to their multiple answers, their motions to withdraw the reference, extensive discovery that far exceeded what the Arbitration Clause permitted, and complete silence about the possibility of arbitration for more than eight months. Even though Counts V, VI, and VII were not added by Highland until more than seven months after the Note Adversary Proceedings were filed, the Dondero/Dugaboy Defendants had reason to know that their "oral agreement" affirmative defense might implicate the LPA and the Arbitration Clause, and yet they didn't raise the subject of arbitration until many months of litigation activity in the Note Adversary Proceedings had occurred in this court.[17] The resulting delay and expense warrant this court's applying waiver as permitted by the Fifth Circuit authority cited above. This court finds as a matter of fact that the Dondero/Dugaboy Defendants waived the relief they seek in the Arbitration Motions.

## V.    Judicial Estoppel, Waste and Inefficiency

Highland also asked the court: (a) to judicially estop the Dondero/Dugaboy Defendants from arguing entitlement to arbitration in light of prior contradictory positions these defendants took in earlier pleadings and arguments before this court, and (b) to decline to order arbitration because of the waste and inefficiency arbitration would represent for these proceedings. Because the court rules that rejection of the Arbitration Clause precludes Highland's being forced to submit to arbitration, and because the court finds that the Dondero/Dugaboy Defendants waived the relief they sought in the Arbitration Motions, the court need not and does not address Highland's arguments pertaining to judicial estoppel or the practical implications of ordering arbitration.

## VI.    Stay of Counts I–IV

Finally, because the court denies the arbitration requested in the Arbitration Motions, there is no good cause to stay litigation in the entire Note Adversary Proceedings. Even if the court has erred in its ruling on the Arbitration Motions, there still exists no good cause to stay the Note Adversary Proceeding as to Counts I-IV. The Dondero/Dugaboy Defendants acknowledge that Counts I-IV are non-arbitrable claims and, moreover, in the event Plaintiff were to prevail on them, it is likely that Plaintiff would not even pursue Counts V–VII. To clarify, if Plaintiff prevails on Counts I and II (*i.e.,* the breach of contract claims and turnover)—which would involve a finding that there was no oral agreement for nonpayment—then all other counts would become moot. And, if the court were to find that there *were* such an agreement, Plaintiff could potentially still prevail on Counts III and IV (the claims that such an agreement would constitute a fraudulent transfer—also non-arbitrabal). It would seem that only if Plaintiff loses on all of these non-arbitrable claims would it have any interest in pursuing Counts V-VII (*i.e.,* an interest in arguing that the oral agreements amounted to breach of fiduciary duty and aiding and abetting breach of fiduciary duty).

---

1156, 1162 (5th Cir. 1986) (party waived arbitration because it "initiated extensive discovery, answered twice, filed motions to dismiss and for summary judgment, filed and obtained two extensions of pre-trial deadlines, all without demanding arbitration").

[17] The court notes that all Note Obligor Defendants consist of either Mr. Dondero or entities he controls.

The requested stay would also be illogical in this context. The "oral agreement" defense relies on the existence of an oral contract between Highland (via Dugaboy, through its trustee, Ms. Dondero) and Mr. Dondero. The existence of that contract is ***not*** an arbitrable issue. The implications of that contract's existence are what would potentially be arbitrable. If litigation on Counts I–IV demonstrates that there was no such "oral agreement," then there would be nothing to arbitrate because Counts V–VII would be rendered moot. Staying the litigated determination regarding the existence of the "oral agreement" in favor of arbitrating issues that only arise if there ever were such an agreement strikes the court as backwards. Arbitration should await that determination, not the other way around.

Accordingly, the Dondero/Dugaboy Defendants' requests to stay the Note Adversary Proceedings have no merit and are denied.

## ORDER

For the reasons stated in the above Memorandum Opinion and Order, the Arbitration Motions and Stay Motions related thereto are DENIED.

*### End of Order ###*